Thomas John Heilman
(Name)

California Mens Colony-East
(Address)

P.O. Box 8101, San Luis Obispo, CA 93409-8101
(City, State, Zip)

H-76785
(CDC Inmate No.)

FILED

DEC 11 2013

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

2254 ____ 1983

FILING FEE PAID
Yes ____ No ____

IFP MOTION FILED
Yes ____ No ____

COPIES SENT TO
Court ____ ProSe ____

# United States District Court
## Southern District of California

Thomas John Heilman ,
(Enter full name of plaintiff in this action.)

          Plaintiff,

v.

A. Silva, A. Buenrostro, D. Tyson, F. Jaca,
D. Arguilez, E. Ojeda, Thompson, Sgt.
Armisted, D. Paramo, E. Fontan, M. Stout,
C. Franco, R. Russell, La Lorum, R.N., Jane Doe,
R.N., CDCR, Does 1-10 inclusive
(Enter full name of each defendant in this action.)

          Defendant(s).

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

1 3CV 2 9 8 4 JLS MDD

Civil Case No._____
(To be supplied by Court Clerk)

Complaint under the
Civil Rights Act
42 U.S.C. § 1983

Demand for Trial
By Jury.

## A. Jurisdiction

Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. If you wish to assert jurisdiction under different or additional authority, list them below.

## B. Parties

1. <u>Plaintiff</u>: This complaint alleges that the civil rights of Plaintiff, Thomas John Heilman
(print Plaintiff's name)
_____, who presently resides at California mens Colony-
(mailing address or place of confinement)
East, P.O. Box 8101, San Luis Obispo, CA. 93409-
8101, were violated by the actions
of the below named individuals. The actions were directed against Plaintiff at R.J. Donovan
Correctional Facility on (dates) May 6 - May 9, 2013, and _____.
(institution/place where violation occurred)     (Count 1)     (Count 2)     (Count 3)

§ 1983 SD Form
(Rev. 4/06)

2. <u>Defendants</u>:  (Attach same information on additional pages if you are naming more than 4 defendants.)

Defendant __A. SILVA__ resides in __SAN DIEGO COUNTY__,
                (name)                                          (County of residence)
and is employed as a __CORRECTIONAL OFFICER__. This defendant is sued in
                         (defendant's position/title (if any))
his/her ☒ individual ☐ official capacity.  (Check one or both.)  Explain how this defendant was acting
under color of law: __Violations of Heilman's First, Eighth and__ rights under the
__Fourteenth U.S. Constitutional Amendments.__
__- See Attached Complaint -__

Defendant __A. BUENROSTRO__ resides in __SAN DIEGO COUNTY__,
                (name)                                          (County of residence)
and is employed as a __CORRECTIONAL OFFICER__. This defendant is sued in
                         (defendant's position/title (if any))
his/her ☒ individual ☐ official capacity.  (Check one or both.)  Explain how this defendant was acting
under color of law: __Violations of Heilman's First, Eighth and__
__Fourteenth Amendments rights to the U.S. Constitution__
__- See Attached Complaint -__

Defendant __D. TYSON__ resides in __SAN DIEGO COUNTY__,
                (name)                                          (County of residence)
and is employed as a __CORRECTIONAL OFFICER__. This defendant is sued in
                         (defendant's position/title (if any))
his/her ☒ individual ☐ official capacity.  (Check one or both.)  Explain how this defendant was acting
under color of law: __Violations of Heilman's First, Eighth and__
__Fourteenth Amendment rights to the U.S. Constitution.__
__- See Attached Complaint -__

Defendant __F. JACA__ resides in __SAN DIEGO COUNTY__,
                (name)                                          (County of residence)
and is employed as a __CORRECTIONAL OFFICER__. This defendant is sued in
                         (defendant's position/title (if any))
his/her ☒ individual ☐ official capacity.  (Check one or both.)  Explain how this defendant was acting
under color of law: __Violations of Heilman's First, Eighth and__
__Fourteenth Amendment rights to the U.S. Constitution__
__- See Attached Complaint -__

2. <u>Defendants</u> Continued:

Defendant D. ARGUILEZ resides in San Diego County and is employed as a CORRECTIONAL LIEUTENANT. This defendant is sued in his [X] individual capacity.

Acting under color of law: Violations of Heilman's rights under the Eighth Amendment to the U.S. Constitution.

   —See Attached Complaint—

Defendant E. OJEDA resides in San Diego County and is employed as a CORRECTIONAL SERGEANT. This defendant is sued in his [X] individual capacity.

Acting under color of law: Violations of Heilman's Eighth Amendment U.S. Constitutional right.

   —See Attached Complaint—

Defendant THOMPSON resides in San Diego County and is employed as a CORRECTIONAL SERGEANT. This defendant is sued in his [X] individual capacity.

Acting under color of law: Violations of Heilman's rights under the U.S. Constitution Eighth Amendment.

   —See Attached Complaint—

Defendant ARMISTED resides in San Diego County and is employed as a CORRECTIONAL OFFICER. This defendant is sued in his [X] individual capacity.

Acting under color of law: Violations of Heilman's rights under the U.S. Constitution First, Eighth and Fourteenth Amendments.

   —See Attached Complaint—

Defendant M. STOUT resides in San Diego County and is employed as a CORRECTIONAL CAPTAIN. This defendant is sued in his [X] individual capacity.

Acting under color of law: Violations of Heilman's Eighth Amendment right to the U.S. Constitution.

   —See Attached Complaint—

2. Defendants Continued:

Defendant D. PARAMO   resides in   San Diego County
and is employed as a   WARDEN.   This defendant is sued
in his ☒ individual capacity.

Acting under color of law: Violations of Heilman's Eighth
Amendment right to the U.S. Constitution.
   — See Attached Complaint —

Defendant   C. FRANCO   resides in   San Diego County
and is employed as a CORRECTIONAL LIEUTENANT. This defendant
is sued in his ☒ individual capacity.

Acting under color of law: Violations of Heilman's Eighth
Amendment U.S. Constitutional rights.
   — See Attached Complaint —

Defendant E. FONTAN   resides in San Diego County
and is employed as a CORRECTIONAL OFFICER. This defendant
is sued in his ☒ individual capacity.

Acting under color of law: Violations of Heilman's First,
Eighth, and Fourteenth U.S. Constitutional rights.
   — See Attached Complaint —

Defendant R. RUSSELL   resides in San Diego County
and is employed as a PSYCHIATRIC TECHNICIAN. This
defendant is sued in his ☒ individual capacity.

Acting under color of law: Violations of Heilman's Eighth
Amendment U.S. Constitutional right.
   — See Attached Complaint —

Defendant JANE DOE   resides in San Diego County
and is employed as a PSYCH. TECH. OR REGISTERED NURSE IN
BLDG. 6 AD SEG SECOND WATCH ON MAY 9, 2013. This defendant
is sued in her ☒ individual capacity.

Acting under color of law: Violations of Heilman's
Eighth Amendment U.S. Constitutional right.
   — See Attached Complaint —

2. Defendants Continued:

Defendant LACORUM resides in San Diego County and is employed as a REGISTERED NURSE. This defendant is sued in his ☒ individual capacity.

Acting under color of law: Violations of Heilman's Eighth Amendment right to the U.S. Constitution.

— See Attached Complaint —

Defendant CALIFORNIA DEPT. OF CORRECTIONS C.D.C.R operates R.J. Donovan Correctional Facility in San Diego County and is the employer of each and every named defendant in this complaint and is sued in its ☒ individual capacity and ☒ official capacity.

Acting under color of law: For Violations of Heilman's U.S. Constitutional First, Eighth and Fourteenth Amendment rights.

— See Attached Complaint —

Defendant(s) DOES 1-10, UNKNOWN, INCLUSIVE resides in San Diego County and are employed as (unknown). These defendants are sued in their ☒ individual capacities.

Acting under color of law: Violations of Heilman's U.S. Constitutional First, Eighth and Fourteenth Amendment rights.

— See Attached Complaint —

**C. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary.)

<u>Count 1</u>: The following civil right has been violated:_____

(E.g., right to medical care, access to courts,

___ *See Attached Complaint for Eight Causes of Action.* ___.

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

<u>Supporting Facts</u>:   [Include all facts you consider important to Count 1.  State what happened clearly and in your own words.  You need not cite legal authority or argument.  Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 1.]

Count 2:  The following civil right has been violated: _____

(E.g., right to medical care, access to courts,

_____ See Attached Complaint for Eight Causes of Action _____.

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts:  [Include all facts you consider important to Count 2.  State what happened clearly and in your own words.  You need not cite legal authority or argument.  Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 2.]

<u>Count 3</u>:  The following civil right has been violated: _____
(E.g., right to medical care, access to courts,

_____ See Attached Complaint for Eight Causes of Action _____

due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

<u>Supporting Facts</u>:   [Include all facts you consider important to Count 3.  State what happened clearly and in your own words.  You need not cite legal authority or argument.  Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 3.]

**D. Previous Lawsuits and Administrative Relief**

1. Have you filed other lawsuits in state or federal courts dealing with the same or similar facts involved in this case?  ☐ Yes  ☒ No.

If your answer is "Yes", describe each suit in the space below.  [If more than one, attach additional pages providing the same information as below.]

(a)  Parties to the previous lawsuit:

Plaintiffs: _____

Defendants: _____

(b)  Name of the court and docket number: _____

_____

(c)  Disposition: [ For example, was the case dismissed, appealed, or still pending?] _____

_____

(d)  Issues raised: _____

_____

_____

_____

(e)  Approximate date case was filed: _____

(f)  Approximate date of disposition: _____

2.  Have you previously sought and exhausted all forms of informal or formal relief from the proper administrative officials regarding the acts alleged in Part C above? [E.g., CDC Inmate/Parolee Appeal Form 602, etc.] ?  ☒ Yes  ☐ No.

If your answer is "Yes", briefly describe how relief was sought and the results.  If your answer is "No", briefly explain why administrative relief was not sought.

Heilman exhausted his available CDCR administrative remedies via CDCR Form 602 Appeals, Log Numbers: (1) RJD-B-13-01767, (2) RJD-B-13-01911, (3) RJD-B-13-2377, (4) RJD-B-13-02233 and (5) RJD-B-13-02024.

**E. Request for Relief**

Plaintiff requests that this Court grant the following relief: *See Prayer for Relief with Attached Complaint.*

    1. An injunction preventing defendant(s): _____

_____

_____

_____

    2. Damages in the sum of $ _____.

    3. Punitive damages in the sum of $ _____.

    4. Other:_____

_____

**F. Demand for Jury Trial**

Plaintiff demands a trial by ☒ Jury ☐ Court. (Choose one.)

**G.  Consent to Magistrate Judge Jurisdiction**

In order to insure the just, speedy and inexpensive determination of Section 1983 Prisoner cases filed in this district, the Court has adopted a case assignment involving direct assignment of these cases to magistrate judges to conduct all proceedings including jury or bench trial and the entry of final judgment on consent of all the parties under 28 U.S.C. § 636(c), thus waiving the right to proceed before a district judge. The parties are free to withhold consent without adverse substantive consequences.

The Court encourages parties to utilize this efficient and expeditious program for case resolution due to the trial judge quality of the magistrate judges and to maximize access to the court system in a district where the criminal case loads severely limits the availability of the district judges for trial of civil cases.  Consent to a magistrate judge will likely result in an earlier trial date.  If you request that a district judge be designated to decide dispositive motions and try your case, a magistrate judge will nevertheless hear and decide all non-dispositive motions and will hear and issue a recommendation to the district judge as to all dispositive motions.

You may consent to have a magistrate judge conduct any and all further proceedings in this case, including trial, and the entry of final judgment by indicating your consent below.

Choose only one of the following:

☐    Plaintiff consents to magistrate judge jurisdiction as set forth above.

    **OR**

☒    Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

11/21/2013
Date

_Thomas John Heilman_
Signature of Plaintiff

§ 1983 SD Form
(Rev. 4/06)

7

Thomas John Heilman
H-76785 Rm# 7216
California Mens Colony - East
P.O. Box 8101
San Luis Obispo, CA 93409-8101
Plaintiff In Propria Persona

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS JOHN HEILMAN, PLAINTIFF, <br><br> -V- <br><br> A. SILVA, A. BUENROSTRO, D. TYSON, F. JACA, D. ARGUILEZ, E. OJEDA, ARMISTED, C/O, THOMPSON, SGT., R. RUSSELL, LACORUM, R.N., C. FRANCO, M. STOUT, D. PARAMO, E. FONTAN, JANE DOE MEDICAL STAFF BLDG. 6, AD SEG, CALIFORNIA DEPT. OF CORRECTIONS AND REHABILITATION, DOES 1-10 INCLUSIVE, DEFENDANTS. | CASE No: <br><br> PLAINTIFF'S COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 USC SECTION 1983 <br><br> DEMAND FOR TRIAL BY JURY |

PLAINTIFF THOMAS JOHN HEILMAN, is informed, believes and thereupon alleges as follows:

-1-

# I.

## INTRODUCTION

This is a complaint for damages, injunctive relief, and any other action deemed correct, just and proper by the Court, by THOMAS JOHN HEILMAN, a California State prisoner proceeding without counsel, and currently incarcerated at the California Mens Colony-East in San Luis Obispo, California.

That Heilman alleges violations and deprivations of his First, Eighth and Fourteenth Amendment rights to the United States Constitution, and pursuant to the Civil Rights Act, 42 USC Section 1983 by the defendants named herein including:
(1) First Cause of Action - Retaliatory Acts of Abuse, Harassment, Withholding Food and Threats of Bodily Harm against Plaintiff by the defendants for plaintiff's exercise of his First and Fourteenth Amendment rights to petition the government for the redress of grievances, requesting grievance forms, informing CDCR superior officers of misconduct by subordinate Correctional Officers and discrimination in violation of the due process and equal protection clauses;

-2-

(2) Second Cause of Action — The use of Excessive Force applied maliciously and sadistically causing an unnecessary and wanton infliction of pain without penalogical justification by defendants A. Silva, A. Buenrostro, D. Tyson, and F. Jaca in violation of plaintiff's Eighth Amendment right to the U.S. Constitution to be free from cruel and unusual punishment;

(3) Third Cause of Action — The use of excessive and unnecessary force applied maliciously and sadistically causing an unnecessary and wanton infliction of pain without penalogical justification by defendant E. Fontan in violation of plaintiff's Eighth Amendment right to the U.S. Constitution to be free from cruel and unusual punishment; and retaliation in violation of Heilman's right under the First Amendment;

(4) Fourth Cause of Action — Brutality, and Torture with the use of Excessive Force applied maliciously and sadistically causing unnecessary and wanton infliction of pain in violation of Plaintiff's Constitutional Eighth Amendment right to be free from cruel and unusual punishment by defendants named herein;

-3-

(5) _Fifth Cause of Action_ — The failure by supervisorial defendants to intervene, to stop, or prevent retaliatory acts against plaintiff that resulted in deliberate indifference to plaintiff's U.S. Constitutional right to be free from cruel and unusual punishment, under the Eighth Amendment; and the First and Fourteenth Amendment right to petition for grievances;

(6) _Sixth Cause of Action_ — The failure by supervisorial defendants to intervene, to stop, or prevent an assault and the use of excessive force against plaintiff by named defendants that resulted in deliberate indifference to Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment;

(7) _Seventh Cause of Action_ — The failure by supervisorial defendants, and medical staff defendants to intervene, to stop, or prevent the continued brutality and torture with the use of excessive force against plaintiff by named defendants that resulted in deliberate indifference to Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment;

1   (8) Eighth Cause of Action — Against de-
2   fendant Supervisors and senior admini-
3   strative staff including D. Paramo, D. Ar-
4   guilez, C. Franco, M. Stout and the CDCR,
5   Does 1-10 for maintaining and condoning
6   practices such as regular beatings against
7   prisoners and plaintiff in the RJ Donovan
8   Administrative Segregation Unit by the
9   defendants named herein that resulted
10  in deliberate indifference to Plaintiff's
11  Constitutional rights under the Eighth
12  Amendment to be free from cruel and
13  unusual punishment.

14
15  The United States District Court for the
16  Southern District of California is the appro-
17  priate venue for this action under
18  28 USC section 1391 (b)(2) as the sub-
19  stantial portion of events giving rise to
20  the claims alleged in this complaint occurred
21  at the RJ Donovan Correctional Facility
22  (RJDCF) in San Diego County, California.
23
24
25
26
27
28

-5-

# II.
## PARTIES

PLAINTIFF THOMAS JOHN HEILMAN, is a prisoner of the State of California, currently incarcerated at the California Mens Colony-East (CMC-E), located in San Luis Obispo, California. That Heilman was incarcerated at RJ Donovan Correct. Facility at all times relevant to this action.

## DEFENDANTS

1) DEFENDANT A. SILVA, is employed as a Correctional officer at the RJDCF at all times mentioned herein.

2) DEFENDANT A. BUENROSTRO, is employed as a Correctional Officer at the RJDCF at all times mentioned herein.

3) DEFENDANT D. TYSON, is employed as a Correctional Officer at the RJDCF at all times mentioned herein.

4) DEFENDANT F. JACA, is employed as a Correctional Officer at the RJDCF at all times mentioned herein.

5) DEFENDANT D. ARBUILEZ, is employed as a Correctional Lieutenant at the RJDCF at all times mentioned herein.

6) DEFENDANT E. OJEDA, is employed as a Correctional Sergeant at the RJDCF at all

1 | times mentioned herein.
2 | 7) DEFENDANT ARMISTED, is employed as a
3 | Correctional Officer at the RJDCF at all times
4 | mentioned herein.
5 | 8) DEFENDANT THOMPSON, is employed as a
6 | Correctional Sergeant at the RJDCF at all
7 | times mentioned herein.
8 | 9) DEFENDANT R. RUSSELL, is employed as a
9 | Psychiatric Technician (P.T.) at the RJDCF at all
10 | times mentioned herein.
11 | 10) DEFENDANT LACORUM, is employed as a
12 | Registered Nurse at the RJDCF at all times
13 | mentioned herein.
14 | 11) DEFENDANT C. FRANCO, is employed as a
15 | Correctional Lieutenant at the RJDCF at all
16 | times mentioned herein.
17 | 12) DEFENDANT M. STOUT, is employed as a
18 | Correctional Captain at the RJDCF at all
19 | times mentioned herein.
20 | 13) DEFENDANT D. PARAMO, is employed as a
21 | Warden at the RJDCF at all times mentioned
22 | herein.
23 | 14) DEFENDANT JANE DOE, is employed as one of
24 | two on-duty medical staff with R. Russell, (P.T)
25 | at the Bldg. 6, Ad. Seg. Unit at RJDCF on
26 | 5/9/2013 Second Watch at all times mentioned
27 | herein.
28 | 15) DEFENDANT CDCR, and Does 1-10 are the

1  employers of the defendants at the RJDCF
2  at all times mentioned herein.
3  16) DEFENDANT E. FONTAN, is employed as a
4  Correctional officer at the RJDCF at all times
5  mentioned herein.
6
7  Furthermore, that Heilman is informed, believes,
8  and thereupon alleges that defendants: A. Silva,
9  A. Buenrostro, D. Tyson, F. Jaca, D. Arguilez, E. Ojeda,
10  Armisted, C/o, Thompson, Sgt, R. Russell, LaCorum, R.N.,
11  C. Franco, M. Stout, D. Paramo, E. Fontan, and Jane
12  Doe, Bldg. 6, Administrative Segregation Unit
13  medical staff on 5/9/2013, Second Watch, are all
14  directly, legally, and personally responsible for
15  the events and happenings referred to in this
16  complaint, and proximately or directly caused
17  injuries and damages to Heilman as herein
18  alleged.
19
20  That the true names and capacities, whether
21  individual, associate, or corporate of Does 1
22  through 10, inclusive, are presently unknown to
23  Heilman, who therefore sues said defendants
24  by their employment to the Calif. Dept. of Correc-
25  tions (CDCR) and identities as Does 1-10.
26  That each defendant designated herein as a
27  Doe and the CDCR, are legally, directly or
28  personally responsible in some manner for the

-8-

1   events and happenings referred to in this Complaint,
2   and proximately or directly caused injury and dama-
3   ges thereby to Heilman as alleged. Plaintiff prays
4   leave to amend this complaint when the true names
5   have been ascertained.
6
7       That at all times mentioned herein, defendants,
8   each and every one of them, inclusive, were em-
9   ployees and agents of the CDCR and/or of
10   the other defendants, and each of them, and
11   each were acting under color of authority and
12   color of state law, and are sued thereof in their
13   individual capacities for the claims as alleged
14   in this complaint, except for the Dept of Corrections
15   (CDCR) sued in its individual and official capacity.

16               III.

17           STATEMENT OF FACTS

18   A.   ABUSE, HARASSMENT, WITHHOLDING FOOD AND SUPPLIES MAY 6th
       AS RETALIATION — THREATS OF BODILY HARM.      MAY 9th
19   1.   On May 6, 2013, Heilman was placed into
20   the Administrative Segregation Unit, Bldg.
21   6, Room #229 at the RJ Donovan Correctional
22   Facility (RJDCF). Heilman alleges his placement
23   into Ad. Seg. was to remove him from his program
24   as a retaliatory act because of Heilman's
25   engaging in Constitutionally protected activities,
26   (that his initial placement in Ad. Seg. is not a claim
27   in this complaint).

28

                    -9-

2.   However, it was claimed by prison officials to place Heilman in Ad. Seg. that he was the A-yard "shot-caller" for the white population and had threatened "all the whites" to show committment paperwork under threat of violence.

3.   That the absurdity of this claim was the impetus for Building 6, Ad. Seg. Correctional officers including defendants A. Silva, A. Buen, rostro and D. Tyson to begin to harass, abuse and ridicule Heilman as an alleged "shot-caller" for an "EOP-yard" and Heilman's age (56). That the defendants acquired this false information immediately upon reading Heilman's Ad. Seg. lock-up order. [See Lock-up order for Ad. Seg. attached as Exhibit "A"].

4.   That upon his arrival in Bldg. 6, Ad. Seg. on May 6th, Heilman was not issued supplies or proper bedding (Known as a "Fish Kit").

5.   That Heilman was housed in Room #229 in Bldg. 6, Ad. Seg on May 6th, a Room which had not been cleaned after its previous occupant, and which had feces and urine on the walls, and floor, and on the toilet, and which powerful and overpowering stench permeated

-10-

the room.

6.  That Heilman began to immediate request that he been issued his basic and mandatory hygiene, and sanitary materials including soap, toilet paper, tooth powder, tooth brush, etc., as well as disinfectant to allow Heilman to clean Room #229 himself.

7.  That Correctional Officers on-duty on May 6th began to ridicule and abuse Heilman, as being a "shot-caller" and refused all of Heilman's requests for sanitary or hygiene supplies, and also refused Heilman's requests for proper bedding (Heilman had been give one sheet and a dirty odorous blanket) as well as Heilman's requests for writing materials — paper, envelope and pen, and 602 Appeal Form.

8.  That defendant Buenrostro was Heilman's main antagonist on May 6th and refused to respond to Heilman's pleas for supplies as well as ignoring Heilman's pleas for his prescription medication. That it was defendant Buen-rostro who initially threatened Heilman with bodily harm for Heilman's continued requests, and when Heilman pounded on the door to attract the attention of Ad. Seg.

1  Supervisor's and defendants E. Ojeda, Sgt., Thomp-
2  son, Sgt., and or D. Arguilez, Lieutenant, so as to
3  provide Heilman his basic supplies and medication,
4  as well as attracting the attention of staff passing
5  out medication.
6
7  9. That Heilman alleges that the mind-set and
8  practices of the defendants and other Bldg. 6
9  Ad. Seg. staff was such as to offer the least
10  possible amount of aid to the confined in-
11  mates as possible. This practice was wide-spread
12  in Ad. Seg., as was the practice to agree to provide
13  an inmate his request in "just a few minutes",
14  but never would or claiming that the request
15  was "not part of their job!"
16
17  10.  That beginning early on the morning of May 7, 2013
18  Heilman continued to request that he be pro-
19  vided his issue of basic hygiene and sanitary
20  supplies, and Heilman continued to pound on
21  his door when he was ignored or threatened
22  so as to attract the attention of Bldg. 6
23  supervisory staff to resolve his need for
24  these basic supplies.
25
26  11 That Supervisory defendants were made
27  aware of Heilman's need for basic hygiene
28  items as Heilman's Room #229 was directly

-12-

1 | in front of the Supervisor's / defendants' office
2 | and several times Heilman could see defen-
3 | dants E. Ojeda, Sgt., D. Arguilez, Lt., or Thompson,
4 | Sgt. point towards Heilman's Room #229 as if
5 | making inquiries of nearby staff members
6 | of the reasons for Inmate Heilman's discontent.
7 |
8 | 12. That starting on May 7, 2013, Heilman also
9 | began to request that he be provided a CDCR
10 | Form 602 Appeal and a CDCR Form-22 Request
11 | Form and a pen to appeal the lack of being
12 | provided supplies. Once more, Heilman's requests
13 | were ignored or met with derision ~~told~~ from
14 | defendant Buenrostro and other unnamed
15 | Correctional Officers when Heilman was told
16 | to go "F•0k HIMSELF!"
17 |
18 | 13. That during Third Watch on May 7, 2013,
19 | Heilman was summoned and met with A-Facility
20 | Captain Sanchez who informed Heilman of the
21 | impending investigation for his placement
22 | in Ad. Seg. That during this meeting defen-
23 | dant Thompson, Sgt. was present. That Heilman
24 | revealed to Captain Sanchez that he was being
25 | denied every piece of required item needed
26 | and required to be standard issue in Ad. Seg.
27 | per the CCR Title 15. That Sgt. Thompson
28 | initially denied Heilman's allegations, and then

-13-

1  assured Captain Sanchez, after her admonish-
2  ment, that he would personally provide the
3  required hygiene items, cleaning supplies, pre—
4  scription medication and a 602 Appeal Form.
5
6  14. That Heilman alleges his telling Captain San-
7  chez of Ad. Seg. practices, and in the denial of
8  supplies, that caused defendant Thompson, Sgt. to
9  lose face and dignity in front of his Superior
10 Officer, and defendant Thompson plotted
11 revenge in retaliation for Heilman seeking the
12 assistance of A-Facility Captain Sanchez.
13
14 15. That defendant Thompson, Sgt., enlisted
15 the help of Third Watch Correctional Officer
16 defendant Armisted, and other Correctional Staff
17 including c/o Miller and c/o Bustos (not
18 named as defendants) to retaliate against
19 Heilman for speaking to Captain Sanchez.
20
21 16. That on May 7, 2013, Heilman was bypassed
22 by c/o Miller or c/o Bustos and not provided a
23 dinner meal on a standard plastic tray. That
24 Heilman called out that he did not receive a
25 meal, and pounded on his door. All inmates
26 present in Bldg. 6 heard Heilman's request for
27 his meal, as well as Officer's C. Wilson and Brown
28 who were preparing the food trays, and defendant

-14-

1    Thompson, Ad. Seg. Sergeant Third Watch,

2

3    17. That Heilman observed defendant Armisted

4    prepare a paper tray with food, including

5    scraping food off the table and onto the paper

6    tray. That Heilman Armisted then proceeded
       defendant

7    to Heilman's room #229 with the paper tray

8    of food, and opened Heilman's food port. When

9    Heilman reached for the tray defendant

10   Armisted threw the tray and its contents

11   onto Heilman, and Armisted laughed and

12   warned Heilman of future retaliation. [De-

13   fendant Armisted was not discrete when

14   perpetrating this act (known as "gassing" to throw

15   feces, urine or food on an individual), as his actions

16   were in full view of all other Correctional Staff

17   on-duty, and could not have been accomplished

18   without defendant Thompson's acquiescence,

19   approval or order to retaliate against Heilman].

20   ✝

21

22   18.   That among the many inmates who observed

23   and witnessed defendant Armisted's retalia-

24   tory act are Inmate S. Walker, CDC No. P-61901
           on May 7, 2013,

25   who was housed in adjoining cell #228, and

26   Inmate D. Perry, CDC No. T-05015, Rm #135.

27   Heilman secured a Deposition/Affidavit from

28   Inmate Perry describing defendant Armisted's

-15-

1 retaliatory conduct of withholding food and
2 throwing Heilman's meals onto Heilman and onto
3 the floor on both May 7th and May 8th of 2013.
4 [See Inmate D. Perry's Declaration/Affidavit,
5 attached as Exhibit "B"].

6

7 19. That on May 8, 2013, Heilman was again by-
8 passed when defendants Buenrostro, Silva, and/
9 or Tyson distributed the morning meal. As lunch
10 bags were also passed out in the morning, Heilman
11 missed both meals.

12

13 20. That upon requesting to see a Supervisor, the
14 defendants on-duty during Second Watch in-
15 cluding Buenrostro, Silva and Tyson, and other un-
16 named Correctional Officers once again threatened
17 Heilman with bodily harm including the warning
18 that, "we are going to Fook you up!"

19

20 21. That Heilman became concerned and frightened
21 for his safety, as well as becoming weak from
22 having received no food, and pleaded with any
23 Officers in his area for help. Heilman continued to
24 request his hygiene and sanitary supplies, his
25 medications, proper bedding and a towel and
26 writing supplies, including a 602 Appeal Form and
27 a Form-22 Inmate Request, but was denied under
28 threats of Violence to his safety by the defendants.

22. That out of concern for his health, safety and well-being, Heilman covered the window in the door of the cell on May 8th (also known as "boarding up"), and began to yell and pound on the door calling-out that he be allowed to talk to the Bldg. 6 Lieutenant Supervisor, D. Arguilez _defendant_. However defendant E. Ojeda, Sgt. responded and initially refused Heilman contact with the Lieutenant. Eventually, Heilman convinced Sgt. Ojeda to allow him to speak to the Lieutenant in exchange for Heilman uncovering his window.

23. That Heilman uncovered his window immediately before talking to defendant Arguilez and during the conversation Heilman repeatedly requested that the Lieutenant stop the abuse, harassment and threats of bodily harm he was receiving from the defendants and other officers; that the Lieutenant require his subordinate officers to provide the required hygiene and sanitary items (i.e., soap, toilet paper, a toothbrush, toothpowder) a towel, writing supplies, including a 602 Appeal grievance form and a Form-22; but most importantly Heilman pleaded with defendant Arguilez to require the defendants and other Bldg. 6 officers to provide his meals, and to stop defendant Armisted, under orders from

-17-

1  defendant Thompson, Sgt. supervisor of Bldg.6 <sup>Third Watch</sup>
2  Ad.Seg. to discontinue the retaliatory act
3  of throwing Heilman's food onto Heilman and
4  onto the floor of his Room.
5
6  24. That Heilman alleges defendant Arguilez was
7  reluctant to provide Heilman "any type" of
8  assistance, but finally agreed to order a small
9  amount of toilet paper, a bar of soap, a toothbrush
10  with tooth powder and writing supplies with
11  a grievance form to be provided. [All actions
12  of May 6th, May 7th, May 8th and May 9th, 2013,
13  was captured on video-recordings from multiple
14  permanent cameras inside the Bldg. 6, Ad. seg.]
15
16  25.  That defendant Arguilez agreed to inform
17  defendant Thompson, Sgt. and defendant Armi-
18  sted, C/o., to stop the harassing and retaliatory
19  act of throwing his meals onto Heilman, and to
20  order the other defendants to stop the abu-
21  sive conduct of making threats of bodily harm
22  to Heilman because of Heilman's complaints.
23
24  26.  That after the Second Watch shift left Bldg.6,
25  including defendant Arguilez, the Third Watch shift
26  staff including defendant Armisted under the watch-
27  ful eye of defendant Thompson, Sgt., again began
28  to harass Heilman with threats and acts of

1  Knocking and Kicking Heilman's door to Room#229,
2  when walking past. Once again, during the evening
3  meal of May 8, 2013, and as confirmed by Inmate
4  Perry, CDC. No. T-05015 in his Declaration/Affi-
5  davit attached as Exhibit "B", Heilman was
6  bypassed and did not receive a regular plastic
7  dinner tray from C/o's Miller and Bustos, but that
8  C/o Armisted scraped a meal off the table and
9  onto a paper tray, and in full view of all the
10 prison staff and defendant Thompson, Sgt.
11 supervising the distribution of meals, opened
12 Heilman's food slot in the door, and when Heil-
13 man was reluctant to approach him, defen-
14 dant Armisted threw the paper tray of food
15 onto the toilet, wall and floor of Room#229.
16
17 27.  That after two days Heilman's health began
       without food
       to be jeopardized, and Heilman once more covered
       on the night of May 8th
18
19 his door window, pounded on his door and complained
20 loudly to defendant Thompson and other officers
21 present about defendant Armisted's retaliatory
22 acts. That Heilman's complaints fell on deaf
23 ears, that noone offered aid, that Heilman
24 was once more ridiculed and threats of further
       with
25 retaliation for his complaining, and attempting
26 to file a grievance, and his 602 Appeal was never
27 accepted nor filed but thrown away. Heilman's
28 window was covered from approximately 8:30 pm

1  until 10:00pm when C/o Carrione reached through
2  Heilman's tray slot and tore off the paper
3  covering his window. Not one staff member
4  present on May 8, 2013 in Bldg. 6, including medi-
5  cal staff attempted to contact Heilman and
6  exhibited "no fear for (his) safety" when knowing
7  of Heilman's reasons for covering his window
8  was to complain about his lack of food under
9  the actions of defendant Armisted who was
10  observed by all staff present throwing the tray
11  into Heilman's Room.

12

13  BB. BUILDING SIX SUPERVISORIAL DEFENDANTS
14      FAIL TO INTERVENE TO STOP OR PREVENT
15      RETALIATORY ACTS AGAINST HEILMAN
        DURING THE DATES OF MAY 6 - MAY 8, 2013.
16

17  28. That Heilman alleges and avers that superv-
18  sorial defendants assigned to Bldg. 6, AD. SEG.
19  were including D. ARGUILEZ, LT., E. OJEDA
20  S6T, Second Watch and THompsoN, S6T., Third
21  watch, were informed and aware tha of Heilman's
22  complaints all through the dates of May 6th May 8th
23  2013. That Heilman personally informed defendants
24  Arguilez and Ojeda of threats of bodily harm made
25  against him but did nothing! That defendant
26  Thompson was informed by Heilman and ordered by A-Facility
27  Captain Sanchez to provide Heilman's basic
28  hygiene and sanitary items, and medications but

-20-

1  only became angry when ordered by Captain Sanchez
2  on May 7th to provide Heilman the required and
3  necessary hygiene items, and Heilman's Prescription
4  medications, and failed to stop or intervene  all 3 defendants
5  in his subordinate officers retaliatory acts  their
6  against Heilman.

7

8  29.  That Heilman alleges, and it is confirmed, through
9  Inmate eye-witness accounts and video-recorded
10  evidence that Heilman's food was being
11  withheld and that defendant Armisted could
12  not have perpetrated the acts as alleged without
13  the knowledge, acquiescence, approval and/or
14  orders from his supervisor defendant Sgt.
15  Thompson. That defendant Thompson was observed
16  speaking to defendant Armisted prior to the
17  evening meals on May 7th - May 8th, and it was
18  defendant Armisted who passed Thompson's
19  orders to bypass Heilman's Room to other officers
20  serving the meal including C/o miller and C/o Bustos,  evening

21

22  C.  THE UNLAWFUL AND EXCESSIVE USE OF FORCE AND
23      ASSAULT AGAINST HEILMAN BY THE DEFENDANTS
       ON THE DATE OF MAY 9, 2013.
24

25  30.  On the morning of May 9, 2013, Heilman was finally
26  given his food! Heilman had not eaten in two days!
27  That Heilman again requested to speak with
28  defendant Arguilez concerning the continued threats,

-21-

1  and Third Watch defendants C/o Armisted and Sgt.
2  Thompson continuing to "gas" Heilman with his
3  evening meals. Once more, defendants Buenrostro,
4  Silva, Tyson and other Correctional Officers threatened
5  Heilman for complaining, thus Heilman was compelled
6  to once more cover his window (board-up) and pound
7  on his door to be able to meet with the Lieutenant
8  Supervisor.

9

10  31. That Heilman alleges that the actions of
11  defendants A. Silva, C/o, A. Buenrostro, C/o D. Tyson,
12  C/o, and F. Jaca, C/o on the morning of May
13  9, 2013, at approtimately 7:00 am are confirmed
14  by Inmate eye-witness accounts as well as
15  video-recorded evidence.

16

17  32. That Heilman had "boarded-up" and was
18  pounding on his door complaining, and re-
19  questing to speak with Lt. Arguilez. That
20  defendants Silva, Buenrostro and Tyson crouched
21  behind a plastic extraction shield with in front of Room #229
22  defendant Jaca nearby. That the defendants
23  had made plans beforehand to assault
24  Heilman, a beating by the "extraction team"
25  of Bldg. 6. A.D. SEG., because of Heilman's
26  complaints over the previous three days, and
27  because Heilman had named the defendants
28  as perpetrating retaliatory acts of making

-22-

threats of bodily harm to Heilman for those
complaints to A-Facility Captain Sanchez, and
defendants Lt. Arguilez, Sgt. Ojeda and Sgt. Thompson,
and for the complaints of the defendant's failure
to provide meals.

33. That without warning, and as confirmed by
Inmate eye-witness accounts and video-recorded
evidence, defendants Silva, Buenrostro and Tyson
rushed immediately into Room #229 after having
the door opened, and because Heilman believed
he would be harmed by pepper-spray, Heilman
fell immediately face-down on the floor of
Room #229 and defendants Silva, Buenrostro
and Tyson, behind the large plastic shield,
landed on Heilman's back.

34. That defendant A. Silva immediately threw the
shield aside and began to punch and strike
Heilman in the head, back and left side of
his body without provocation. That defendant
Silva told Heilman, "we're gonna teach you a
lesson now!", that defendant Silva pulled
Heilman's left arm back to allow Silva to more
easily strike Heilman's rib cage on his left
side, that defendant Silva roughly applied
hand cuffs (restraints) which had been severely
over-tightened, off of Heilman's wrists and up

-23-

1  his arms 4 or 5 inches. Leg restraints were
2  also applied and again over tightened by de-
3  fendants D. Tyson and F. Jaca. That defendant
4  Buenrostro then came in front of Heilman and kicked
5  Heilman several times in the head and neck and
6  pressed down on Heilman's head and left ear
7  with his boot.
8
9  35.  That Heilman alleges that after restraints
10  on his arms and legs had been applied to an
11  extent that Heilman could not feel his hands
12  or feet, Heilman was lifted off the ground
13  and another, more severe round of beating
14  began by defendants A. Silva, A. Buenrostro
15  and D. Tyson. In Heilman's recollection, defen-
16  dant F. Jaca did not take part in the beating
17  and assault but stood watch as a look-out
18  in front of, and covering the door to prevent
19  those outside from looking in.
20
21  36.  That defendant A. Silva lifted Heilman's
22  restrained arms from behind Heilman's back
23  to expose Heilman's left-side rib cage area
24  and defendant A. Buenrostro and D. Tyson
25  alternated striking and punching Heilman
26  in the rib cage area. After a couple of blows
27  Heilman's head and face would fall forward
28  prompting defendant Buenrostro to strike

-24-

1  Heilman in the face and jaw. This occurred
2  several times as each time Heilman was ready
3  to pass-out from the beating his head would
4  fall forward and defendant Buenrostro
5  would punch up and into Heilman's face throwing
6  back Heilman's head. That after this occurred
7  4 or 5 times, defendant A. Silva told defendant
8  A. Buenrostro to stop and told him, "I told
9  you don't hit him in the face!", revealing
10  this was a pre-planned assault and beating.
11

12  37.  That defendant Silva exchanged his place
13  holding Heilman with defendant Tyson, allowing
14  defendant Silva to throw heavy blows into
15  Heilman's exposed left side as Tyson <sup>also</sup> forced
16  Heilman's <sup>arms</sup> up and away from his back. During
17  the beating someone of the defendants kept
18  glancing furtively out of the door, and some-
19  one defendant saying, "He's resisting!— He's
20  resisting! Stop resisting!", to conceal the defen-
21  dant's continued beating and striking of
22  Heilman's body. Heilman was struck over 30 <sup>vicious</sup> blows!
23

24  38. Mercifully, <sup>during the beating,</sup> Heilman had an out-of-body
25  experience as it seemed the defendants wanted
26  Heilman to scream-out in pain, and <sup>which prevented</sup> <del>before</del> Heilman
27  <sup>to succumb</sup> <del>succumbed</del> from pain. Heilman was then taken
28  by the arms, out of Room 229 and placed in a

-25-

improperly applied

1   telephone-booth size "holding cage" with ↑
2   arm and leg restraints kept in place for over
3   one and one-half hours.

4

5   39. That Heilman alleges that defendants Silva,
6   Buenrostro, Tyson and Jaca, and as supervised by
7   defendants Arguilez, and Ojeda, Sgt., violated
8   established CDCR policy and protocols when con-
9   ducting an alleged "extraction" pursuant to
10  the "use of force" in an extraction which requires
11  authorization and the presence of a First or Second
12  Level Manager as well as other required criteria
13  pursuant to the Dept. Operating Manual, (D.O.M.) sections
14  51020.12.3 and 51020.12., and which will be elabora-
15  ted more extensively later in this complaint.

16

17  D.   HEILMAN IS TORTURED AND BRUTALIZED WHEN
18       HELD IN A CAGE IN SEVERELY CONSTRICTING
19       AND OVERTIGHTENED ARM AND LEG RESTRAINTS
20       AFTER AN ASSAULT AND BEATING AND OFFERED NO
21       MEDICAL CARE BY THE DEFENDANTS OR OTHER
22       BLDG. 6 MEDICAL STAFF FOR OVER FOUR HOURS

23  40.   That after defendants A. Silva, A. Buenrostro,
24  D. Tyson and F. Jaca rushed into Room #229 and
25  inflicted a savage and premeditated assault and
26  beating upon Heilman on the morning of Thurs-
27  day May 9, 2013, Heilman was taken out of Room
28  #229, and while still in arm restraints (behind

-26-

his back) and leg restraints, both of which had
been over tightened as to cause ruptured blood
vessels, permanent nerve damage and numbness
in his left hand and right foot, and scarring, Heil-
man was placed in a "holding-cage" no larger
than a telephone booth and held there for approx-
imately four (4) hours.

41. That Heilman alleges the restraints were kept
in place for 1½ to 2 hours so as to torture and
brutalize Heilman who screamed in pain and
cried for mercy from the Almighty God and
Jesus to come to his aid and remove the restraints
which, when tightened so severely, were no
longer restraints but medieval torture devices.

42. That at least 50 prison staff members
entered Bldg. 6, AD.SEG. and observed, heard
and witnessed Heilman's painful and anguished
pleas for help to have the restraints removed
as the pain from these over tightened mechani-
cal devices were overwhelming.

43. That the defendants including A. Silva, A.
Buenrostro, D. Tyson, F. Jaca, D. Arguilez, E. Ojeda,
C. Franco, M. Stout, R. Russell and Jane Doe,
medical staff Bldg. 6, were aware of Heilman's
pain but kept the restraints in place so as to

-27-

1  cause the maximum infliction of unnecessary
2  pain as possible so as to brutalize Heilman, and
3  as Bldg.6 housed the EOP-status inmates
4  for Donovan prisons AD.SEG.Unit, dozens of
5  mental health Clinicians arrived into Bldg.
6  6 during Heilman's anguished cries for help
7  including Heilman's clinician Ms. T. Harris,
8  a Psychiatric Social Worker, and Dr. Nizamani,
9  M.D. and psychiatrist. [See Ms. Harris'
10 Progress Note dated 5/9/2013, as well as hand-
11 written Progress Notes of 5/9/2013 from Dr.
12 Nizamani.]-[Attached as Exhibit "C".]

13

14 44. That what can be ascertained from
15 Inmate eye-witnesses who have provided
16 Declarations/Affidavits including In-
17 mates R.Ellard, CDC No. T-09242, D.Perry
18 CDC No. T-05015 (Ex."B"), and E. Ramirez,
19 CDC No. K-30690, is that Heilman suffered
20 in pain when mechanical restraints were over-  ^great
21 tightened and left in place for over 1½ hours
22 while Heilman cried out to Jesus for help
23 because of his pain. [See Declarations of In-
24 mate D.Perry (Ex."B"), R.Ellard and E. Ramirez, —
25 attached as Ex "D".]

26

27 45. That Heilman stayed in a "holding-cage"
28 for over four (4) hours, at which time

-28-

1 several defendants including C. Franco, Lt., and
2 M. Stout, Captain, D. Arguilez, and E. Ojeda
3 viewed Heilman in the "holding cage" yet Heilman's
4 restraints were not removed and Heilman was
5 offered NO medical assistance from medical
6 staff on-duty in Bldg. 6, AD. SEG., second watch
7 on 5/9/2013, including defendant R. Russell, P.T. Jane
8 Doe, P.T. or R.N. and LaCorum, R.N.
9
10 46. That Heilman alleges his injuries to be so
11 severe, and the tell-tale signs of a beating
12 so convincing, that Heilman was left in a
13 "holding-cage" as torture ~~for~~ over four (4)
14 hours to allow the defendants Silva, Buenrostro,
15 Tyson and Jaca to concoct a "plausible alibi"
   and
16 concerning Heilman's injuries, in conspiracy
17 with supervisory defendants including P. Argui-
18 lez, Lt., E. Ojeda, Sgt., C. Franco, Lt. and M. Stout,
19 B-Yard Facility Captain who had arrived at
20 Bldg. 6 as part of responding staff, and/or
21 members of the weekly ~~Unn~~ Institutional
22 Classification Committee (I.C.C.).
23                                      two
24 47. That the defendants perpetrated fraudu-
                        allegedly
25 lent alibis of which permitted defendants
26 Silva, Buenrostro, Tyson and Jaca to enter
27 Heilman's cell #229 without safeguards
28 and in violation of CDCR policy and procedure

1  so as to "plausibly deny" inflicting the serious
2  and permanent injuries Heilman suffered as
3  a result of the assault and beating, and surgery from the
4  to correct Heilman's internal injuries.
5
6  48. That defendants Silva, Buenrostro, Tyson and
7  Jaca fraudulently reported that Heilman was
8  seen hanging with a noose around his neck made
9  from Heilman's one bed sheet, and that upon
10  rushing into Room #229, without established
11  safeguards in place to extract Heilman, so as to
12  allegedly "save" Heilman, and Heilman then attacked
13  the plastic extraction shield wielded by over 700
14  pounds of Correctional officer mass, and in the
15  process of hanging himself, Heilman "battered"
16  defendant Correctional Officer D. Tyson so as
17  to bring down, as his own doing, a CDC 115 Rules
18  Violation Report (RVR) on his head for
19  "Battery on a Peace Officer," Log No. RJD-FB-
20  13-095. [See 115 RVR, Log No. RJD-FB-13-095 and
21  assorted supplemental Reports including the
22  Investigative Employee's (I.E.) Report and
23  Heilman's request for witnesses, documents and
24  video-recorded evidence, attached as
25  Exhibit "E".] - [and Incident Report Log# B06-13-05-0137]
26
27  E.  INMATE EYE-WITNESSES CONTRADICT DEFENDANTS
28       ALIBIS AND ALLEGATIONS

49. As previously shown in this complaint, Heilman obtained several Declaration/Affidavits from Inmates present in Bldg. 6 ADSEG on May 6-9, 2013. [See Exhibits "B" and "D".] In addition, the defendants perpetrated violations of Heilman's Constitutional and civil rights, and committed criminal acts against Heilman in full view, and without regard, to Inmate and staff witnesses, and Heilman presented the identity of a witness, S. Walker, CDC No. P-61901 who can identify the defendants as committing such acts, events and happenings as alleged herein, although Heilman was unable to procure Inmate Walker's Declaration/Affidavit.

50. That Heilman alleges many Inmates had a direct view into Room #229, on 5/9/2013, and although defendant F. Jaca stood in front of the door to conceal the action occurring inside the room, Heilman did obtain the Declaration/Affidavit of Inmate R. Ellard, CDC No. T-09242, [See Exhibit "D"], who witnessed defendants Silva, Buenrostro, Tyson, and Jaca's approach to the front of Room #229, and while Heilman was shouting for the Lieutenant and banging on the door, observed the door to Room #229 being opened and could clearly see Heilman in Room #229 without a sheet or noose tied around his neck, and Heilman was not hanging himself as stated by the defendants!

-31-

F. HEILMAN SUFFERS SEVERE, LONG-LASTING AND
   PERMANENT INTERNAL INJURIES INFLICTED
   BY DEFENDANTS SILVA, BUENROSTRO, TYSON AND JACA.

51.  On May 9, 2013, upon being placed in a holding-
cage after a premeditated assault and beating
by defendants Silva, Buenrostro, Tyson and Jaca,
Heilman's injuries became apparent immediately by
all who observed him. Instead of following CDCR
Policy and Procedure, and the use of Common Sense to
summon an ambulance for Heilman after an
alleged suicide by hanging, Heilman was held
in overtightened arm and leg restraints for over
1 1/2 hours, and overall held in the holding-cage
for over four (4) hours. [See holding-cell Log,
Attachment A, attached as Exhibit "F".]

52. That while held in the holding-cage, and
upon being freed from the torturous mechanical
restraints, Heilman immediately began asking
for medical assistance because of the severe
                 and injuries
pain to his face from possible facial fractures and
a possible broken jaw; for medical assistance for
the broken blood vessels, numbness and nerve damage
in his arms, hands, legs and feet from overtightened
mechanical restraints; and for emergency medi-
cal assistance for the pain emanating from
the left side of Heilman's thorax and rib cage
area, and for the shortness of breath and

-32-

1   the difficulty in drawing in air into his lungs
2   because of the immense pain in Heilman's left
3   side, and from which Heilman believed was
4   caused by the defendants pounding and
5   striking Heilman in the left side of his rib cage
6   multiple times and possibly breaking Heilman's ribs.
7   ~~IA#~~ Heilman's injuries were much worse than Heilman
8   initially believed!
9
10   53.  That on top of the damage, bruises, and injuries to
11    Heilman's face and head, on top of the lacerations,
12   nerve damage and other injuries from over tightened
13   mechanical restraints — Heilman sustained
14   a 35% to 40% collapse of his left lung, a
15   severe and long-lasting internal injury caused
16   by the blunt force trauma of multiple and power-
17   ful blows by defendants Silva, Buenrostro and
18   Tyson to Heilman's unprotected left-side rib
19   cage area, after Heilman's arms were lifted up behind
20   his back to expose this vulnerable area of Heilman's
21   body to attack.
22
23   54.  However, although Heilman's injuries were apparent
24    and Heilman complained of pain in his left-side
25   accompanied by difficulty in breathing,
26   Heilman was offered **NO** medical care or first
27   aid on the morning of May 9, 2013, ~~by~~ as the
28   defendants scrambled to fabricate a plausible

1  excuse and alibis for Heilman's injuries. That Bldg. 6
2  assigned medical staff R. Russell, P.T., Jane Doe, P.T.,
3  or R.N., and LaCorum, R.N., completely and deliberately
4  ignored Heilman's pleas; initially to have the me-
5  chanical restraints removed, and then pleas for
6  emergency medical care as Heilman's pain was
7  extreme, and his breathing labored.

8

9  55. That a Medical Injury Report was initially
10  completed at Bldg. 6, AD SEG, and which was then
11  discarded by prison hospital staff as being too inaccurate.
12  That another CDCR Form 7219, medical Report of
13  Injury was then completed by R. Russell, P.T. and
14  as stated reviewed by LaCorum, R.N. at 0737 hrs.
15  That although this Injury Report shows multiple
16  areas locating Heilman's injuries, none of the
17  injuries shown are _consistent_ with the defen-
18  dants fraudulent allegations that Heilman was
19  seen and saved from a Noose," tied around his neck."
20  [See medical Report of Injury for Heilman, Form
21  7219, dated 5/9/13 and signed by R. Russell, P.T.,
22  attached as Exhibit "G."] "NO FIRST AID INDICATED PER RN"
23  [AND OTHER REPORTS OF HEILMAN'S INJURIES - Exhibit "G".]
24  56. That Heilman immediately accused defendants
25  A. Silva, A. Buenrostro, D. Tyson, and F. Jaca of unlaw-
26  ful and excessive use of force which resulted in
27  Heilman's external injuries to be video-recorded at
28  Bldg. 6 on or about 11:00 am. [See Incident Report,

-34-

1  Exhibit "E" with Notice of Video-Recording. The video
2  of Heilman's injuries has not been disclosed.]

3

4  57. That Heilman alleges that the defendants, each
5  and every one, in an attempt to conceal the unlawful
6  and excessive use of force by defendants Silva, Buen-
7  rostro, Tyson and Jaca created a fraudulent report of
8  an attempted hanging by Heilman, submitted this
9  report to Clinicians T. Harris, ASW and Dr. Nizamani,
10  M.D., so as to have Heilman placed in the RJ Donovan
11  Crisis Unit where Heilman stayed from May 9, 2013
12  until the night of May 12, 2013, and although in severe
13  and extreme pain and with difficulty in breathing from
14  a collapsed left lung, Heilman was once more offered
15  no medical care!

16     ✷ NOTE:  Heilman informs the Court that
17              the claims of deliberate indifference
18              to his serious medical needs by
19              CDCR medical personnel will be
20              addressed in an additional Com-
21              plaint under the Civil Rights Act,
              42 USC Section 1983.

22

23  6.  HEILMAN HAS SURGERY TO CORRECT INTERNAL INJURIES

24

25  58. Although taken from the Crisis Unit at Donovan
26  prison on May 12, 2013 and back to AdSeg, Heilman's
27  medical condition was still extremely serious and
28  with possibly deadly complications. A chest x-ray

completed on May 13, 2013 after Heilman's condition
did not improve, revealed the abnormalities of a
35% to 40% pneumothorax (collapsed lung), but it
was not until May 16, 2013 that Heilman was taken
by ambulance to Alvarado Hospital in San Diego
and accompanied under guard by defendant E. Fontan
c/o, who tried to humiliate Heilman en route to the
hospital, and even at the hospital by stating to Heilman
that, "You got what you deserved!", because defendant
worked in AD SEG for several years and because there
were "No witnesses" to the actual beating, the defen-
dants (friends and associates of c/o Fontan) would
"get away with it!"

59.  That on May 20, 2013, Heilman underwent
surgery at Alvarado Hospital to repair his collapsed
lung. For four days, surgeons at Alvarado attempted
to reinflate Heilman's lung and stabilize his condition
before resorting to the delicate and intrusive type
of surgery needed to correct possible damage inside of
the lung and to allow reinflation of the lung.

60. That on May 20, 2013, "thoracic Surgeon Dr.
Koumjian, performed left upper wedge resection
of blebs, left complete pleural abrasion and partial
pleural decortification, VATS-assisted thoracotomy.
Post operatively, patient (Heilman) had epidural
for pain control and a chest tube." [See Alvarado

- 36 -

/ Dr. Benjamin Killian's Doctor's Notes

1  Hospital / Dr. Rodney 6. Hood's Doctor's Notes,

2  attached as Exhibit "H".]

3

4  61. That Heilman spent seven (7) days in an Inten-

5  sive Care Unit (I.C.U.) environment postoperatively,

6  and that after Heilman's chest tubes and spinal

7  epidural drip pain medication lines were removed

8  Heilman was immediately and prematurely dis-

9  charged from Alvarado Hospital and re-housed in

10  Bldg. 6, AD SEG, in intense pain, without much

11  postoperative care from CDCR medical staff, and

12  subjected once more to abuse, harassment and

13  retaliatory acts by named defendants.

14

15  H.  EXCESSIVE / UNNECESSARY FORCE AGAINST

16       HEILMAN BY DEFENDANT E. FONTAN AND

17       COMPLICATIONS PLACES HEILMAN BACK

18       IN HOSPITAL CARE.

19  62. On 5/27/2013, Heilman was re-housed back in

20  Bldg. 6, AD SEG after surgery to correct a

21  collapsed lung caused by the defendants in an

22  assault and beating on May 9, 2013. That the site

23  on Heilman's back and left-side rib cage area

24  where surgical incisions of large diameters were

25  made into Heilman's thoracic cavity were heavily

26  bandaged, and covered three (3) incisions closed

27  with staples and sutures. Because of the lack

28  of adequate postoperative care, the wound sites

= 37 =

1  and the internal areas of Heilman's thoracic cavi-
2  ty and lymph nodes became infected with a heavy
3  growth of staphylcoccus bacteria. [See Exhibit "I".]
4
5  63. That on June 10, 2013, Heilman was suffering in
6  extreme pain from postoperative complications
7  and a bacterial infection draining pus from
8  the surgical incisions. On this day, defendant E.
9  Fontan escorted Heilman for chest x-rays to the
10  prison hospital (T.T.A), and once more tried to hu-
11  miliate Heilman and instigate Heilman to react
12  when claiming defendants Silva, Buenrostro,
13  Tyson and Jaca would not be held responsible for
14  Heilman's severe injuries because "He (Fontan)
15  had also "f..cked-up" inmates in ADSEG and got
16  away with it!" When brought back to Bldg. 6 ADSEG,
17  Heilman was being personally escorted by C/o Carey,
18  and when Heilman turned his head to speak
19  to Carey, defendant Fontan deliberately and
20  sadistically thumped Heilman on his chest
21  over his surgically-repaired lung with an open
22  hand so as to inflict pain, as defendant Fontan
23  knew of Heilman's medical condition and had
24  escorted Heilman to Alvarado Hospital on 5/16/13.
25  That Heilman nearly collapsed from the pain of
26  the blow delivered by defendant Fontan, that
27  Heilman was restrained by a waist chain and hand-
28  cuffs and leg manacles, and that defendant

-38-

1  Fontan then made threats to harm Heilman in the
2  future as retaliatory acts for Heilman's sub-
3  mitting prison grievances prior to filing this civil
4  action against the defendants, defendant Fontan's
   Silva, Buenrostro, Tyson and Jacq,
5  friends and co-workers.

6

7  64. That Heilman alleges that the strike to his chest
8  over his surgically repaired lung by defendant
9  Fontan, precipitated by the staph bacterial
10  infection was sufficiently serious enough
11  that Heilman was once more taken to Alvarado
12  Hospital on June 11, 2013 where Heilman received
13  infusions of IV drip antibiotics around-the-
14  clock to combat the infection, and Heilman
15  was once more subjected to a CAT scan and Chest
16  X-rays to affirm that Fontan's strike did not
17  cause further or additional damage to his repaired lung. That
18  Heilman arrived back to Donovan prison on or
19  about June 17, 2013 and once more housed in
20  Bldg. 6 AD SEG. [See Medical Progress Notes,
21  dated 6/11/2013, 6/6/13, and 6/18/2013, attached as
22  Exhibit "J".]

23

24  I.  FAILURE OF SUPERVISORIAL DEFENDANTS TO
25      STOP OR TO INTERVENE IN THE USE OF UN-
26      LAWFUL AND EXCESSIVE FORCE, BRUTALITY,
        AND TORTURE AGAINST HEILMAN BY SUBORDI-
27      NATE DEFENDANTS RESULTING IN
28      DELIBERATE INDIFFERENCE.

-39-

1  65. That Heilman has shown previously in this com-
2  plaint and has alleged that Supervisorial defen-
3  dants failed to intervene, or to stop or prevent
4  junior officers from committing abuse and ha-
5  rassment against Heilman during the dates
6  of May 6th - May 8th leading up to the May 9th
7  assault and beating. (See pages 20-21 this
8  Complaint.)
9
10  66. That Heilman alleges that Bldg. 6 Superviso-
11  rial defendants D. Arguilez, Lt., and E. Ojeda,
12  Sgt., were aware of the circumstances as were
13  occurring on May 9, 2013 when Heilman covered
14  over his front window and identical to the cir-
15  cumstances under which Heilman covered his
16  window on May 8, 2013 to attract attention of
17  Bldg. 6 supervisors to the abuse, harassment,
18  and the lack of meals Heilman was continuing
19  to suffer at the hands of subordinate defendants
20  in Bldg. 6 ADSEG.
21
22  67. That defendants A. Silva, A. Buenrostro, D. Tyson
23  and F. Jaca had to have informed defendant
24  Arguilez, Lt., of Heilman's having covered over
25  his window — again — as he had on May 8th, and
26  Lt. Arguilez was present in Bldg. 6 and could
27  hear Heilman's complaints and his pounding
28  on the door. That defendant Arguilez

-40-

1  acquiesced, condoned, approved or ordered his
2  junior officers to "discipline" Heilman, and
3  Lt. Arguilez did so by failing to adhere to the
4  rules and regulations authorizing the use of
5  force, and failed to monitor, supervise or video
6  record defendants Silva, Buenrostro, Tyson and
7  Jaca's entrance into Room #229, or order
8  Heilman through verbal commands to remove
9  the window cover and comply to orders, and
10  as established in the CCR Title 15 and the
11  Dept. Op. Manual sections 51020.1 et seq.
12
13  68.  That Heilman alleges that defendant
14  E. Ojeda, Sgt. Supervisor of Bldg. 6, ADSEG
15  places himself in a position on the second
16  tier in front of Room #229 to intervene, to stop,
17  or to prevent the use of unlawful and excessive
18  force by the named junior officer defendants.
19  That according to defendant Ojeda's Narra-
20  tive in the Incident Report, (Ex "E"), this de-
21  fendant was able to respond to the alarm
22  and from Housing Unit (Bldg.) 7, and before
23  Heilman was subdued, defendant Ojeda —
24  "observed responding Officers in cell 229
25  utilizing physical force in an attempt to
26  restrain Heilman H76785."...
27
28  69.  That Supervisorial defendants failed to

1   intervene, to stop, or to prevent the unlawful and
2   excessive use of force against Heilman by junior
3   officers and thus condoned the assault and beating
4   and contributed to the contrived excuses and
5   alibis to plausibly deny those defendants
6   violence against Heilman and the injuries he
7   suffered. That this was a "dereliction of duty"
8   that resulted in deliberate indifference to
9   Heilman's Constitutional rights.
10
11  70. That after he was assaulted and beaten by
12  defendants Silva, Buenrostro, Tyson and Jaca, and
13  suffering multiple and serious internal injuries,
14  Heilman was then placed in a small holding cage
15  and held for over four (4) hours even though the
16  assaulting officers stated Heilman was in the
17  process of hanging as he had a "sheet/noose wrapped
18  around his neck." The defendants tightened
19  mechanical restraints on Heilman's arms and legs
20  as tight as they could go, and kept them in place
21  for over 1½ hours so as to brutalize and torture
22  Heilman with this unlawful and excessive force.
23
24  71. That according to the assaulting defendant
25  officer statements, and Bldg. 6 Supervisorial defendants,
26  Heilman was kept in a holding cage ostensibly
27  to allow Bldg.6 medical staff of defendants R. Russell,
28  Jane Doe, P.T. or R.N. and/or LaCorum, R.N. to medically

-42-

evaluate Heilman. Yet, Heilman pleaded with
the defendants both from custody and medical
staff to relieve him from the pain caused by over-
tightened mechanical restraints and to remove
these restraints. That many Supervisorial defen-
dants responded to the emergency alarm activa-
ted in Bldg.6 prior to the defendants rushing
into Room #229, and many Supervisorial defen-
dants were present in Bldg.6 for Committee meetings, and heard, observed,
and witnessed Heilman's cries of pain and refused
to relieve Heilman's pain by ordering the mechanical
restraints to be removed. #

72.   That Heilman's cries of pain continued for
over 1½ hours that Supervisorial defendants
D. Arguilez, Lt., E. Ojeda, Sgt., C. Franco, Lt., M.
Stout, Captain and D. Paramo, Warden were aware
that there was a substantial risk of harm to
Heilman especially after an _alleged_ suicide
attempt, that the harm was obvious and that
these reasonable prison officials failed to act
and order that the mechanical restraints
be removed thus causing Heilman's pain
and resulting in deliberate indifference to
Heilman's Eighth Amendment right to be free
from cruel and unusual punishment, and for
tolerating such misconduct.

J. SENIOR ADMINISTRATIVE STAFF AND OTHER SUPER-
VISORIAL DEFENDANTS MAINTAINED AND
CONDONED PRACTICES IN ADSEG SUCH AS RETALIA-
TORY ACTS AND BEATINGS AGAINST INMATES.

73. That Heilman alleges that practices were condoned,
acquiesced, allowed and/or ordered by supervisorial
defendants D. Paramo, Warden, B-Facility Captain
M. Stout, B. Franco, Lt., O. Arguilez, Lt., and E. Ojeda,
Sgt and Thompson, Sgt., as well as the CDCR
and Does 1-10 which resulted in junior officers in
ADSEG Bldg. 6 to operate with impunity when dealing
with those inmates unlucky enough to be under
these defendants' care and custody.

74. That defendant Correctional Officers operated
under the assumption that they could withhold
basic hygiene and sanitary supplies, fail to provide
food or meals, and regularly beat and assault
inmates housed in Donovan Prison Administrative
Segregation Unit because of the fact that
supervisorial defendants maintained such prac-
tices to instill terror and fear into Ad. Seg.
housed prisoners.

75. That during the period of being housed in
Bldg. 6 ADSEG, Heilman personally witnessed
such practices and was informed and believes
that several investigations were on-going

-44-

by various agencies including CDCR Internal Affairs' employee Lt. Santos concerning the beating by defendants Silva and Buenrostros of Inmate Meadows, CDC Number unknown.

76. That the condoming or maintaining of practices by Senior Administrative defendant D. Paramo, and other supervisorial defendants to deprive Heilman and other Inmates of their Constitutional rights under the Eighth Amendment is even more reprehensible and blameworthy that that of junior officers and should be found to be a "dereliction of duty."

K. THE DEFENDANTS ISSUE HEILMAN A COLFORNI 115 RULES VIOLATION REPORT TO CONCEAL STAFF MISCONDUCT

77. That Heilman alleges that he was issued a false and fraudulent Rules Violation for "Battery on a Peace Officer" as alleged by defendant D. Tyson to have occurred when the assaulting defendants were restraining Heilman in Room #229 on the morning of May 9, 2013, That 115 RVR, Log No. RJD-FB-13-095 and supplemental reports by the assaulting officers contain contradictions concerning the defendants Silva, Buenrostro, Tyson and Jaca's actions that includes 4 Medical Injury Reports — Form 7219's for these defendants showing conclusively

-45-

"that defendant D. Tyson <u>was not</u> battered by Heilman and received "NO INJURIES" as did all the assaulting officers in contrast to Heilman's severe, serious, and long-lasting internal injury and other documented injuries. [11S RVR, Log No. RJD-FB-13-095 was presented previous in this complaint as Exhibit "E".]

78. That Heilman alleges that defendant C. Franco, Lt., was also assigned to adjudicate the above-numbered 11S RVR as the Senior Hearing Officer. (S.H.O.) That defendant Franco perpetrated a fraud by declaring Heilman to be "Not Guilty" of "Battery of a Peace Officer" and dismissed the charges, and then Franco reversed himself after the Disciplinary Hearing to find Heilman "Guilty" of "Battery" and then dismissing the charges to preclude the defendants from testifying at the hearing and to exclude Heilman from receiving requested evidence including the video recordings of May 6th - May 9th, and other documentation.

79. That Heilman alleges to have filed a 602 Appeal concerning defendant Franco's actions concerning the adjudication of the 11S RVR but which was screened-out to conceal staff misconduct. [See 602 Appeal, Log No. RJD-B-13-02024, attached as Exhibit "K".]

L. HEILMAN HAS EXHAUSTED HIS AVAILABLE CDCR
ADMINISTRATIVE REMEDIES.

80. That Heilman alleges and avers to have ex-
hausted all available CDCR administrative reme-
dies before filing this complaint under CDCR
Form 602 Appeals, Log Numbers: (1) RJD-B-13-01767
(2) RJD-B-13-01911 (3) RJD-B-13-02377, and (4)
RJD-B-13-02233, and (5) RJD-B-13-02024.

81. That Heilman alleges that mr. Michael A. Heilman
Plaintiff's brother, has filed a Citizens' complaint
to the CDCR Office of Internal Affairs which was
declined to be logged and investigated, and was
then forwarded to the Warden's Office of Daniel
Paramo at RJ Donovan Prison and which has been
continually ignored by this defendant, and has
not been logged nor investigated. [See citizen's
complaint Receipt Acknowledgment from the O.I.A.,
attached as Exhibit "L".]

IV.

## STATEMENT OF CLAIMS

A.     FIRST CAUSE OF ACTION

AGAINST DEFENDANTS A. SILVA,
A. BUENROSTRO, D. TYSON, ARMISTED
AND THOMPSON, SGT.

RETALIATION AGAINST HEILMAN FOR THE
EXERCISE OF HIS CONSTITUTIONALLY –
PROTECTED FIRST, Eighth, AND FOURTEENTH AMEND–
MENT ACTIVITIES OF FILING PRISON
GRIEVANCES, REQUESTING GRIEVANCE
FORMS AND REPORTING MISCONDUCT BY
THE DEFENDANTS.

### a. STANDARD OF FIRST AMENDMENT RETALIATION CLAIM

82. That Heilman alleges that defendants A. Silva,
A. Buenrostro, D. Tyson, Armisted, and Thompson, Sgt.,
engaged in adverse conduct against Heilman and
retaliated against Heilman when Heilman attempted
to file prison grievances, or to obtain prison grievance
forms, and for reporting adverse conduct to the de-
fendants' superior officers.

83. That retaliatory acts of withholding food
for several days, and threats to bodily harm
Heilman by the named defendants, is alleged
to have occurred from May 6th – May 8th 2013
in Bldg. 6 ADSEG after Heilman reported, or attempted
to report abuse and harassment, and to file grievance

forms reporting adverse conduct by the named defen-
dants.

84. That Heilman alleges that Armisted, Buenrostro
and other defendants violated his First and Four-
teenth Amendment rights by repeatedly retaliating
against Heilman for filing prison grievance forms or
attempting to obtain such forms, and for reporting
previous acts of abuse and harassment.

85. Prisoners "have a First Amendment right to file
prison grievances." Brodheim v. Cry, 584 F. 3d
1262, 1269 (9th Cir. 2009). Without it, "inmates
would be left with no viable mechanism to remedy
prison injustices." Rhodes v. Robinson, 408 F. 3d
559, 567 (9th Cir. 2005). And retaliation "against
prisoners for their exercise of this right is itself a con-
stitutional
violation, and prohibited as a matter of
\clearly established law." Brodheim, 584 F. 3d
at 1269.

86. That a prisoner must allege the following elements
to state a First Amendment retaliation claim:
"(1) An assertion that a state actor took some
inmate
adverse action against an ~~element~~ (2) because of
(3) that prisoner's protected conduct, and that
such action (4) chilled the inmate's exercise
of his First Amendment rights, and (5) the action

did not reasonably advance a legitimate correctional goal." Rhodes, 408 F. 3d at 567-68; Brodheim, 584 F. 3d at 1269. Heilman alleges each of these elements particularly when viewed through liberal _pro se_ pleading standards.

b. HEILMAN REPORTS OR ATTEMPTS TO OBTAIN GRIEVANCE FORMS TO REPORT ADVERSE CONDUCT ~~AGAINST~~ ~~DEFENDANTS~~ BY THE DEFENDANTS

87. Heilman satisfies the first three elements of a retaliation claim by alleging that Armisted, Thompson, Buenrostro and other defendants took adverse action against him because he filed prison appeals and reported abuse and harassment against them. Heilman has alleged several separate adverse acts that defendants took against him as a direct result of his filing complaints or reporting complaints challenging their conduct, or attempting to obtain grievance forms. But this Court should also view the conduct as a whole, as defendants engaged in a campaign to terrorize Heilman into submission via repeated retaliatory acts and to cow Heilman to stop voicing his complaints. That prison officials have substantial discretion to target, indeed bully, a prisoner, and in Ad. Seg. the defendants wanted to break Heilman's spirit as a means to stop Heilman from reporting adverse conduct.

88. That defendants Buenrostro, Armisted, Silva and other defendants verbally warned Heilman to stop

-50-

1 complaining about the conditions in Bldg. 6 AD SEG or
2 face threats of bodily harm, threats that Buen-
3 rostro and other defendants soon put into action. That
4 defendants Armisted, C/o and Thompson, Sgt. conspired
5 together to deprive Heilman of his food over several days
6 (an 8th Amendment violation in itself), and then threw it,
7 "gassed" Heilman with his own food as retaliation after
8 Heilman reported adverse action taken against him by
9 the defendants, and the prison conditions Heilman had
10 encountered once housed in Bldg. 6 AD SEG.

11

12 89. That Heilman alleges that these actions of retaliation,
13 individually and jointly, were intended to "chill" Heil-
14 man from filing prison grievances with complaints of AD SEG
15 conditions, and would "chill" the First Amendment conduct
16 of a person of ordinary firmness, Defendants cannot
17 justify these threats and acts as necessary to
18 advance legitimate Correctional goals.

19                                                    Amendment
20 90. That Heilman had the Constitutional Fourteenth
21 right under the due process and equal protection
22 clauses to seek redress of grievances and to advance
23 these grievances for review to the Courts. That the
24 defendants retaliation was intended to deter Heil-
25 man's right to seek redress of grievances and the
26 right to litigate without active interference
27 as Heilman was targeted by the defendants for his
28 continuing protests about AD SEG conditions and the

defendants adverse conduct against him. Thus, Heilman has adequately alleged a First Amendment retaliation claim, and a Fourteenth Amendment claim under the due process and equal protection clauses, and that retaliatory acts of withholding food and threats of bodily harm violated Heilman's rights against cruel and unusual punishment under the Eighth Amendment.

B.                    SECOND CAUSE OF ACTION
                AGAINST DEFENDANTS A. SILVA,
                A. BUENROSTRO, D. TYSON, F. JACA
                EIGHTH AMENDMENT VIOLATIONS
        THE USE OF UNLAWFUL AND EXCESSIVE
        FORCE AGAINST HEILMAN APPLIED
        MALICIOUSLY AND SADISTICALLY
        TO CAUSE UNNECESSARY AND WANTON
        INFLICTION OF PAIN AND WITHOUT
        JUSTIFICATION OF ANY LEGITIMATE PENALOGICAL
                OR CORRECTIONAL GOAL
    a. THE DEFENDANTS MALICIOUSLY AND SADISTICALLY BEAT HEILMAN.

91.   That defendants A. Silva, A. Buenrostro, D. Tyson, and F. Jaca, Correctional Officers assigned to Bldg. 6 Administrative Segregation Unit at RJ Donovan Correctional Facility, did engage in unlawful and excessive use of force against Heilman on the date of May 9, 2013 in violation of Heilman's Constitutional Eighth Amendment right to be free from cruel and unusual punishment.

92. That the acts and omissions of the defendants, each and everyone, made them personally responsible, as herein stated, for maliciously and sadistically causing an unnecessary and wanton infliction of pain and suffering as a <u>deliberate act</u> intended to seriously injure Heilman, and which had no justification or basis as a legitimate penalogical or correctional goal to maintain order, security or discipline.

93. That the defendants deliberately and intentionally, and with malice, conspire together to assault, beat and injure Heilman as a sadistic act after Heilman's continued protests concerning ADSEG Bldg. 6 living conditions, and reports to supervisorial defendants and other prison staff about the continuing adverse actions against Heilman by the defendants including making threats of bodily harm to Heilman and refusing to provide Heilman food.

b. <u>HEILMAN'S INJURIES ARE SEVERE, PERMANENT AND LIFE-THREATENING</u>

94. That Heilman has been seriously harmed and permanently injured by the despicable, wrongful, reprehensible and deliberate conduct of the defendants including beating Heilman while he was restrained with such brutality that Heilman suffered a 35% to 40% pneumothorax

1  (or collapsed left lung) as a result of blunt force
2  trauma; facial injuries of such seriousness that
3  facial x-rays were completed on 5/9/13 to deter-
4  mine whether Heilman suffered a broken jaw or
5  other facial fractures (with negative results);
6  permanent and debilitating nerve damage in
7  his left arm and hand, and right foot as a
8  result of constricting and overtightened
9  arm and leg mechanical restraints; head, face
10 arm, leg and body lacerations and bruises.
11 [See Heilman's x-rays and orders with ~~results~~ diagnosis
12 of injuries after being beaten by defendants,
13 attached as exhibit "M".]
14
15 95.  That words cannot easily describe or ex-
16 press how painful and stressful was the assault
17 and beating, the continuing brutality and
18 torture by the defendants after the initial assault intended to in-
19 jure Heilman, and the subsequent VATS-surgery
20 procedure and the permanent scars and damage
21 Heilman continues to bear and experience to
22 his physical and mental health.

C. THE "CORE JUDICIAL INQUIRY" OF AN 8ᵗʰ AMENDMENT EXCESSIVE FORCE CLAIM

23 96.  ~~That~~ a prisoner challenging official conduct
24 of unlawful and excessive force in violation
25 of the Eighth Amendment's "cruel and unusual"
26 punishment clause must demonstrate that the
27 "core judicial inquiry" was not whether a certain
28 quantum of injury was sustained, but rather

"whether force was applied in a good-faith effort
to maintain or restore discipline, or applied
maliciously and sadistically to cause harm."
In Wilkins v. Gaddy (U.S. 2010) 559 US 34, 130 S. Ct.
1175, 175 L. Ed 2d 995 — 130 S.Ct at page 1178
citing Whitley v. Albers (1986) 475 US 312,
319-321 and under Hudson v. McMillian (1992)
503 US 1, 8. That in Harper v. Albert, (7th cir. 2005)
the Court found that excessive force claims require a
plaintiff to show subjective element by "malicious or
sadistic" standard, which requires plaintiff to iden-
tify specific culprit(s). Unlike the Harper case Heilman
can readily identify and specify the acts committed
by each defendant.

d. DEFENDANTS ACTED WITHOUT LEGITIMATE PENA-
LOGICAL OR CORRECTIONAL GOALS.

97.  Under the Eighth Amendment it is unlawful to
impose "cruel and unusual" punishment against prisoners.
It is clearly established that use of force against a pris-
oner may be "cruel and unusual" punishment if excessive
force was applied "maliciously and sadistically" to
deliberately cause harm. U.S. v. Budd (6th cir 2007)
496 F.3d 517, 532-533. And the Supreme Court has held
in Whitley that inmates possess the right not to be
subject to unnecessary and wanton infliction of pain.
Whitley v Albers, Supra 475 US 312, 319-321.

-55-

98. That in the case of Wilson v. Seiter (1991) 501 US 294, 297-303 it was an 8th Amendment violation of "cruel and unusual" punishment when "the infliction of punishment is a deliberate act intended to chastise or deter." That some "mental element must be attributed to the inflicting officer before it can qualify" as cruel and unusual punishment. Id at 300. That ~~Courts~~ in excessive force claims Courts consider both the objective severity of an inmate's injury and the subjective culpability of the official, US v. Miller (8th cir 2007) 477 F.3d 644, 647 citing Whitley v Albers 475 US 312, 319 and Hudson v McMillian 503 US 1, 8.

99. That Heilman presented evidence that the defendants acted without penalogical or correctional justification, and therefore unnecessarily and wantonly inflicted far more than a de minimis amount of pain and injury on Heilman sufficient to support an [un]lawful and excessive use of force claim in violation of Heilman's constitutional Eighth Amendment right against cruel and unusual punishment.

100. That the defendants' claim to have acted in a manner to save Heilman's life from hanging is without merit and fails in light of the evidence contradicting the defendants' claim. That evidence presented in the form of Inmate Declarations

1   (Exhibits "B" and "D") convincingly are witnesses to
2   the fact that the defendants treated Heilman in an
3   adverse manner prompting Heilman to verbally complain
4   and pound on his door on the morning of May 9, 2013.
5   Although his window was covered (as it was on May 8th),
6   Heilman was actively vocal, and when the defendants'
7   claim they needed to violate CDCR rules, regulations,
8   policy and procedures to enter Heilman's Room #229 with-
9   out safeguards to "save" Heilman's life, Inmate
10  R. Ellard, CDC No. T-09242 and many other Inmates
11  could observe directly into Room #229 and see Heilman <ins>could</ins>
12  at the moment the door was flung open that Heilman
13  had <u>no noose or sheet tied around his neck</u> and <u>was</u>
14  <u>not</u> in the act of hanging himself! (See Inmate Ellard's
15  Declaration, Exhibit "D".)
16
17  101.  Furthermore, claims by the defendants in their
18        statements attached in the Incident Report (Ex-
19        hibit "E") that Heilman had to be <u>restrained</u>
20        by the use of "upper body strength" to "push
21        down" on Heilman's back lacks credibility
22        when the seriousness and severity of Heilman's
23        injuries are taken into consideration.
24
25  102.  That evidence shows the defendants
26        acted "maliciously"— defendant Silva <sup>allegedly</sup> scolds
27        defendant Buenrostro, "<sup>I told you</sup> Not to hit <sup>(him)</sup> Heilman in
28        the face!"), and tells Heilman," we're going to teach

you a lesson!" before the majority of the beating occurs, depicts a pre-meditated act agreed to by the defendants beforehand. That evidence shows the defendants acted sadistically by ~~them~~ causing unnecessary and wanton infliction of pain, and severe, permanent, and life-threatening injuries intended to cause Heilman harm. Thus, Heilman had no marks around his neck to indicate a noose or sheet that was wrapped around it so, and the absurdity by the defendants to claim Heilman attacked "them" while hanging himself, and in the manner indicated, is a work of fiction to "plausibly deny" causing Heilman's serious injuries, yet shows a "sufficiently culpable state of mind." US v Budd 496 F.3d 517 532-33 (2007)

C.        THIRD CAUSE OF ACTION
          AGAINST DEFENDANT E. FONTAN

          RETALIATION AGAINST HEILMAN
          WITH THE USE OF EXCESSIVE
          FORCE APPLIED MALICIOUSLY
          AND SADISTICALLY TO CAUSE AN
          UNNECESSARY AND WANTON IN-
          FLICTION OF PAIN WITHOUT
          LEGITIMATE CORRECTIONAL GOALS

          FIRST AND EIGHTH AMENDMENT

          VIOLATIONS

a. DEFENDANT FONTAN RETALIATES AGAINST HEILMAN
   WITH THE USE OF EXCESSIVE FORCE

103.   That defendant E. Fontan, while assigned as the
hospital escort officer at R.J. Donovan prison on
June 10, 2013, did engage in unlawful and excessive
use of force against Heilman as retaliation for Heil-
man's filing of prison grievances accusing fellow
CDCR officers of excessive force and misconduct. That
the defendant's acts were in violation of Heilman's
First Amendment Constitutionally protected right to file prison
grievances, and in violation of Heilman's right under
the Constitutional Eighth Amendment to be free
from cruel and unusual punishment.


104.   That defendant Fontan's acts and omissions
while acting under color of state law made him per-
sonally responsible as herein stated, for ma-
liciously and sadistically causing an unnecessary
and wanton infliction of pain as a <u>deliberate</u>
act that did not advance legitimate correctional
or penalogical goals.


105.   That prisoner's "have a First Amendment
right to file prison grievances." Brodheim v. Cry
(9th Cir 2009) 584 F.3d 1262, 1269. Without it
"Prisoner/inmates would be left with no viable
mechanism to remedy prison injustices." Rhodes
v. Robinson, (9th Cir 2005) 408 F.3d 559, 567. And
retaliation against "against prisoners for their
exercise of this right is itself a Constitutional

1  violation, and prohibited as a matter of 'clearly
2  established' law.'" Brodheim  584 F.3d at 1269.

3

4  b. THE "CORE JUDICIAL INQUIRY" OF AN EIGHTH
5     AMENDMENT EXCESSIVE FORCE CLAIM.

6  106.  That once more, a prisoner challenging official
7  conduct of unlawful and excessive force in violation
8  of the Eighth Amendment's "cruel and unusual"
9  punishment clause must demonstrate that the
10 "core judicial inquiry" was not whether a certain
11 quantum of injury was sustained, but rather
12 "whether force was applied in a good-faith effort
13 to maintain or restore discipline, or applied ma-
14 liciously and sadistically to cause harm." Wilkins
15 v. Gaddy (US 2010) 559 US 34, 130 S.Ct. 1175,
16 175 L.Ed. 2d 995 — 130 S.Ct at Page 1178, citing
17 Whitley v. Albers (1986) 475 US 312, 319-321 and
18 Hudson v. McMillian (1992) 503 US 1, 8.

19
                            elements  one is of
20 107.  That of the two ~~criteria~~ - an Objective Standard
                                           and the other of
21 of a "sufficiently serious deprivation" ~~and~~ that the
22 defendant's state of mind as being aware of a risk
                            and
23 to Heilman's health is clearly shown by the defendant's
24 actions against Heilman. Defendant Fontan was
25 the escorting officer initially to Alvarado Hospital
26 and knew of Heilman's left lung collapse. That
27 the defendant later escorted Heilman several
28 times to the Prison clinic, and commented on the

beating by the assaulting defendants because he
had been assigned to ADSEG for many years, and that
the defendants, "would not be caught" for what they had
done, "because there were no witnesses." To retaliate
against Heilman for the filing of several prison grievances
against fellow CDCR and ADSEG-assigned officers, the
defendant knowing Heilman had a surgically-
repaired left lung, took Heilman unawares, and
while the [Heilman] was in restraints, slammed his hand into
Heilman's chest, a malicious and sadistic act, inten-
ded to cause an unnecessary and wanton in-
fliction of pain, and which did not advance any
legitimate correctional goal. That Heilman en-
tered into the hospital again on June 11th and
stayed there until June 16th.

108. Therefore, both a[m] sufficient objective and subjective
standard has been satisfied, as pain alone,
even in the absence of an "enduring injury" can satisfy
the objective standard, Hudson US at 8-9, and
that the defendant deliberately caused unnecessary
and wanton infliction of pain knowing of Heilman's
serious injury, and, knowing as well, that Heilman
had filed prison grievances against fellow officers
making allegations of excessive force, thus the
use of excessive force against Heilman as a re-
taliatory act was to "chill" Heilman's "exercise of his
First Amendment rights," and the action did

not reasonably advance a legitimate correctional goal."

Rhodes, 408 F. 3d at 567-568; Brodheim, 584 F.3d at 1269.

D.                    FOURTH CAUSE OF ACTION

AGAINST DEFENDANTS A. SILVA, A. BUENROSTRO,
D. TYSON, F. JACA, D. ARGUILEZ AND E. OJEDA,
R. RUSSELL, JANE DOE BLDG 6 MEDICAL RN, LACORUM, R.N.
BRUTALITY AND TORTURE THROUGH THE
USE OF EXCESSIVE VIOLENCE, UNLAWFUL
AND EXCESSIVE FORCE APPLIED
MALICIOUSLY AND SADISTICALLY
AGAINST HEILMAN OVER A PERIOD
OF 1½ HOURS CAUSING UNNECESSARY
AND WANTON INFLICTION OF PAIN
WHICH DID NOT ADVANCE LEGITIMATE
CORRECTIONAL GOALS

EIGHTH AMENDMENT VIOLATION

a.    DEFENDANTS APPLY MECHANICAL RESTRAINTS TO
       BRUTALIZE AND TORTURE HEILMAN.

109.  That defendants A. Silva, A. Buenrostro, D. Tyson,
F. Jaca, D. Arguilez and E. Ojeda, Correctional
Staff assigned to Bldg. 6 ADSEG at RJ Donovan
Correctional Facility, did engage in unlawful
and excessive force against Heilman on the date
of May 9, 2013 with which to brutalize and
torture Heilman for over 1½ hours with the
application of constricting and overtightened
arm and leg mechanical restraints in violation
of Heilman's US Constitutional Eighth Amendment

-62-

right to be free from cruel and unusual punishment.

110.  That the acts and omissions of the defendants, each and everyone, as stated herein, made them personally responsible for unlawful conduct and abuse while under color of state law, for maliciously and sadistically causing an unnecessary and wanton infliction of pain and suffering as a <u>deliberate act</u> intended to harm Heilman, to brutalize and torture Heilman and that did not advance a legitimate penalogical or correctional goal.

111.  That the defendants deliberately and intentionally and with malice, applied arm and leg mechanical restraints improperly placed and tightened down as far as they could go. After their placement and as alleged earlier in this complaint, Heilman was severely beaten resulting in serious internal injuries, yet Heilman's restraints were kept in place, as a means to torture Heilman with excessive and unlawful force for over 1½ hours. That evidence presented herein verifies Heilman's allegations that the mechanical restraints were applied to be so exceedingly painful that Heilman cried out in pain for several hours for the restraints to be removed. (See Inmate eye-witness Declarations attached as Exhibits "B" and "D",

and the Medical Progress and Doctor's Notes of
T. Harris, ASW and Dr. Nizamani, M.D., attached as
Exhibit "C".)

112.  That Heilman alleges the restraints had been
so placed to intentionally harm and injure Heilman.
That the restraints caused blood vessels to burst
in Heilman's arms, hands, ankles and feet, and caused
permanent nerve damage in Heilman's left hand,
thumb and forefinger and right ankle and foot
leaving these extremeties with numbness and
without feeling.

b.  THE "CORE JUDICIAL INQUIRY" OF AN EIGHTH
    AMENDMENT EXCESSIVE FORCE CLAIM.

113.  That Heilman challenges official conduct
by the defendants of unlawful and excessive
force and violence to brutalize and torture him
over a period of 1½ to 2 hours, in violation of the
Eighth Amendment's "cruel and unusual" punish-
ment clause. That in order to be successful
Heilman must demonstrate that the "core ju-
dicial inquiry" was not whether there was a sig-
nificant injury, or that a certain quantum of
injury was sustained, but rather "whether force
was applied in a good-faith effort to maintain
or restore discipline, or applied maliciously and

sadistically to cause harm." Wilkins v. Gaddy (US 2010) 559 US 34, 130 S. Ct. 1175, 175 L. Ed. 2d 995, in 130 S. Ct. at page 1178, citing Whitley V. Albers (1986) 475 US 312, 319-321 and under Hudson V. McMillian (1992) 503 US 1, 8.

114. That under the Eighth Amendment it is unlawful to impose "cruel and unusual" punishment against prisoners. It is clearly established that the use of force against a prisoners may be "cruel and unusual" punishment if excessive force was applied "malicious-ly and sadistically" to deliberately cause harm. US v. Budd (6th Cir 2007) 496 F.3d 517, 532-533. That the Supreme Court has held in whitley that inmates possess the right not to be subject to unnecessary and wanton infliction of pain. Whitley V. Albers, supra, 475 US 312, 319-321.

115. That Heilman alleges he was held for over four (4) hours after being beaten and assaulted by the defendants, and for 1½ to 2 hours of that four hours arm and leg mechanical restraints were kept in place as torture devices when improperly used. That the defendants were aware at all times of Heilman's pain and distress yet refused to remove these devices to cause unnecessary and wanton infliction of pain.

-65-

C. DEFENDANTS' USE OF EXCESSIVE FORCE AS TORTURE DOES NOT ADVANCE LEGITIMATE CORRECTIONAL GOALS.

116. That Heilman alleges that during his stay in a small temporary "Holding Cage", all of the named defendants, and many other prison officials, medical staff and mental Health Clinicians were aware that Heilman was in extreme pain, that he fervently requested that the restraints be removed to alleviate that pain, and that the defendants failed to come to Heilman's aid, indeed several mental Health Clinicians inquiring into Heilman's well-being were ordered away by the defendants.

117. That the Courts have recognized two elements to sustain an Excessive Force claim under the Eighth Amendment: (1) An Objective standard of review focusing on the Objective severity of on inmate's injuries, and (2) A subjective standard of review focusing on the state of mind and subjective culpability of the prison official accused of using excessive force. In cases Brooks v Kyler (3d Cir 2000) 204 F.3d 102, 109 and Brown v. Lippard (5th Cir 2006) the objective elements were satisfied when the plaintiffs' injuries were more than de minimis.

118. That the subjective element requires that the accused prison officials acted with a sufficiently culpable state of mind, as the use of force may constitute cruel and unusual

punishment if the force amounts to the "unnecessary and wanton infliction of pain," which depends on "whether force was applied in a good-faith effort to maintain or restore discipline or [whether it was applied] maliciously and sadistically for the very purpose of causing harm. In Hudson v. McMillian, 503 US at 6-7 (citing Whitley v. Albers, 475 US 312, 320-321. That the subjective element of review necessarily extends to whether or not force was used to advance a "legitimate" correctional goal. The defendants' use of force in this instance did not!

119.   That in their statements attached to the Incident Report (See Exhibit "E", Log No. RJD-B06-13-05-0137) the defendants admit to the need for the application of force in applying mechanical restraints to Heilman's arms and legs after the defendants allegedly observed Heilman (somewhere) in his Room with a noose of sheet tied around his neck and entered Room #229 to save Heilman, against many CDCR rules, regulations and policies and without safeguards present when conducting a cell extraction. It is alleged that Heilman attacked the defendants and fearing for their safety the defendants applied a specific quantum of force to restrain Heilman but not to punish, harm or injure him. These statements lack merit, and under closer scrutiny and evidence provided to the court, it can be seen that the defendants' statements were contrived as a

means to "plausibly deny" the use of excessive force
in (1) causing Heilman's serious, life-threatening
internal injuries and other multiple injuries and (2)
causing the unnecessary and wanton infliction of pain
both during the actual assault and beating and then
when improperly applying mechanical restraints and
leaving them in place as a deliberate act for over 1 1/2 hours.

120.  That the defendants' claim that Heilman was
taken from Room #229 and placed in a small
"Holding Cage", — after being observed in the
act of hanging — with a noose or sheet
still wrapped around his neck — so as to allow
Heilman to be medically evaluated. These actions
defy logic and cannot be justified as acts
which advanced the legitimate correctional
goal to restore or maintain order or discipline.
That Bldg. 6 medical staff defendants R.
Russell, P.T., Jane Doe, P.T. or R.N. and LaCorum,
R.N. failed to medically evaluate Heilman
and offered no medical assistance whatr for
Heilman's obvious injuries, or for those injuries that
Heilman cried out in pain for help, and to remove
torturous mechanical restraints.

121.  That the subjective element to sustain
an Eighth Amendment Excessive Force claim has
been satisfied, as the defendants, each and every one

-68-

of them were aware that Heilman was being held in torturous overtightened mechanical restraints, and yet failed to act to remove these restraints. That Heilman should have been transported immediately to the prison hospital for evaluation and treatment of his injuries caused by the defendants malicious and sadistic acts, and not held for over four hours without medical treatment, and ~~with~~ that he was brutalized and tortured for over 1½ hours of that four hours with improperly applied mechanical restraints. (See Holding Cell Log for Heilman, May 9, 2013, Bldg 6. ADSEG., previously noted as Exhibit "F".)

E.                    FIFTH CAUSE OF ACTION

AGAINST DEFENDANTS D. ARGUILEZ, E. OJEDA, AND THOMPSON

FAILURE OF SUPERVISORIAL DEFENDANTS ASSIGNED TO BUILDING 6 ADMINISTRATIVE SEGREGATION TO INTERVENE, TO STOP, OR TO PREVENT RETALIATORY ACTS AGAINST HEILMAN BY SUBORDINATE OFFICERS THAT RESULTED IN DELIBERATE INDIFFERENCE TO HEILMAN'S EIGHTH AMENDMENT RIGHT NOT TO SUFFER CRUEL AND UNUSUAL PUNISHMENT.

FIRST, EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS

a.   SUPERVISORIAL DEFENDANTS ARE MADE AWARE OF RETALIATORY ACTS AGAINST HEILMAN.

122. That supervisorial defendants D. Arguilez, Lt., E. Ojeda, Sgt., and Thompson, Sgt., assigned as Supervisors to Bldg. 6, Ad. Seg. during the dates of May 6 through May 9, 2013 did engage in unlawful conduct when failing to intervene, to stop, or to prevent subordinate officers from engaging in retaliatory acts against Heilman for Heilman's exercise of his constitutionally-protected First Amendment rights of reporting adverse treatment at the hands of junior officers both verbally and on 602 Appeal / Grievance Forms, which resulted in deliberate indifference to Heilman's Eighth Amendment right not to suffer cruel and unusual punishment.

123. That the acts and omissions of the defendants, each and every one, as stated herein, made them personally responsible, for violating Heilman's Constitutional rights while acting under color of state law, That the named supervisorial defendants were informed by Heilman, and made aware that subordinate officers were engaging in adverse conduct against Heilman as retaliation for Heilman informing these Supervisors in a position to intervene, stop or to prevent adverse retaliatory conduct from occurring.

b. SUBORDINATE DEFENDANT OFFICERS ENGAGE IN RE-
TALIATORY ACTS AGAINST HEILMAN

124. That Heilman's First Cause of Action in this

-70-

1  Complaint stated a claim against several defendants
2  for retaliatory acts against Heilman by including
3  abuse, harassment, threats of bodily harm and with-
4  holding meals over several days and throwing Heilman's
5  food on him or onto the floor of his cell. That the
6  defendants were not discrete in these acts and were
7  witnessed by both Inmates and prison staff alike.
8  That even had Heilman not requested 602 Appeal
9  Forms to file for redress of grievances, or made verbal
10 requests to defendant Supervisors to intervene or
11 prevent retaliatory acts by other defendants,
12 these adverse retaliatory acts were not kept
13 hidden or secret so that these acts could not
14 have occurred without supervisorial defendants
15 acquiescence, approval **or** order.
16
17 c.  SUPERVISORIAL DEFENDANTS ACTIONS RESULT
18     IN DELIBERATE INDIFFERENCE
19
                                              knowingly
20 125.  That Supervisorial defendants who fail
21 to intervene, to stop, or to prevent subordinate officers
22 from engaging in adverse conduct against a prisoner
23 will also be held liable and responsible under 42 USC
24 section 1983 for failure to take a reasonable course of
25 action in preventing retaliatory acts which resulted
26 in deliberate indifference. LaMarca V Turner (11th Cir
27 1993) 995 F.2d 1526, 1539 (holding that prison warden
28 could face liability when his failure to take appropriate

measures to improve prisoner safety created a climate
that preordained the ensuing violence.) Also, in
Smith v. Mensinger (3d. Cir 2002) 293 F.3d 641,
650-651) the Court's holding included finding those
supervisors liable who witnessed excessive force
violations and refused to intervene or to stop it:

"The fact that rank does not shield officer from
    section 1983 liability for failure to intervene, or
    to stop the use of excessive force by another
    officer does not mean that a fact finder
    must ignore the even greater dereliction
    of duty that occurs when a supervisor
    tolerates such misconduct; rather,
    fact finder may conclude that the con-
    duct of a supervisor who fails to inter-
    vene is even more reprehensible and
    blameworthy than that of a more junior
    officer." Id., at pg 651.

126. That defendants D. Arguilez, Lt. E. Ojeda,
Sgt., and Thompson, sotie are liable for failure to
intervene, to stop, or to prevent retaliatory
acts that resulted in deliberate indifference
in violation of Heilman's Eighth Amendment right
against cruel and unusual punishment; First and
Fourteenth Amendment right to engage in Consti-
tutionally-protected activities of reporting
staff misconduct and filing prison grievances.

127.  That Heilman alleges that the failure of defendant supervisors to intervene, to stop, or to prevent adverse retaliatory conduct against Heilman by subordinate defendant Officers in the early stages of Heilman's being housed in Bldg. 6, AD SEG, was directly responsible for permitting the assaulting defendants to consider themselves impervious to liability as they engaged in the later actions involving the uses of excessive force against Heilman as alleged herein. That this also led to the supervisorial liability resulting in deliberate indifference to Heilman's health and safety in the allegations contained in the Sixth and Seventh Causes of Action against supervisorial defendants, and permitted under acts or practices maintained by the defendants as alleged in the Eighth Cause of Action.

F.              SIXTH CAUSE OF ACTION

AGAINST DEFENDANTS D. ARGUILEZ, LT., E. OJEDA, SGT., AND THOMPSON, SGT.

FAILURE OF SUPERVISORIAL DEFENDANTS ASSIGNED TO BUILDING 6, AD. SEG. TO INTERVENE, TO STOP, OR TO PREVENT SUBORDINATE DEFENDANT OFFICERS FROM ASSAULTING AND BEATING HEILMAN THAT RESULTED IN DELIBERATE INDIFFERENCE TO HEILMAN'S EIGHTH AMENDMENT RIGHT NOT TO BE SUBJECTED TO CRUEL AND UNUSUAL PUNISHMENT

## EIGHTH AMENDMENT VIOLATIONS

### AND AS ARGUED WITH:

### SEVENTH CLAIM OF ACTION

6.

AGAINST SUPERVISORIAL DEFENDANTS
D. ARGUILEZ, LT., E. OJEDA, SGT., C. FRANCO,
LT., M. STOUT, CAPTAIN; BUILDING SIX
AD. SEG. MEDICAL STAFF R. RUSSELL, P.T.,
JANE DOE, P.T. OR R.N., LACORUM, R.N.

FAILURE OF SUPERVISORIAL DEFENDANTS
BOTH ASSIGNED TO BUILDING SIX AD. SEG.,
AND THOSE PRESENT ON THURSDAY MORNING
MAY 9, 2013, AND BUILDING SIX, AD. SEG.
SECOND WATCH ASSIGNED MEDICAL STAFF, TO
INTERVENE, TO STOP, OR TO PREVENT THE
CONTINUED BRUTALITY AND TORTURE
WITH THE USE OF EXCESSIVE FORCE
AGAINST HEILMAN THAT RESULTED IN
DELIBERATE INDIFFERENCE TO
HEILMAN'S EIGHTH AMENDMENT RIGHT
TO BE FREE FROM CRUEL AND UNUSUAL
PUNISHMENT.

### EIGHTH AMENDMENT VIOLATION

### a. SUPERVISORIAL DEFENDANTS ARE AWARE OF THE USE OF EXCESSIVE FORCE AGAINST HEILMAN

128.   That Supervisorial defendants D. Arguilez, Bldg.
6 Lieutenant Supervisor, Second Watch, E. Ojeda,
Bldg. 6 Sergeant Second Watch participated
in the alleged deprivation of Heilman's Constitutional

rights when Heilman informed these defendants of
threats of bodily harm made by junior defendant
officers. That these threats were put into action on
the morning of May 9, 2013 when these defendants
acquiesced, condoned, approved, ordered and knew that
Heilman was going to be assaulted and beaten but
failed to intervene, to stop or to prevent the severe
beating of Heilman, and then conspired with
the assaulting officers on actions to "plausibly
deny" Heilman's injuries, by accusing dHeilman
of "Battery on a Peace Officer" while in the midst
of a hanging attempt. That these acts, omissions
or conduct makes these supervisorial defendants
personally responsible for abandonment violations of Heilman's
Eighth Amendment right when deliberately in-
different to Pleilman's health, safety and welfare
in the use of excessive force against Heilman
while working under color of state law.

129. That defendants Arguilez and Ojeda were also
personally involved or personally responsible for
failure to intervene, to stop, or to prevent continuing
brutality and torture of Heilman causing his pain
and suffering to perpetuate after his brutal
beating by failing to order Heilman's mechanical
restraints removed, and to timely order that
Heilman be taken to the prison hospital for medi-
cal treatment.

130.   That other supervisorial defendants were also present in Building Six ADSEG on Thursday morning may 9, 2013, including C. Franco, Lt., and M. Stout, Captain, and these defendants acts, errors, omissions or conduct make them personally in-volved or personally responsible for failure to intervene, to stop or to prevent continuing brutality and torture of Heilman after his assault and beating with the use of excessive force causing Heilman's pain to perpetuate for failing to order Heilman's restraints to be removed after being informed through Heilman's pleas for help, and failure to timely order that Heilman be moved to the hospital for medical treatment. These acts caused a deliberate indifference to Heilman's Eighth Amendment right not to suffer cruel and unusual punishment.

b.  <u>DEFENDANT SUPERVISORS ACT WITH DELIBERATE INDIFFERENCE</u>

131.  That to act with deliberate indifference, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer v. Brennan, (1994) 511 US 825, 837. Thus a defendant is liable if he knows that [a prisoner] Plaintiff faces "a sub-stantial risk of serious harm and disregards

that risk by failing to take reasonable measures to abate it." Id at 847 "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm," Id at 842.

132. That Heilman asks the Court to examine the record of the actions of defendants that establishes supervisorial liability for causing deliberate indifference to Heilman's health, safety and welfare in violation of Heilman's Eighth Amendment right.

133. That according to official records, it is admitted that subordinate officers defendants entered Heilman's cell #229 in violation of the CCR Title 15, and D.O.M. section 52010.10 etseq. It is alleged the defendants did so even when Lt. Arguilez could have intervened but failed to do so, because Heilman was briefly observed with a noose/sheet tied) wrapped around his neck. The assaulting officers even admit to the use of a certain quantum of force in applying restraints on Heilman resulting in clearly visible physical injuries. This is the official record and account! That even should the court accept such allegations, CDCR rules, regulations and just plain common sense would

dictate that Heilman be transported by ambulance to the prison hospital for medical evaluation and treatment, and as alleged by the defendants — precautions should have been taken to ensure that Heilman had not broken his neck while hanging, and that this be immediately immobilized. Of course this did not happen, and actions speak more clearer and louder than words.

134. That supervisorial liability causing deliberate indifference to Heilman's health, safety and welfare in violation of his Eighth Amendment right is clearly evident after Heilman is assaulted and beaten. His physical injuries, and "substantial risk of serious harm" are known and visible, yet all named defendants failed to intervene, to stop, or to prevent the perpetuation of pain caused by improperly applied and over tightened mechanical restraints, and chose to turn a blind-eye to the torture and brutality and the unnecessary and wanton infliction of pain and took no reasonable measures to abate it.

C. <u>BUILDING SIX AD SEG SECOND WATCH MEDICAL STAFF</u>
   <u>ARE LIABLE FOR CAUSING DELIBERATE INDIFFERENCE</u>
   <u>IN VIOLATION OF HEILMAN'S EIGHTH AMENDMENT</u>
   <u>RIGHTS TO BE FREE FROM CRUEL AND UNUSUAL</u>
   <u>PUNISHMENT.</u>

135.   That defendants R. Russell, Psych.Tech., Jane Doe, Psych.Tech., or R.N., and La Corum, R.N. were assigned to Building 6 AOSE6 Second Watch on May 9, 2013. That the defendants did engage in unlawful conduct when failing to intervene, to stop, or to prevent, ~~and to treat Heilman for his injuries~~ the unnecessary and wanton infliction of pain against Heilman by the use of excessive force to brutalize and torture Heilman with improperly applied and over tightened mechanical restraints for over 1½ hours after Heilman had been assaulted and beaten.

136.   That Heilman alleges these medical personnel defendants to have caused deliberate indifference to Heilman's health, safety, and welfare in violation of Heilman's Eighth Amendment right against cruel and unusual punishment. That the defendants failed to treat Heilman for his obvious physical injuries, and were made aware that Heilman had difficulty breathing and severe pain in his left side as a result of being beaten. That Heilman's continued cries for help, and pleas that the restraints be removed were ignored by the CDCR-employed medical staff.

137.   That the defendants deprived Heilman of rights secured by the Constitutional Eighth

1  Amendment against the use of force applied maliciously and
2  sadistically to cause an unnecessary and wanton
3  infliction of pain to brutalize and torture Heilman.
4  That Heilman alleges that the defendants "acts
5  or omissions [as medical personnel] were sufficiently
6  harmful to evidence deliberate indifference" to
7  Heilman's serious medical needs. Estelle v. Gamble
8  (1976) 429 US 97, 106. That Heilman's medical
9  needs were objectively serious and that the de-
10 fendants possessed a sufficiently culpable
11 state of mind. Wilson v. Seiter (1991) 501 US 294,
12 297-299.   That Heilman asks the Court to
13 review his Medical Injury Report, Form 7219
14 completed on May 9, 2013 (or one of three as Heilman)
15 alleged) in Exhibit "6" attached to by
16 defendant R. Russell, a Psychiatric Technician
17 who exclaims in his comment on reviewing Heilman
18 and his obvious physical injuries as documented
19 on the Injury Report, that Heilman was deemed—
20 "NO FIRST AID INDICATED PER RN", that
21 Heilman alleges the liable defendants to
22 to be R. Russell, Jane Doe, R.N., and LaCorum, R.N.
23
24 H.        EIGHTH CAUSE OF ACTION
25         AGAINST DEFENDANTS D. ARGUILEZ,
26         C. FRANCO, M. STOUT, D. PARAMO, THE
27         CALIF. DEPT. OF CORRECTIONS, AND
28         DOES 1-10 INCLUSIVE.

MAINTAINING AND CONDONING PRACTICES, AND/OR POLICIES SUCH AS: WITHHOLDING MANDATED HYGIENE AND SANITARY SUPPLIES, WITHHOLDING FOOD, ORDERING THREATS OF BODILY HARM, AND REGULAR BEATINGS AGAINST PRISONERS AS PUNISHMENT IN THE RJ DONOVAN CORRECTIONAL FACILITY'S ADMINISTRATIVE SEGREGATION UNIT THAT RE-SULTED IN DELIBERATE INDIFFE-RENCE TO HEILMAN'S EIGHTH AMENDMENT RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT.

## EIGHTH AMENDMENT VIOLATION

a.  ADVERSE CONDUCT IS CONDONED AND MAIN-TAINED AGAINST INMATES IN AD SEG AS PUNISHMENT.

138. That Heilman alleges that the acts, omissions and conduct of subordinate defendants against Heilman and other inmates housed in RJ Donovan's Admini-strative Segregation Unit which caused violations and deprivations of Heilman's Constitutional and civil rights under the First, Eighth and Fourteenth Amendments are surreptitiously permitted as unlawful underground practices maintained and

-81-

condoned at the highest level of authority at
Donovan Prison by Defendant D. Paramo, Warden.
That such adverse conduct as was committed
against Heilman by defendants including:
failure to provide required hygiene and sani-
tary supplies, failure to provide prescription
medication, failure to permit showering, failure
to provide proper bedding articles, failure
to provide writing materials including
the failure to provide 602 Appeal Forms and
Form-22's, with holding food, "Gassing"
inmates, and threats of bodily harm to Heilman
leading up to a brutal assault and beating
causing permanent, long-lasting and life-
threatening injuries.

139. That Heilman alleges such acts and adverse
conducted as described above could not have
occurred over a period of several days against
Heilman without Ad seg supervisortal concurrence
when knowing "No consequences" will result
from a flawed investigation conducted by
RJD/CDCR fellow employees and staff members.

140. That Heilman alleges other acts of adverse
conduct was committed under the permissive
standards maintained and condoned by the
defendants against other inmates confined

-82-

in RJ Donovan's Ad. Seg. Units. That Heilman
believes, is informed and thereupon alleges
that several of the defendants including
A. Silva, c/o and A. Buenrostro, c/o are under in-
vestigation by an Internal Affairs unit led
by Lt. Santos for regular permitted beatings
against inmates including an Inmate named
Meadows, CDC No. Unknown. Nevertheless, the
defendants named above continue to work
in the RJ Donovan Ad Seg Unit and to commit
such adverse conduct as described herein
with the full knowledge and consent of Super-
visorial and Senior Administrative defendants
D. Paramo, Warden and without their taking
remedial action to stop their unlawful practice
and actions against AD SEG Inmates.

141. That it is alleged that supervisorial
defendants maintained and condoned
practices to conceal and cover-up staff
misconduct by creating and authoring
false and untrue documentation of
alleged wrong-doing on Heilman's part
as an excuse to "plausibly deny" Heilmans
injuries. An investigation into how
Heilman's Great Bodily Injury (G.B.I.)
occurred is required pursuant to the pro-
visions under the D.O.M. sections

-83-

1   51020.17, 51020.18, 51020.19 and 51020.20. Yet,
2   defendant CDCR, and defendants Does 1-10 are
3   members of the Review Boards and without
4   their expressed consent to maintain a status
5   quo of a finding of allowable use of force against
6   Heilman, the defendants could not commit such mis-
7   conduct as described herein without suffering
8   some type of adverse consequences.
9
10  b. DEPRIVATIONS OF HEILMAN'S EIGHTH AMENDMENT
    RIGHT UNDER SUPERVISORIAL LIABILITY.
11
12  142. It is clearly established law that the treatment
13  a prisoner receives in prison and the conditions under
14  which he is confined are subject to scrutiny under the
15  Eighth Amendment. Farmer v. Brennan (1994) 511
16  US 825, 832, 114 S.Ct. 1970. In Cottone v Jenne (2003)
17  326 F.3d 1352, 1360 the Court held that super-
18  visors can be held liable for subordinate's consti-
19  tutional violations on the basis of Supervisorial
20  liability under 42 USC Section 1983. Supervi-
21  sorial liability under section 1983 occurs, "when
22  the Supervisor personally participated in the
23  alleged constitutional violation or when there
24  is a causal connection between the actions
25  of the supervising official and the alleged
26  constitutional violation. Mathews v Crosby
27  (11th cir 2007) 480 F.3d 1265 at page 1270 citing
28  Cottone v Jenne, 326 F.3d 1352, 1360.

143. A causal connection may be established when : (1) a "history of widespread abuse" puts the responsible supervisor on notice about that the need to correct the alleged deprivation, and he or she fails to do so; (2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that their subordinates would act unlawfully and failed to stop them from doing so. Mathews v. Crosby 480 F.3d at Pg 1270 citing Cottone v Jenne 326 F.3d at Pg 1360.

144. That a causal connection can be established showing a history of widespread abuse in practices of adverse conduct against Inmates in RJ Donovan prison's Ad. seg. units, That such customs or policies are maintained and condoned by defendant supervisors, defendant Paramo, Warden, the CDCR and Does 1-10; of course unlawful and wrongful conduct against Heilman and other inmates by the subordinate defendants would be held accountable with some type of consequences for their adverse conduct. And thus deliberate indifference to Heilman's Eighth Amendment rights by the defendants under supervisorial

liability for failure to stop the subordinate
defendants unlawful conduct in the use of ex-
cessive force applied maliciously and sadistically
causing Heilman an unnecessary and wanton
infliction of pain.

## CONCLUSION

For the reasons as stated herein, plaintiff
Thomas John Heilman respectfully requests
that the relief prayed ~~for be granted~~.


## V.
## PRAYER FOR RELIEF

WHEREFORE, Heilman prays for relief as follows:

1.  Issue a declaratory judgment that the
    defendants acts and omissions com-
    plained of herein this complaint vio-
    lated Heilman's rights, privileges and
    immunities secured to him by the
    Constitutions of the United States
    and the State of California;

2.  Issue an injunction against the defen-
    dants, each and every one of them, inclu-
    sive, prohibiting them, their agents,
    employees, associates, or any other
    individual or agency acting in concert
    with them or on their behalf, from

engaging in any further type of malicious and/or vindictive act, adverse conduct, or retaliation or omissions against Heilman, either directly or by proxy or face a substantial amount of damages to be determined by the Court;

3. Award Heilman compensatory damages to be determined at trial;

4. Award Heilman punitive damages in the amount of five million dollars, ($ 5,000,000 °°);

5. Award Heilman court fees, and any other fees, or other costs accrued in this action including attorney fees;

6. Order, as injunctive relief, a special panel of responsible officials to convene to determine the type of criminal charges should be brought against each responsible defendant for the infliction of injuries amounting to permanent and everlasting suffering;

7. Order the defendants to remove any and all adverse documentation placed in Heilman's Central File concerning allegations of wrongdoing by Heilman deemed by the Court to be false and fraudulent;

8. Grant Heilman any other and further relief the Court deems just and proper and in the further interest of Justice.

Plaintiff THOMAS JOHN HEILMAN respectfully demands a trial by jury.

## VERIFICATION

I, THOMAS JOHN HEILMAN, Plaintiff acting in propria persona declare under penalty of perjury that all facts contained herein are true and correct as to my own knowledge and belief.

DATED: 11/21/2013

Respectfully Submitted,

Thomas J. Heilman

Thomas John Heilman
Plaintiff in pro per

<u>TABLE OF EXHIBITS</u>

(1) Exhibit "A" — 114-D Ad. Seg. Placement Order — 1 Page 128-G Classification Chrono — 1 Page

(2) Exhibit "B" — Declaration/Affidavit from Inmate D. Perry, CDC No. T-05015 — 2 pages

(3) Exhibit "C" — Medical Progress Notes from T. Harris, A.S.W. — 1 page and Medical Progress Notes from Dr. Nizamani, M.D. — 3 pages

(4) Exhibit "D" — Declaration/Affidavit by Inmate R. Ellard, CDC No. T-09242 and Inmate E. Ramirez, CDC No. K-30690 — 2 pages.

(5) Exhibit "E" — CDCR Form 115 RVR Hearing Final Copy with Supplemental Reports and 128-B — 12 pages and Crime/Incident Report with Supplemental Reports including Staff Reports and medical Reports of Injuries of defendants A. Silva, A. Buenrostro, D. Tyson and F. Jaca and Heilman, — 24 pages.

(6) Exhibit "F" — Holding Cell Log, Attachment A Dated 5/19/13 — 1 Page.

(7) Exhibit "G" — Heilman's Medical Report of Injury dated 5/19/13 and other Reports of injuries including Doctor's Notes by LaCorum R.N. dated 5/9/13, Health Care Services Request dated 5/9/13, Physician's Orders by Dr. J. Cook for facial X-rays dated 5/9/13, X-ray Negative Report and for

diagnosis of facial fractures or broken jaw, confirmation Report of Heilman's pneumo thorax CDCR Form 7464, Request for Services Form CDC Form 7243 for emergency transfer to Hospital with diagnosis of (L) side 40% pneumo-thorax by Dr. J. Cook dated 5/16/13 — 8 pages.

(8) Exhibit "H" — Alvarado Hospital Doctor's Notes confirming Heilman's surgery with a VATS-procedure to reinflate and resection Heilman's L-side Lung, By Doctor Rodney Hood, M.D., and Doctor Benjamin Killian, D.O. — 4 pages.

(9) Exhibit "I" Confirmation of Staphylcoccus Bacteria infection by Quest Diagnostics, and Health Care Services Request for emergency CDC Form 7243 transfer to Hospital — 3 pages.

(10) Exhibit "J" — Medical Progress Notes, — 6 pages

(11) Exhibit "K" — CDC Form 602 Appeal, Log No. RJD-FB-13-02024 — screened out! 4 pages

(12) Exhibit "L" — Citizens Complaint Receipt Acknowledgement of Complaint by Michael A. Heilman, Plaintiff's Brother — 1 Page.

EXHIBIT "A"

6-239L

STATE OF CALIFORNIA
**ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE**
CDC 114-D (Rev 10/98)

DEPARTMENT OF CORRECTIONS

| DISTRIBUTION: | |
|---|---|
| WHITE - CENTRAL FILE | CANARY - WARDEN |
| BLUE - INMATE (2ND COPY) | PINK - HEALTH CARE MANAGER |
| GREEN - ASU | GOLDENROD - INMATE (1ST COPY) |

**MHSDS: EOP          GPL: 12.9**

| INMATE'S NAME | CDC NUMBER |
|---|---|
| HEILMAN, T. | H76785 |

## REASON(S) FOR PLACEMENT *(PART A)*

[XX] PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS

[ ] JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

[XX] ENDANGERS INSTITUTION SECURITY          [ ] UPON RELEASE FROM SEGREGATION, NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:

Your prior 114D, dated 5-9-13, indicated your placement in ASU was because you were charged with committing a battery on a peace officer; however you were subsequently exonerated of the charges. Therefore, this 114D, is intended to notify you of the reason for continued ASU placement. On 5-6-13, confidential information was received from two independent sources indicating you are pressuring some of the White inmate population on FA-RDOF, to provide you with your commitment offense paperwork. The information also revealed you are attempting to remove some White inmates from FA Yard by threatening them with bodily harm if they are found to have an offense which involved a sexual assault of a minor. As a result you have a confidential enemy on FA Yard and cannot be returned there. You will remain in ASU pending review by the admin. staff for appropriate program/housing needs.

[ ] CONTINUED ON ATTACHED PAGE (CHECK IF ADDITIONAL)          [ ] IF CONFIDENTIAL INFORMATION USED, DATE OF DISCLOSURE: / /

| DATE OF ASU PLACEMENT | SEGREGATION AUTHORITY'S PRINTED NAME | SIGNATURE | TITLE |
|---|---|---|---|
| 7-3-13 | E. ORTIZ | | LIEUTENANT |

| DATE OF NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | STAFF'S TITLE |
|---|---|---|---|---|
| 7/3/13 | 2000 | E. REYES | | C/O |

[ ] INMATE REFUSED TO SIGN     INMATE SIGNATURE          CDC NUMBER

## ADMINISTRATIVE REVIEW *(PART B)*
*The following to be completed during the initial administrative review by Captain or higher by the first working day following placement*

| STAFF ASSISTANT (SA) | | INVESTIGATIVE EMPLOYEE (IE) | |
|---|---|---|---|
| STAFF ASSISTANT'S NAME   C. Carpenter | TITLE   CCI | INVESTIGATIVE EMPLOYEE'S NAME | TITLE |

**IS THIS INMATE:**

| | | |
|---|---|---|
| LITERATE? | [✓] YES [ ] NO | EVIDENCE COLLECTION BY IE UNNECESSARY | [✓] YES [ ] NO |
| FLUENT IN ENGLISH? | [✓] YES [ ] NO | DECLINED ANY INVESTIGATIVE EMPLOYEE | [✓] YES [ ] NO |
| ABLE TO COMPREHEND ISSUES? | [✓] YES [ ] NO | ASU PLACEMENT IS FOR DISCIPLINARY REASONS | [✓] YES [ ] NO |
| FREE OF MENTAL HEALTH SERVICE DELIVERY SYSTEM NEEDS? | [ ] YES [✓] NO | DECLINED 1ST INVESTIGATIVE EMPLOYEE ASSIGNED | [✓] YES |
| DECLINING FIRST STAFF ASSISTANT ASSIGNED? | [ ] YES | | |

Any "NO" requires SA assignment          Any "NO" requires IE assignment

[ ] NOT ASSIGNED          [ ] NOT ASSIGNED

## INMATE WAIVERS

[ ] INMATE WAIVES OR DECLINES INTERVIEW WITH ADMINISTRATIVE REVIEWER     [ ] INMATE WAIVES RIGHT TO 72 HOURS PREPARATION TIME

[ ] NO WITNESSES REQUESTED BY INMATE          INMATE SIGNATURE          DATE

## WITNESSES REQUESTED FOR HEARING

| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |
|---|---|---|---|
| | | | |
| WITNESS' NAME | TITLE/CDC NUMBER | WITNESS' NAME | TITLE/CDC NUMBER |

**DECISION:** [ ] RELEASE TO UNIT/FACILITY ____ [✓] RETAIN PENDING ICC REVIEW [✓] DOUBLE CELL [ ] SINGLE CELL PENDING ICC

REASON FOR DECISION:   Retain due to enemies on Facility A presents
a risk to safety and security of institution.

| ADMINISTRATIVE REVIEWER'S PRINTED NAME | TITLE | DATE OF REVIEW | TIME | ADMINISTRATIVE REVIEWER'S SIGNATURE |
|---|---|---|---|---|
| | CPT | 7/5/13 | 1024 | |

| CORRECTIONAL ADMINISTRATOR'S PRINTED NAME (if necessary) | | CORRECTIONAL ADMINISTRATOR'S CO-SIGNATURE (if necessary) | | DATE OF REVIEW |

See Chronological Classification Review document (CDC 128-G) for specific hearing information

DEPARTMENT OF CORRECTIONS & REHABILITATION
CLASSIFICATION CHRONO, CDC-128G

STATE OF CALIFORNIA

| NAME: HEILMAN, T. | CDCR#: H76785 | HOUSING: FB-06-224L |
|---|---|---|

| RELEASE DATE | CUSTODY | CS | WG | PG | ANN REV | MHSDS | DDP/ DPP |
|---|---|---|---|---|---|---|---|
| MEPD 9/17/2011 | MAX | 19 | D1 | D | 7/13 | EOP | NCF/ NONE |

## INITIAL ASU REVIEW / PEND RVR BATT P.O. / REF CSR 90-DY EXT

Inmate Heilman (I/M) appeared before the Institution Classification Committee (ICC) for the purpose of an initial ASU review. I/M said he felt well enough to proceed with committee. I/M meets criteria for inclusion in the MHSDS at the EOP level of care. DDP: NCF. Reading GPL: 12.9. 128-C3 dated 1/20/12 was temporary and expired in 2012. There is not an updated 128-C3 in the c-file; however one has been ordered.

**ASU REASON:**
I/M was placed in ASU on 5/6/13 after confidential Information was received I/M is pressuring White inmates to show him their classification paperwork under threat of violence. I/M is allegedly seeking out which inmates have sex crimes against minors. Subsequently I/M received a second 114D, dated 5/9/13, which indicates he is charged with Battery on a Peace Officer (PO). I/M allegedly kicked Correctional Officer Tyson in the left leg. This 114D (5/9/13) **is the controlling segregation order.**

**114D REVIEW:**
With regards to the first 114D, the administrative review was conducted on 5/7/13 by S. Sanchez, Facility Captain (FC). Correctional Counselor-I (CC-I) Alvarez was assigned as the Staff Assistant (SA). An IE was not assigned. I/M did not request witnesses. I/M has had more than 72 hours' time preparation period. I/M refused to sign the Waivers section. The reviewer placed I/M on double cell status.
The administrative review for the second and current 114D was conducted on 5/10/13 by M. Stout, FC. CC-I Johnson was assigned as the SA. An IE was not assigned. ICC noted the following error: The Inmate Waivers section is blank, is missing the two boxes for Inmate Waives Interview and No Witnesses Requested. However I/M reaffirmed to committee that he did not request witnesses. I/M has had more than 72 hours' time preparation period.

**STAFF ASSISTANT (SA):**
The MHSDS representative said I/M's likelihood of decompensation is moderate. As stated above, two different SAs were assigned during the 114D hearings. The SA of record is CC-I Alvarez, who met with I/M 24 hours prior to committee and is present today. Effective communication was achieved by speaking clearly and concisely, using simple language, with continuous prompts to I/M to repeat, in his own words, his understanding of the issues presented.

**ICC DELIBERATION & ACTION:**
Confidential memorandum (CM) dated 5/6/13 indicates two sources allege I/M is pressuring White inmates on Facility-A to show him their classification paperwork under threat of violence. I/M received two 1030 forms on 5/6/13. I/M now has a documented confidential enemy on Facility-A.

Additionally, RVR dated 5/9/13, log# FB-13-095, for Battery on a PO, division B, is pending adjudication. The anticipated MERD is 6/24/14 (aggravated due to prior similar act). The RVR could be referred to the DA for prosecution, to which I/M said he does not want to postpone the RVR adjudication process.

**ICC retains I/M in ASU and refers this case to the CSR for a 90-day extension.**

**CASE FACTORS:**
I/M's custody increased from MEDA to MAX. I/M's WG/PG is D1/D, effective 5/6/13. Confidential file is clear, was noted and reviewed. I/M's historic case factors are noted on 128-G dated 2/7/12. Next BPH: SUB #1 5/11/17. IHC: RE.

**CELL STATUS:**
RVR 8/26/95 is for an in-cell fight. Today I/M was approved for double-cell status as he has not demonstrated a pervasive pattern of in-cell violence. ICC placed I/M on the Small Management Yard (SMY).

**PARTICIPATION:**
CDCR's Use of Force Policy was explained. I/M participated in today's hearing and said he understood and agreed with committee's actions. I/M did not state a preferred action. I/M was advised of his appeal rights.

K. REID, C&PR (A);    R. DIN, AW;    S. SANCHEZ, FC;    D. SALTZMAN, PSYCHOLOGIST

2013 MAY 31 PM 12:15

A. HERNANDEZ, CDW (A) - CHAIRPERSON          P.A. CORTEZ, CCII   RECORDER

DATE: 5/16/13          CLASSIFICATION: ICC - ASU          INST: RJDCF

UPDATE:  6/14/13 case factors remain the same ——— PA Cortez CCII

EXHIBIT B

<u>DECLARATION</u>

I, D. PERRY, CDC No. T05015, declare under penalty of perjury that the facts contained herein are true and correct as to my own knowledge and belief.

During the dates of May 6th thru May 9th, 2013, I was housed in Admin. Segregation, Bldg. 6, Rm # 135. On May 7, 2013 and May 8, 2013, I personally observed and witnessed C/O Armstead take a paper tray upstairs instead of a regular plastic tray, open the tray slot to Room # 229, and throw the paper tray with food into Room # 229. I could hear and see the inmate occupying Room # 229 banging on his door and yelling loudly for all to hear that he didn't get his food. (I later learned that inmate Heilman, CDC No. H-76785 occupied Room # 229 at this time.)

On May 8, 2013, at approximately 7:15 am, I heard banging from Room # 229 and could see that the window had been covered up with paper. I later observed Inmate Heilman remove the paper and speak to Lt. Arguilez.

On May 9, 2013, at approximately 7:15 am, I heard banging from Room # 229 again and could see the door window covered. Immediately after Heilman started banging on the door, I observed several Bldg. 6 C/o's including C/o Silva and C/o Buenrostro crouched in front of Rm # 229, I heard an emergency alarm and observed these officers and others rush into Room # 229.

-1-

Shortly thereafter, I observed Heilman being led down the stairs with his hands cuffed behind his back and with leg manacles. Immediately, I heard Inmate Heilman pleading for help and medical assistance, I could hear Heilman screaming in pain and for someone to remove the hand cuffs and leg chains. I began to yell and bang on the door, as did other Ad. Seg. Bldg. 6 inmates, for someone to help the old guy and call the ambulance. Inmate Heilman screamed and moaned for help for way over an hour, it was terrible! I saw many, many, staff arrive in Bldg. 6 while Heilman was screaming for help. I do not know who finally helped Heilman as he was in a stand-up cage at this time out of my view. No arriving staff helped Heilman!

Inmate Heilman did not leave Bldg. 6 Ad. Seg. for any medical aid until 4 or 5 hours had passed.

DATED: July 30, 2013

D. Perry T05015
D. PERRY
CDC No. T05015

EXHIBIT "C"

State of California
Interdisciplinary Progress Notes-General
CDCR MH-7230A (Rev. 01/12)

Department of Corrections and Rehabilitation

### Comments (Use S.O.A.P.E. Format)

### RJD/ASU Facility B

**Type of Contact: Regular P/C Note   LOC: EOP   Clinical Discipline: Psychiatric Social Worker**

| Specify HR NA | Date added to HR: | Reason for HR: Click here to enter text. |
|---|---|---|
| Inv Med Status: NA | Inv Med Date Exp: Click here to enter a date. ☒ NA | DMH status: NA |
| RJD ASU Arrival Date:5/6/13 | Previous Location: A Facility RJD | Classification Score: 19 |
| ASU Bldg: Fac B6 | Appointment Time: | Duration: 60 |
| Reason for Contact:  PC-Crises | Other Reason: _____ | Location of Contact: Out of Cell |
| DDP Status: NDD | TABE: 1.1 | ARDTS: LIFE |

S: I/P stated "Help me, Jesus, Help me, Jesus. They beat me up, they threw my food on the floor. I haven't eaten in 2 days. When I complained they said they'd break my face. Today was the first day I got breakfast. I thought everything could be resolved after I talked to the Lt. but they did it again. They wouldn't take my form 22 or 602. They threw it back in my cell. They broke my jaw." I/P reports he was allegedly beat up as retaliation for asking for toothpaste and soap. I/P denied thoughts to harm himself or others.

O: I/P was seen out of cell for PC Crisis. I/P is a Caucasian male, serving a Life sentence for Murder 1st. I/P is in ASU due to threatening to I/M with sex offence charging to "get them of the yard." I/P denied his 115. He was disheveled, medium hair, unshaven. I/P was seen after boarding up and having to be removed from his cell, when the office looked through the food port and I/P allegedly had a sheet around his neck. I/P presented as manic and uncooperative, alert and oriented. He presented as angry and agitated. I/p had bruises on his face, arms and ankles. His speech was appropriate volume and regular in rhythm and rate. He denies S/I and H/I. His thinking was looses and of paranoid content.

A:
Axis I – Major Depression D/O Severe, 304.80 Polysubstance Dependence in Institutional Remission
Axis II – ASPD
Axis III – I/P reports right leg nerve damage,
Axis IV – Incarceration and ASU placement
Axis V – 40

P:  I/P will remain EOP. He will be evaluated by the Psychiatrist for possible MHCB admission.

E:  PC tired to complete 7447, I/P refused stating he wasn't suicidal. I/P was educated regarding appropriate behaviors such as not boarding up.

☐ Page 2 (Note continued on page 2)

| Date: | 5/9/2013 | Time: | 0838 hours | Housing | ASU FAC B-6-229 |
|---|---|---|---|---|---|
| Institution: | RJD/ASU | Clinician: | T. Harris, ASW | Signature: | |

| 1. Disability Code | 2. Accommodations: | 3. Effective Communication | | |
|---|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional Time | ☑ P/I asked questions | Last Name:  Heilman | |
| ☐ DPH  ☐ DPV | ☐ Equipment ☐ SLI | ☑ P/I summed Information | | |
| | | | First Name:  Thomas | |
| ☐ LD | ☐ Louder  ☑ Slower | Please check one: | CDC#     H76785 | |
| ☐ DPS  ☐ DNH | ☑ Basic | ☐ Not reached ☑ Reached | DOB:     4/4/1957 | |
| ☐ DNS  ☑ DDP | ☐ Transcribe | *See chrono/notes | | |
| ☐ Not applicable | ☐ Other* | | | |
| Comments: | | | | |

State of California                                                    Department of Corrections and Rehabilitation
**Interdisciplinary Progress Notes – Routine Initial Psychiatric Evaluation**
CDCR MH-7230G (Rev. 01/12)

| I. Identifying Information | | |
|---|---|---|
| Date: 5/9/2013 | Time: 0920 | Location: B6 |

**Level of Care:**
☐ CCMS   ☑ EOP   ☐ OHU   ☐ MHCB

**Custody Housing:**
☑ GP   ☐ RC   ☐ SNY   ☑ ASU   ☐ CTC   ☐ SHU

Location of Interview: ☑ Face-to-Face   ☐ MOD or RN    Was the setting confidential? ☐ Yes   ☑ No

**II. Comments**

**Chief Complaint**

("I'm not suicidal, they lied, you work for them and trying to cover their ass.")

**History of Present Illness**

Pt seen at Ad seg out of cell in therapeutic module. He reportedly had sheet around his neck and custody staff removed him from the cell. Mr. Heilman said that he was not trying to hang himself, is not and was not suicidal and that he was beaten up by custody because he has complained about them for not getting his supplies.

**Psychiatric History**

He is EOP LOC and is prescribed Effexor. He has been at Ad seg since 5-6-2013 from A yard. He did not want to give any information about his history of mental health treatment, hospitalization or suicide attempts but wanted his account of being assaulted by custody staff.

**Substance Abuse History**

Mr. Heilman declined to give any information

**E. Family Psychiatric History**

Did not give info.

**Legal History**

Serving life according to DECS. He has 19 pts, TABE is referred as 1.1 but he claims to have BA in Biochemistry and Microbiology.

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: | Inmate's Name (Last, First, MI), CDC Number, DOB |
|---|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ P/I asked questions | **HEILMAN, THOMAS** |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ P/I summed information | H76785 |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please check one:** | 4/4/1957 |
| ☐ DNS ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ☐ Reached | |
| ☒ NOT APPLICABLE | ☐ Other* | *See chrono/notes | |
| 4. Comments: | | | |

Interdisciplinary Progress Notes – Routine Psychiatric Evaluation, CDCR MH-7230G (Rev. 01/12)                    Page 1 of 3

**Review of Medical History**

Gave h/o arthritis

**Biographical (social) History**

Refused to give any history.

**Mental Status Examination**

Middle aged caucasian ♂ Gray beard, had a bruise and swelling on Ⓛ side of face and cheek (c/o broken Jaw) but was able to speak. and ate his Ⓑ B'fast this AM). Highly agitated, did not want to give details of his mental illness or tx treatment, talked in a Pressured/loud speech. claimed that he was being abused by custody staff - He denied SI or trying to kill self this AM. Would not give further details, angry/irritable mood and affect - Stated he did not trust me because "you work for them, they pay for your car and Pay your mortgage." No evidence of confusion.

**AIMS Scale (if applicable)**

0 - AIMS score.

**Review of Systems (for medical issues)**

c/o pain in Ⓛ Rib cage pain, has a bruise and swelling of Ⓛ side of cheek (maxilla) scratches on arms, top of scalp scalp.

**Current Psychotropic Medications and Side Effects (if any)**

Vistaril 50 mg PM, Effexor ER 150 mg PO QAM.

NKDA.

| Interdisciplinary Progress Note<br>Routine Initial Psychiatry Evaluation<br>CDCR MH-7230G (Rev. 01/12)<br><br>Confidential Inmate-Patient Information | Inmate's Name (Last, First, MI), CDC Number, DOB<br>HEILMAN, THOMAS<br>H76785<br>4/4/1957 |
|---|---|

## II. Comments (cont.)

### Laboratory/Medical History Review (within last 12 months)

N/A

### Assessment

56 years old caucasian male, EOP LOC, carries diagnosis of Dep. D/O on Effexor, arrived Ad seg on 5.6.13 from A yard, reportedly tried to hang self but he denied and accused custody staff assaulting him. He showed loud/pressured speech, labile, irritable mood and affect, some grandiosity, shows poor cooperation. Shows features of mixed affective state. He has multiple risk factors and has high current suicide risk. Refer to CTC for further evaluation.

### DSM IV Diagnosis

| | | | | |
|---|---|---|---|---|
| **Axis I** | PSYCHOSES | | | |
| | MOOD DISORDERS | ⑤ Dep D/O by history. R/O Mixed mood d/o 2° to meds | | |
| | SUBSTANCE ABUSE | | | |
| | OTHER DIAGNOSIS | Adj. D/O mixed. | | |
| **Axis II** | PERSONALITY D/O 1 | | | |
| | PERSONALITY D/O 2 | | | |
| | INTELLECTUAL/OTHER | | | |
| **Axis III** | | Arthritis | | |
| | | Bruising on Ⓛ cheek | | |
| **Axis IV** | | Ad seg, | | |
| **Axis V**   GAF = | | 20 | | |

### Diagnoses Rationale:

Multiple risk factors: Caucasian, 56 yrs old, serving life, Ad seg ? Possible recent loss, Problems c̄ custody and h/o mood d/o with current mixed mood d/o.

### Plan

Ref to CTC for — spoke with Dr. Racine. MD.
Transfer Pt to TTA.

S. Nizamani MD

S. NIZAMANI MD 5.9.13

| | |
|---|---|
| **Interdisciplinary Progress Note**<br>**Routine Initial Psychiatry Evaluation**<br>**CDCR MH-7230G (Rev. 01/12)**<br>Confidential Inmate-Patient Information | Inmate's Name (Last, First, MI), CDC Number, DOB<br>HEILMAN, THOMAS<br>H76785<br>4/4/1957 |

EXHIBIT "D"

<u>DECLARATION / AFFIDAVIT</u>

I, <u>R. ELLARD</u> CDC No. T-09242 declare under penalty of perjury that the following is true and correct.

On May 6-9, 2013 I was housed in Cell 138, Bldg 6, B-yard, Administrative Segregation at Donovan prison. On May 7-8, 2013 I could hear and see I/m Heilman CDC No. H-76785, banging on his door and asking to see the Sergeant or Lieutenant. I did not know why. / Lt. Arguilez responded. [Room 229]

On May 9, 2013 at approtimately 7:00-7:15am I could hear and see Heilman banging on his door with the windows covered and asking to see a supervisor. I immediately witnessed four (4) Correctional officers with a plastic shield, by Room 229, and witnessed them hit an alarm and burst into Heilman's cell. From my cell 138, I can see directly into Heilman's cell No. 229 and observed Heilman sitting on the end of the bed. There was nothing wrapped or tied around Heilman's neck.

I observed Heilman removed from cell 229 in hand-cuffs and manacles and he was placed in a holding cage, I personally could hear Inmate Heilman screaming in agony for help to remove the restraints. This went on for over an hour. I observed Heilman escorted out of Bldg. 6 four hours later.

DATED: 6-10-13

R. ELLARD, CDC No. T-09242

DECLARATION / AFFIDAVIT

I, Elias Ramirez, CDC No. K-30690, declare
that the following facts are true and correct.
On May 9, 2013, while housed in Ad. Seg.
Bldg. 6 Room #234, at RJ Donovan prison,
I personally witnessed, observed and heard
I/m Heilman, CDC No. H-76785 being removed
from Room #229 in handcuffs and leg
manacles. Furthermore, I personally witnessed
and heard Heilman's anguished cries for
help and assistance for over 1½ hours
for prison staff to remove said handcuffs
and leg manacles, as the pain he screamed,
was overwhelming when the restraints had
been applied so tight as to restrict the
blood flow and nerve impingement.
DATED: 7-16-13 .

elias ramirez K30690
E. Ramirez, CDC No.

EXHIBIT "E"

CDCR--804 SENT TO RECORDS BY: _____ DATE: 5/1/13

STATE OF CALIFORNIA                                                      DEPARTMENT OF CORRECTIO

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | | RELEASE/BOARD DATE | INST. | HOUSING NO. | LOG NO. |
|---|---|---|---|---|---|---|
| H-76785 | HEILMAN | | | R.J.D.C.F. | FB-06-229L | FB-13- |

| VIOLATED RULE NO(S). | SPECIFIC ACTS BATTERY ON | | LOCATION | DATE | TIME |
|---|---|---|---|---|---|
| S3005(d)(1) | A PEACE OFFICER | | FB-06-229 | 05/09/13 | 0720 HRS |

CIRCUMSTANCES   On Thursday, May 9, 2013, at approximately 0720 hours, while performing my duties as Administrativ
Segregation Housing Unit 6 Floor. I was informed by Officer Buenrostro that Inmate HEILMAN, H-76785 (FB-06-229L)
had boarded up and was unresponsive in cell 229 Housing Unit 6 Administrative Segregation Unit (ASU). Officer A. Silv
grabbed the shield and placed the shield in front of the food port so Officer Buenrostro and Officer Silva could lo
inside the cell and immediately Officer Silva hit his personal alarm and mentioned to the control booth Officer
Grey to open cell 229. Officer Silva entered into the cell with the shield and Officer Buenrostro was right behin
Officer Silva and I was behind Officer Buenrostro. Inmate HEILMAN was being given orders to get down and he was no
complying. Once we got him to the ground he was still being assaultive and resisting, I/M HEILMAN kicked backward
with his left leg and striking my left leg. That is when Officer Jace grabbed his left leg to restraint I/M HEILMAN
movement and from kicking anyone else. Once I placed the handcuffs on I/M HEILMAN I was to grab the leg restraint
from Officer Silva and I was able to place the leg restraints on I/M HEILMAN. I saw I/M HEILMAN being escorted b
Officer Jaca and Officer Silva downstairs to be medically evaluated. That completes my involvement in this incident
Inmate HEILMAN is aware of this report. Inmate HEILMAN is a participant in the Mental Health Services Delivery Syste
at the EOP level of care. Inmate  HEILMAN did have a CDCR 115-M1 prepared because the Inmate's GPL and because o
his Mental Health level of care.   **MHSDS:** EOP   **GPL:** 1.1

| REPORTING EMPLOYEE (Typed Name and Signature) | | DATE | ASSIGNMENT | RDO'S |
|---|---|---|---|---|
| ▶ D. Tyson, Correctional Officer | | | H/U 6 Floor | |

| REVIEWING SUPERVISOR'S SIGNATURE | DATE | ☑ INMATE SEGREGATED PENDING HEARING | |
|---|---|---|---|
| ▶ E. Ojeda, Correctional Sergeant | 5-10-13 | DATE  5/9/13 | LOC.  ASU6 |

| CLASSIFIED | OFFENSE DIVISION: | DATE | CLASSIFIED BY (Typed Name and Signature) | HEARING REFERRED TO | | | |
|---|---|---|---|---|---|---|---|
| ☐ ADMINISTRATIVE ☑ SERIOUS | D | | ▶ M. Stout, B-Facility Captain | ☐ HO | ☑ SHO | ☐ SC | ☐ |

**COPIES GIVEN INMATE BEFORE HEARING**

| | BY: (STAFF'S SIGNATURE) | DATE | TIME | TITLE OF SUPPLEMENT | | DATE | TIME |
|---|---|---|---|---|---|---|---|
| ☑ CDC 115 | ▶ | | | ▶ Psy Mental Report (7219) | | | |
| ☑ INCIDENT REPORT LOG NUMBER: | ▶ | 5/10/13 | 1045 | BY: (STAFF'S SIGNATURE) ▶ | | 5/10/13 | |
| HEARING | | | | | | | |

( HEARING CONTINUED ON PART C PAGE 1 )

REFERRED TO  ☐ CLASSIFICATION   ☐ BPT/NAEA

| ACTION BY: (TYPED NAME) | SIGNATURE | | DATE | TIME |
|---|---|---|---|---|
| C.P. Franco Correctional Lieutenant | ▶ | | 7/3/13 | |

| REVIEWED BY: (SIGNATURE) | DATE | CHIEF DISCIPLINARY OFFICER'S SIGNATURE | DATE |
|---|---|---|---|
| ▶ M. Stout, B-Facility Captain | 6/10/13 | ▶ A. Hernandez, Associate Warden | 6-11-13 |

| ☑ COPY OF CDC 115 GIVEN INMATE AFTER HEARING | BY: (STAFF'S SIGNATURE) ▶ | | DATE | TIME |
|---|---|---|---|---|

CDC 115 (7/88)

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTION
PAGE ___1___ OF ___3___

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| H-76785 | HEILMAN | FB-13-095 | R.J.D.C.F. | 05/28/13 |

☐ SUPPLEMENTAL   ☐ CONTINUATION OF: ____   ☐ 115 CIRCUMSTANCES   ☐ HEARING   ☒ IE REPORT   ☐ OTHER____

**INVESTIGATIVE EMPLOYEE'S STATEMENT:** On Friday, May 24, 2013, at approximately 0945 hours, I advised Inmate HEILMAN, H-76785, (FB-06-229L), I was assigned as his Investigative Employee (IE) to assist with his case. I explained to Inmate HEILMAN my function was to gather information, question all staff and inmate(s) who may have relevant information; screen prospective witness(es), and submit a written report to the Senior Hearing Officer (SHO) to include witness statements and a summary of the information collected specific to the violation charged.
Inmate HEILMAN indicated he understood my assignment as his IE and had no objections.

**INMATE/DEFENDANT STATEMENT:** "No statement, I'll make my statement at the hearing under 3320 L. I'll provide a written statement by me, be provided with supporting documentation at hearing consisting of, but not limited to -- witness statements, video recordings, and other supporting documents."

**REPORTING EMPLOYEE'S STATEMENT:** On 05/25/2013, at approximately 1520 hours, Officer D. Tyson, (C/O -- RDF: M/T), was interviewed regarding their participation in this offense. Officer Tyson provided the following testimony: "He was boarded up, non responsive, so we went in. While trying to get him in leg restraints, he kicked me in the left upper thigh while he was on his hands & knees facing away from me."

**STAFF WITNESS STATEMENT:**

D. Harris, Psych.
Q1) Describe injuries observed by you on HEILMAN after the incident.
A1) Question deemed irrelevant to the charge.

Q2) Did HEILMAN make a statement that he was beaten by C/Os causing injury?
A2) Question deemed irrelevant to the charge.

Q3) Where you told by a C/O that HEILMAN had tied a noose around his neck? Which C/O?
A3) Question deemed irrelevant to the charge.

D. Azikihery, Psych.
Q1) Describe injuries observed by you on HEILMAN after the incident.
A1) Question deemed irrelevant to the charge.

Q2) Did HEILMAN make a statement that he was beaten by C/Os causing injury?
A2) Question deemed irrelevant to the charge.

Q3) Were you told by a C/O that HEILMAN had tied a noose around his neck? Which C/O?
A3) Question deemed irrelevant to the charge.

Q4) State how long you heard HEILMAN screaming for help, were you allowed to help?
A4) Question deemed irrelevant to the charge.

| SIGNATURE OF WRITER ✓ | | DATE SIGNED |
|---|---|---|
| N. Schmidt, Correctional Officer | | |
| GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | 5-28-13 | 135 |

OSP 11 123876

STATE OF CALIFORNIA                                                                        DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**                                          PAGE <u>2</u> OF <u>3</u>

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| H-76785 | HEILMAN | FB-13-095 | R.J.D.C.F. | 05/28/13 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☐ HEARING | ☒ IE REPORT | ☐ OTHER_____ |

Russell, LPT
Q1) On 5/9 why did you not provide HEILMAN first aid?
A1) Question  deemed irrelevant to the charge.

Q2) Describe HEILMAN's injuries after incident.
A2) Question  deemed irrelevant to the charge.

Arguilez, Lieutenant
Q1) On May 8, did HEILMAN cover his windows?
A1) Question  deemed irrelevant to the charge.

Q2) Did HEILMAN claim his food was withheld on 5/8?
A2) Question  deemed irrelevant to the charge.

Q3) On 5/8 did HEILMAN claim threats of bodily harm by staff for attempting to file a staff
complaint?
A3) Question  deemed irrelevant to the charge.

Q4) Did you tell staff to stop tampering with food?
A4) Question  deemed irrelevant to the charge.

Q5) On 5/9 did C/Os tell you my window was covered to talk to you?
A5) No.

**<u>Inmate Witness Statement:</u>**

WALKER, P-61901, FB-06-228, T/M
Q1) Where you aware Armsted held my food on 5/7 and 5/8 PM chow?
A1) Question  deemed irrelevant to the charge.

Q2) Did HEILMAN tell you Armsted threw my food on the ground of my cell?
A2) Question  deemed irrelevant to the charge.

Q3) On 5/8 did you see Lt. Arguilez talking to me at my cell?
A3) Question  deemed irrelevant to the charge.

Q4) Did you see/hear HEILMAN yell for help? How long -- on 5/9?
A4) Question  deemed irrelevant to the charge.

| | SIGNATURE OF WRITER | DATE SIGNED |
|---|---|---|
| | N. Schmidt, Correctional Officer | |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
| | | 5-24-13 | 103_ |

CDC 115-C (5/95)                                                                    OSP 11 123876

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTION

**RULES VIOLATION REPORT - PART C**

PAGE ___3___ OF ___3___

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| H-76785 | HEILMAN | FB-13-095 | R.J.D.C.F. | 05/28/13 |

☐ SUPPLEMENTAL  ☒ CONTINUATION OF: ☐ 115 CIRCUMSTANCES ☐ HEARING ☒ IE REPORT ☐ OTHER _____

**Additional Documentation Requested by Inmate/Defendant:**

+ H.U. 6 video:
- 5/7 at dinner to show meal bypassed.
- 5/7 after dinner to show Armsted throwing paper tray into cell.
- 5/8 showing I was boarded up from 0700 - 1000, and at dinner time to show my food withheld.
- 5/8 after dinner to show Armsted throwing paper tray into cell.
- 5/8 through end of 3/W and into 1/W to show I was boarded up.
- 5/9 in morning leading up to incident to show I was boarded up.
+ Video recording on 5/9 conducted by Sgt. Ojeda and Lt. Arguilez at approx. 1100.
+ 7219 completed in TTA on 5/9 after incident.
+ 114 Log from 5/9.
+ Requesting names of LPTs on duty on 2/W in H.U. 6 on 5/9.

Note, per Title 15, the Inmate/Defendant was informed and provided of with a copy of the documentation used in this RVR CDC 115.

**Staff Witnesses Requested at Hearing:**
C/O Tyson
C/O Silva
C/O Buenrostro
C/O Jaca
C/O Schmidt (IF)
C/Lt. Arguilez

**Inmate Witness Requested at Hearing:**
I/M WALKER, F-61901, FB-06-228

**REPORTING EMPLOYEE REQUESTED AT HEARING:**                    Yes.

**STAFF WITNESS(ES) REQUESTED AT HEARING:**                    Yes.

**INMATE WITNESS(ES) REQUESTED AT HEARING:**                    Yes.

**INVESTIGATIVE EMPLOYEE REQUESTED AT HEARING:**                    Yes.

**ADDITIONAL INFORMATION CONTAINED IN CONFIDENTIAL REPORTS:**                    None.

| | SIGNATURE OF WRITER | DATE SIGNED |
|---|---|---|
| | N. Schmidt, Correctional Officer | |
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |

CDC 115-C (5/95)

OSP 11 123876

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTION

**RULES VIOLATION REPORT - PART C**

PAGE _1_ OF _3_

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| H76785 | Heilman | RJDEF | FB-13-095 | 6-4-13 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☒ HEARING | ☐ IE REPORT | ☐ OTHER_____ |

Inmate Heilman, CDCR # H-76785 appeared before Senior Hearing Officer C.P. Franco on 6-4-13 at approximately 1205 hou for adjudication of the specific charge of Battery on a Peace Officer.
Effective communication was established by speaking slowly, using simple English. These reports as well as the disciplin charge of Battery on a Peace Officer were reviewed with Subject during the hearing. Subject is able to understand effectively articulates both the nature of the charge and the disciplinary process. This was determined by allowing Subj to read the RVR, and then, verbally articulate the charge. Subject stated he understood and was prepared to begin. Subj has a TABE score of 1.1 on file.
Subject states he is in good health and ready to proceed with the hearing.

**Due Process:** Subject acknowledges he received a copy of the CDCR 115/115-A on 5-10-13, CDCR 837 5-18-13, (5) Five cop of the 7219 on 5-18-13, Inmate received a Mental Health Assessment (CDCR 115-MH) on 5-29-13, more than 24-hours prior the hearing. Subject stated he had adequate time to prepare for the hearing and was ready to proceed.

| SIGNATURE OF WRITER | DATE SIGNED |
|---|---|
| C.P. Franco Correctional Lieutenant | |

| | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |
|---|---|---|---|
| ☒ COPY OF CDC 115-C GIVEN TO INMATE | | | |

CDC 115-C (5/95)

OSP 11 123876

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS

**RULES VIOLATION REPORT - PART C**
PAGE 2 OF 3

| CDC NUMBER | INMATE'S NAME | LOG NUMBER | INSTITUTION | TODAY'S DATE |
|---|---|---|---|---|
| H76785 | Heilman | FB-13-095 | RJDCF | 6-9-13 |

☐ SUPPLEMENTAL   ☒ CONTINUATION OF:   ☐ 115 CIRCUMSTANCES   ☒ HEARING   ☐ IE REPORT   ☐ OTHER____

**Mental Health:** Subject is a participant in the Mental Health Delivery System at the EOP level of care. A CDCR 115 evaluation was completed on 5-28-13 by:" R. Williams PH.D  Subject received a copy of the CDCR 115-MH on 5-29-13.

**Investigative Employee:** C/O N. Schmidt was assigned as the Investigative Employee in accordance with the CCR Title Section 3315(d)(1)(A). Subject acknowledges receiving and reviewing the completed IE report on 5-29-13, more than 24-hours prior to the hearing.

**Staff Assistant:** C/O M. Lopez was assigned as the Staff Assistant due to EOP level of care. The assigned Staff Assistant was present at the hearing and met with the Subject more than 24-hours prior to the hearing.

**District Attorney Referral:** This incident was referred to the San Diego County District Attorney's Office for possible felony prosecution. On 5-18-13 Subject elected to Not Postpone the hearing pending the outcome of the DA referral.

**Plea Statement:** Not Guilty.

**Subject's Statement:** "NO STATEMENT"

**Witnesses:** Subject requested no witnesses. As witness by C/O Lopez Staff Assistant.

**Confidential Information:** Confidential information was not utilized regarding this RVR.

**Findings:** The evidence submitted at the hearing substantiates the specific charge of Battery on a Peace Officer.

1.) C/O D. Tyson's written RVR, dated 5-9-13, which states in part, "On Thursday, May 9, 2013, at approximately 0720 hours while performing my duties as ASU floor I was informed that Inmate Heilman, H-76785, FB-6-229 had banded up and was unresponsive... Officer Silva entered into the cell with the shield, and Officer Buenrostro was right behind Officer Silva and I was behind Officer Buenrostro. Inmate Heilman was being given orders to get down and he was not complying. Once we got him to the ground he was still being assaultive and resisting. Inmate Heilman kicked backwards with his left leg striking my left leg..."

2.) Mental Health Assessment CDCR 115-MH completed on May 28, 2013, by Dr. R. Williams Ph. D. Upon my review of the 115 MH The Mental Health Clinician, DR. Williams indicated that it is his/her opinion that the inmates' mental disorder did contribute to his behavior that led to his violation of the rules. Therefore, based on the clinicians assessment and my review of the facts presented, I believe the inmate's mental health did contribute to his misconduct.

3.) C/O A. Buenrostro's written Crime/Incident Report, Part C which states in part, " then followed C/O Silva into the cell where I observed Inmate Heilman rush towards us, I immediately ordered Inmate Heilman to stop and get down. With negative results Inmate Heilman continued towards us while C/O Silva was able to utilize the shield and push Inmate Heilman to the back of the cell and get down to the ground....

4.) C/O F. Jaca's Written Crime/Incident Report Part C which states in part, " Officer Silva entered the cell with the shield and forced Inmate Heilman to the back of the cell then to the floor. Inmate Heilman continued to resist by kicking his legs back and forth despite being ordered several times to stop resisting..."

5.) C/O A. Silva's written Crime/Incident Report, Part C which states in part, " On Thursday, May 9, 2013, After making entery into the cell Inmate Heilman stood up and took an aggressive stance with his hand clinched into fist.. Inmate Heilman then lunged towards me in an attempt to strike me with his right fist... While holding Heilman down I observed Heilman become resistive by not letting Officer Tyson place him in handcuffs and kicking his feet back and forth..."

| SIGNATURE OF WRITER C.P. Franco Correctional Lieutenant | | DATE SIGNED |
|---|---|---|
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |

CDC 115-C (5/95)
OSP 11 123876

STATE OF CALIFORNIA

**RULES VIOLATION REPORT - PART C**

DEPARTMENT OF CORRECTION

PAGE 3 OF 3

| CDC NUMBER H76785 | INMATE'S NAME Heilman | LOG NUMBER FBF-13-095 | INSTITUTION RJWCF | TODAY'S DATE 6-8-13 |

| ☐ SUPPLEMENTAL | ☒ CONTINUATION OF: | ☐ 115 CIRCUMSTANCES | ☒ HEARING | ☐ IE REPORT | ☐ OTHER |

**Disposition:** Subject is found guilty. SHO elect to dismiss the RVR based on the information contained in the CDC 11 and orders the incident documented on a CDC 128-B General chrono.

| SIGNATURE OF WRITER C.P. Franco Correctional Lieutenant | DATE SIGNED |
| ☐ COPY OF CDC 115-C GIVEN TO INMATE | GIVEN BY: (Staff's Signature) | DATE SIGNED | TIME SIGNED |

CDC 115-C (5/95)

OSP 11 123876

NAME and NUMBER
CDC-128-B Rev. 4/

Heilman       H-76785      FB-6-229 L

On Tuesday, June 4, 2013, at approximately 1235 hours, Inmate Heilman, H-76785, Rules Violation Report (RVR) Log # FB-13-035, was adjudicated. Inmate Heilman was found "GUILTY" for violating CCR 53005(d)(1), for the specific act of "Battery on a Peace Officer." The Senior Hearing Officer (SHO) elected to reduce the RVR based on the information contained in the CDC 115-RV and orders the incident documented on a CDC 128-B General Chrono, and dismiss the formal Rules Violation Report pursuant to CCR 53315(f)(2) and 53314(f). The Rules Violation Report, authored by Correctional Officer D. Tyson, dated 05/09/2013.

Original:   Central File
cc:   Writer
        Inmate

C.P. Franco Correctional Lieutenant
RJDCF

RVR DOCUMENTED ON CUSTODIAL CHRONO

6-4-2013

DATE

GENERAL CHRONO

Written Statement submitted at 115 RVR disciplinary hearing, Log No. FB-13-095
To be attached to the 115 RVR Hearing Final Copy pursuant to CCR Title 15 sect. 3320
supporting documentation. I plead "Not Guilty" to Battery on a Peace Officer.

On May 6, 2013, I was placed in Bldg 6 Ad. Seg. Pending investigation. Upon arrival
I was not provided a fish kit or any hygiene or sanitary supplies (toilet paper,
soap, toothbrush, etc). No Towel — only one dirty blanket and one sheet. The room
was not cleaned — feces and urine on the walls and floor around the toilet.
I was upset because I am old and need toilet paper. I banged on the door on
the 6th and the morning of the 7th. I spoke to A-yard Captain Sanchez and com-
plained about the lack of supplies and no medication on May 7, 2013. This complaint
in front of Capt. Sanchez and Sgt. Thompson caused the guards to become
upset and they retaliated by denying me my meals. On May 7, 2013, at dinner,
I was bypassed by the guard serving meals. Instead, I observed C/o Armistead
scrape the remains of dinner preparation off the table and onto a paper plate.
C/o Armistead brought this "meal" to my Room 229 and opened the food port
and threw the food on me and on the floor. I banged on the door again for
a supervisor but was told by guards to shut the fuck up or there would be
trouble for me. [All confirmed by video recording.]

On May 8, 2013 I banged on the door again after my request to speak to a
Sergeant or Lieutenant was met by taunts and harassment and threats of bodily
harm if I did not stop complaining. After I did not receive breakfast or lunch
I covered my window so a supervisor would arrive to resolve the guards'
abusive conduct in withholding my supplies and tampering with my food.
On May 8th, with my window covered, Sgt. Ojeda responded but refused to
provide me my supplies, and refused to help concerning the denial of my meals.
Lt. Arguilez then came to Room 229 and I uncovered my window — Lt. Arguilez
promised to resolve the complaints about not receiving my food and brought
me some sanitary supplies.

However, after Lt. Arguilez left and third watch officers Sgt. Thompson and
C/o Armistead arrived to Bldg. 6, again I was bypassed and not provided dinner,
again I observed C/o Armistead scrape food onto a paper tray, and again
C/o Armistead threw this special "meal" onto the floor and on the toilet.
On Third watch on May 8th, I covered my window and banged on the door for
my food. C/o Carrion simply opened the food port, reached up and tore

-1-

( Not Permitted to be Presented

away the paper over the window.

On the morning of May 9, 2013, I was very hungry and very upset over the abuse and harassment and although I was given a breakfast tray I asked to speak again with Lt. Arguilez, I believe C/o Silva told me to go "fuck myself." I was desperate to resolve not being fed and I covered my window and began to bang on my door and asking to speak to a supervisor. Without warning of any kind, my door was opened and an alarm was sounded. I was not asked to uncover my window or to cuff up. I had been banging on the door and asking for the Lieutenant when four guards rushed in [later identified as C/o's Silva, Buenrostro, Tyson and Jaco]. Thinking I would be pepper sprayed I dove face down on the floor, and the plastic shield with all the guards weight landed on my back, buttocks and legs. I was powerless and immediately I started getting punched in the head, back and left rib area. Pulling on my left arm, C/o Silva began repeatedly striking my left rib area. I was flat on my face and could not move, I was brutally and improperly restrained with constricting cuffs on my arms and legs. Another guard then began to strike and kick me in the face and head. I believe it was C/o Buenrostro. I was flat on the floor and it would have been physically impossible to kick backwards as stated in the 115 RVR as my body, knees and legs were pinned to the floor. I was pulled roughly to my feet, and then the real beating began. While I was restrained — my arms were lifted up behind me exposing my left-side rib area. The guards as far as I could tell then took turns striking me repeatedly in this area of my body. At one point C/o Buenrostro began punching me in the face again and someone said, "Not in the face!" There was so much pain I almost fainted. This was an organized and sadistic beating of a 56 year old man for banging on the door and complaining or attempting to complain about not getting fed and no toilet paper or soap, and for complaining about previous threats of bodily harm to Capt. Sanchez and Lt. Arguilez. I was punched and struck dozens of times!

- 2 -

I was taken from Cell 22Q and placed in a holding cage. The restraints on my arms were legs were so severely tightened and constricted and the pain so excruciating that it went beyond my endurance. It was an act of brutality and torture to leave these restraints on for 1½ hours as I screamed and pleaded in agonizing pain for help. [There were so many staff and inmate witnesses to this act of brutality that I name only one staff witness - Psychiatrist Dr. Azigihery, and three inmate witnesses, S. Walker, P-61901, cell 22B, R. Ellard, T-09242, cell 138 and Tony Asberry, P-63853 cell 128.] After over 1½ hours the restraints were then removed although I was left in the holding cage for over 4 hours and provided no first aid from Bldg. 6. medical staff.

At this time I was told by Dr. Azigihery that I was seen with a noose tied around my neck, If this were true then I would have been strangling when the guards entered Room 22Q and not able to attack anyone or anything. There would have been no intent on Heilman's part if he was flat on his face struggling for breath with a noose around the neck and 3 guards weight on his back, buttocks and legs. The claim of a sheet tied around Heilman's neck is alleged by C/o Silva and C/o Buenrostro in their Supplemental Reports, yet the Reporting Employee, C/o Tyson inexplicably omits this claim from the 115 RVR. There are also other discrepancies between C/o Tyson's 115 RVR and other involved guard's reports and statements.

On May 9, 2013 as a result of the severe beating committed by CDCR Correctional Officers, Heilman sustained significant and life-threatening internal injuries including a partial collapse of his left lung. Heilman received multiple other injuries to his face and body, X-rays taken on May 9, 2013 of Heilman's bruised and swollen face revealed no fractures or a broken jaw. Heilman was transported to Alvarado hospital by ambulance on May 16, 2013 and underwent surgery on May 20, 2013 to repair his collapsed lung. ( See the Video Recording of Heilman's injuries taken on 5-9-2013 as well as Heilman's Form 7219 ).

Heilman would like to point out that all four involved guards in the

Incident on May 9, 2013, C/o's S. Ivo, Buenrostro, Tyson and Jaca stated they had "No Injuries" on their Form 7219's. In particular and relevant to the decision today is C/o Tyson's Form 7219 as recorded by R.N. LaCorum, that C/o Tyson had — No bruises, No reddened areas, No scratches, No Abrasions, No bleeding, No discolored areas, No cuts/lacerations/slashes, No pain, and No swollen areas on any part of his face or body including his legs.

Taking all facts into consideration, Heilman was upset because he was not provided required hygiene supplies when placed into Ad. Seg. and complained. His food was not provided to him for two days and Heilman banged on the door. Banging on the door, complaining and covering his window are not reasons for four Officers to beat and inflict serious internal injuries on a 56 year old man who participates at the EOP level of the Mental Health Services Delivery System. Taken also into consideration are the four involved officers failure to follow CPCR Policy and procedures prior to entering Heilman's cell by failing to talk Heilman to the door or providing a mental health clinician to talk to Heilman or more importantly receiving authorization from a Supervisor and a video recording made of events inside of the cell. Consideration should be given to the discrepancies between the 115 RVR and other involved officers statements of the incident as well as the fact C/o Tyson admits and it is documented on the Form 7219 that he received No Injuries or pain of any kind from the incident. That C/o Tyson omits these facts from the 115 RVR as well as other crucial claims including omitting the admission that Force was used against Heilman on May 9, 2013 beyond even an allowable minimum resulting in Heilman's severe and significant injuries.                    Thomas J. Heilman

- 4 -

STATE OF CALIFORNIA

*COPY*

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART A - COVER SHEET**
CDCR 837-A (REV. 10/06)

DV-1.5.4

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Page 1 of 8 | | INCIDENT LOG NUMBER RJD-B06-13-05-0137 | | | INCIDENT DATE 05/09/2013 | | INCIDENT TIME 07:20 | | |

| INSTITUTION FACILITY RJD | B06 - FACILITY B | FACILITY LEVEL ☐ I ☐ II ☐ RC ☑ III ☐ IV | INCIDENT SITE ASU 6 | LOCATION CELL 229 | PROGRAM ASU | AD/SEG YARD N/A | USE OF FORCE: Yes |
|---|---|---|---|---|---|---|---|

| SPECIFIC CRIME / INCIDENT | ☑ CCR ☐ PC ☐ N/A | NUMBER / SUBSECTION |
|---|---|---|
| Battery on a Peace Officer Resulting in Use of Force | | 3005-d1 Force or Violence |

| D.A. REFERRAL ELIGIBLE ☑ Yes ☐ No | CRISIS RESPONSE TEAM ACTIVATED ☐ Yes ☑ No | MUTUAL AID ☐ Yes ☑ No | PIO/AA NOTIFIED ☐ Yes ☑ No |
|---|---|---|---|

**RELATED INFORMATION (CHECK ALL THAT APPLY OR N/A)**

| DEATH AND CAUSE OF DEATH | ASSAULT / BATTERY | TYPE OF ASSAULT / BATTERY |
|---|---|---|
| ☑ N/A | ☐ N/A 1. STAFF | ☐ N/A 1. BATTERY ON STAFF |
| | | Other Desc: |

| SERIOUS INJURY | INMATE WEAPONS | TYPE OF WEAPON / SHOTS FIRED / FORCE |
|---|---|---|
| ☑ N/A | ☑ N/A | ☐ N/A 1. PHYSICAL FORCE - #Warning: 0 #Effect: 0 #Chemical: 0 |

| ESCAPES |
|---|
| ☑ N/A |

| CONTROLLED SUBSTANCE | WEIGHT/ In Grams | PROGRAM STATUS | EXCEPTIONAL ACTIVITY |
|---|---|---|---|
| ☑ N/A | | ☑ N/A | ☑ N/A |
| | | | EXTRACTION:   1. EMERGENCY EXTRACTION ☐ N/A |

BRIEF DESCRIPTION OF INCIDENT (ONE OR TWO SENTENCES)

On Thursday, May 9, 2013, at approximately 0720 hours, Inmate (I/M) Heilman, T., H76785, FB-6-229L, was observed inside of his assigned cell with a sheet wrapped around his neck, resulting in the use of force to stop his actions. The circumstances of the incident are as follows:

COMPLETE SYNOPSIS / SUMMARY ON PART A1

| NAME OF REPORTING STAFF (PRINT/TYPE) D. ARGUILEZ | TITLE CORRECTIONAL LIEUTENANT | ID# 1412543 | BADGE # 55109 |
|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | | PHONE EXT. INCIDENT SITE 6255 | DATE 5/9/2013 |
| NAME OF WARDEN / AOD (PRINT/ SIGN) DANIEL PARAMO | TITLE WARDEN | | DATE 5-13-13 |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

DV-1.5.4

**CRIME / INCIDENT REPORT**
**PART A1 - SUPPLEMENT**
CDCR 837-A1 (REV. 10/06)

| | | Page 2 of 8 | INCIDENT LOG NUMBER<br>RJD-B06-13-05-0137 |
|---|---|---|---|
| INSTITUTION<br>RJD | FACILITY<br>B06 - FACILITY B | INCIDENT DATE<br>05/09/2013 | INCIDENT TIME<br>07:20 |

TYPE OF INFORMATION:

☑ SYNOPSIS/SUMMARY OF INCIDENT   ☐ SUPPLEMENTAL INFORMATION   ☐ AMENDED INFORMATION   ☐ CLOSURE REPORT

SYNOPSIS OF EVENT:

On Thursday, May 9, 2013, at approximately 0720 hours, Correctional Officer (C/O) A. Buenrostro observed the front windows of Housing Unit 6, Cell 229 covered with what appeared to be paper, preventing staff from being able to view inside of the cell. C/O Buenrostro attempted to get a verbal response from I/M Heilman, the sole occupant of the cell. I/M Heilman was unresponsive. It should be noted that I/M Heilman is on Intake Status and 30 minute welfare checks are mandated in the Administrative Segregation Unit (ASU). C/O Buenrostro alerted the other ASU staff members of an unresponsive inmate. C/O A. Silva retrieved the extraction shield and a set of leg irons and proceeded to cell 229 for a possible emergency cell entry. C/O D. Tyson and C/O F. Jaca also responded to the cell. C/O Silva held the shield in front of the food port while C/O Buenrostro opened the food port and looked into the cell. C/O Buenrostro observed I/M Heilman at the back of the cell with a sheet wrapped around his neck. C/O Silva activated his personal alarm and ordered the cell door opened. Utilizing the shield, C/O Silva entered the cell along with C/O Buenrostro, C/O Tyson, and C/O Jaca. As they entered the cell, I/M Heilman got up and took an aggressive stance. C/O Buenrostro and C/O Silva ordered I/M Heilman to get down. I/M Heilman refused to comply with the orders and advanced towards C/O Silva. I/M Heilman swung his right fist towards C/O Silva. C/O Silva utilized the shield and forced I/M Heilman to the rear of the cell and down to the ground. Once on the ground, I/M Heilman was resistive to staff's efforts to restrain him. C/O Tyson placed I/M Heilman in handcuffs. I/M Heilman was flailing his legs and kicked back towards C/O Tyson, striking C/O Tyson on his left leg. C/O Jaca utilized physical force to control I/M Heilman's legs and C/O Tyson placed him in leg irons. I/M Heilman was assisted to his feet and escorted from the cell to a holding cell in B section. I/M Heilman was medically evaluated, treated and subsequently released back to custody. Once medically cleared, I/M Heilman was given a Mental Health evaluation and rehoused in the Correctional Treatment Center(CTC), Cell 156 without further incident.

ALARM:
C/O Silva activated his personal alarm.

USE OF FORCE:
C/O Silva, C/O Buenrostro, C/O Tyson, and C/O Jaca utilized physical force during the incident.

SUSPECT(S):
I/M Heilman, T., H-76785, FB-6-229L.

VICTIM(S):
C/O Tyson.

HANDCUFFS (LEG IRONS/SPIT HOOD):
C/O Tyson handcuffed and applied leg irons to I/M Heilman.

WITNESS(S):
Lieutenant D. Arguilez, Sergeant E. Ojeda, C/O Buenrostro, C/O Silva, C/O Tyson, and C/O Jaca witnessed the incident.

EVIDENCE:
One (1) white sheet placed into Evidence Locker #3, located in Central Control.

ESCORT(S):
C/O Silva and C/O Jaca escorted I/M Heilman to a holding cell following this incident. C/O J. Morales escorted I/M Heilman to the CTC for rehousing.

SEARCHES (HOLDING CELLS/SURROUNDING AREA):
C/O Silva searched the holding cell prior to placement and conducted a clothed body search of I/M Heilman with

☑ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE)<br>D. ARGUILEZ | TITLE:<br>CORRECTIONAL LIEUTENANT | ID#<br>1412543 | BADGE #<br>55109 |
|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | | PHONE EXT. INCIDENT SITE<br>6255 | DATE<br>5/9/2013 |
| NAME OF WARDEN / AOD (PRINT/ SIGN)<br>DANIEL PARAMO | | TITLE<br>WARDEN | DATE<br>5-13-13 |

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART A1 - SUPPLEMENT**
CDCR 837-A1 (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
DV-1.5.4

| | | INCIDENT LOG NUMBER |
|---|---|---|
| Page 3 of 8 | | RJD-B06-13-05-0137 |

| INSTITUTION | FACILITY | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|
| RJD | B06 - FACILITY B | 05/09/2013 | 07:20 |

TYPE OF INFORMATION:

☑ SYNOPSIS/SUMMARY OF INCIDENT   ☐ SUPPLEMENTAL INFORMATION   ☐ AMENDED INFORMATION   ☐ CLOSURE REPORT

negative results for any contraband.

REASONABLE ACCOMODATION:
N/A

HOLDING CELL(S) (TIME):
I/M Heilman was secured in a holding cell for approximately 4 hours.

DECONTAMINATION:
N/A

MEDICAL:
Psychiatric Technician (PT) R. Russell completed a Medical Report of Injury (CDCR 7219) on I/M Heilman.  I/M Heilman was medically cleared and returned to custody.  PT Russell also completed CDCR 7219's for C/O Silva, C/O Buenrostro, C/O Tyson, and C/O Jaca.

INJURIES STAFF:
N/A

INJURIES INMATES:
I/M Heilman sustained a minor ................................ pain to his left side torso and reddened areas to his knee, left knee, and left side torso.

MIRANDA:
N/A

VIDEOTAPED INTERVIEW OF INMATE (ALLEGATIONS/SBI):
Following the incident, Inmate Heilman made allegations of excessive use of force against staff. A video-taped interview was conducted and a Report of Findings (CDCR 3014) will be completed.

DISCIPLINARY:
I/M Heilman was advised that he would be receiving a Serious Rules Violations Report (CDCR 115), for violating the California Code of Regulations, Title 15, Section 3005(d)(1), Conduct, specifically: Battery on a Peace Officer.

NOTIFICATIONS (CCPOA):
All appropriate administrative staff were informed of this incident.

CONCLUSION:
There were no other injuries to staff or inmate, nor was there any damage to State Property as a result of this incident. You will be apprised of any further developments should they occur.

☐ CHECK IF NARRATIVE IS CONTINUED ON ADDITIONAL A1

| NAME OF REPORTING STAFF (PRINT/TYPE)   D. ARGUELEZ | TITLE:   CORRECTIONAL LIEUTENANT | ID#   1412543 | BADGE #   55109 |
|---|---|---|---|
| SIGNATURE OF REPORTING STAFF | | PHONE EXT. INCIDENT SITE   6255 | DATE   5/9/2013 |
| NAME OF WARDEN / AOD (PRINT/SIGN)   DANIEL PARAMO | | TITLE   WARDEN | DATE   5-13-13 |

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART B1 - INMATE**
CDCR 837-B1 (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
DV-1.5.4

Page 4 of 8

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| RJD | B06 - FACILITY B | RJD-B06-13-05-0137 |

INMATE (ENTIRE) SHEET

| NAME: LAST | | FIRST | | MI | CDC # | | SEX | ETHNICITY | FBI # | | CII # |
|---|---|---|---|---|---|---|---|---|---|---|---|
| HEILMAN | | THOMAS | | J. | H-76785 | | M | WHI | | | |

| PARTICIPANT | CLASS SCORE | PVRTC | DATE REC'D BY CDC | DATE REC'D BY INST | ANTICIPATED RELEASE DATE | RELEASE Date Type | EXTRACTION | DOB | HOUSING |
|---|---|---|---|---|---|---|---|---|---|
| SUSPECT | 19 | NO | 05/26/1993 | 01/26/2012 | 09/17/2011 | MEPD | YES | 04/04/1957 | FB-6-229L |

| CURRENT INMATE LEVEL | ☐ N/A  ☑ EOP  ☐ DMH | COMMITMENT OFFENSE | COUNTY OF COMMITMENT |
|---|---|---|---|
| I | ☐ CCCMS  ☐ MHCB  ☐ DDP  ☐ DPP | | |

☐ N/A    DESCRIPTION OF INJURIES, LOCATIONS AND CAUSE

ABRASION/SCRATCH
PAIN
REDDENED AREA (INJURY LOCATIONS: 1. FACE CAUSE: UNKNOWN - 2. BACK - UNKNOWN - 3. LEFT KNEE - UNKNOWN - )

| ☐ N/A  ☑ TREATED AND RELEASED | ☐ HOSPITALIZED | NAME/ LOCATION OF HOSP/ TREATMENT FACILITY |
|---|---|---|
| ☐ DECEASED DATE | ☐ REFUSED TREATMENT | ☐ N/A  ASU 6 CLINIC |

| Reason For Death: | Is There ASCA Serious Injury: ⦿ No  ○ Yes | ☑ N/A  PRISON GANG / DISRUPTIVE GROUP | VALIDATED / ASSOCIATED |
|---|---|---|---|

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
DV-1.5.4

## CRIME / INCIDENT REPORT
## PART B2 - STAFF
CDCR 837-B2 (REV. 10/06)

Page 5 of 8

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| RJD | B06 - FACILITY B | RJD-B06-13-05-0137 |

**STAFF (ENTIRE SHEET)**

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| ARGUILEZ | D. | NMI | CORRECTIONAL LIEUTENANT | M | HIS | S/M |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| RESPONDER | 55109 | 1412543 | 220133 | ASU LIEUTENANT |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A | ☐ TREATED AND RELEASED | USED FORCE | PROCESSED EVIDENCE |
|---|---|---|---|---|
| | ☐ REFUSED TREATMENT   ☐ HOSPITALIZED | | ☐ Yes ☑ No | ☐ Yes ☑ No |
| Reason For Death | ☐ DECEASED DATE | | TYPE OF FORCE: | |
| | Is There ASCA Serious Injury   ◉ No ○ Yes | | | |

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| OJEDA | E. | | CORRECTIONAL SERGEANT | M | HIS | S/M |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| RESPONDER | 66260 | 1416156 | 220370 | ASU SERGEANT |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A | ☐ TREATED AND RELEASED | USED FORCE | PROCESSED EVIDENCE |
|---|---|---|---|---|
| | ☐ REFUSED TREATMENT   ☐ HOSPITALIZED | | ☐ Yes ☑ No | ☐ Yes ☑ No |
| Reason For Death | ☐ DECEASED DATE | | TYPE OF FORCE: | |
| | Is There ASCA Serious Injury   ◉ No ○ Yes | | | |

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| BUENROSTRO | A. | NMI | CORRECTIONAL OFFICER | M | HIS | F/S |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| PRIMARY | 64532 | 1413332 | 221522 | ASU 6 S&E 1 |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☐ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☐ N/A | ☑ TREATED AND RELEASED | USED FORCE | PROCESSED EVIDENCE |
|---|---|---|---|---|
| ASU 6 CLINIC | ☐ REFUSED TREATMENT   ☐ HOSPITALIZED | | ☑ Yes ☐ No | ☑ Yes ☐ No |
| Reason For Death | ☐ DECEASED DATE | | TYPE OF FORCE: | |
| | Is There ASCA Serious Injury   ◉ No ○ Yes | | PHYSICAL FORCE | |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
DV-1.5.4

**CRIME / INCIDENT REPORT**
**PART B2 - STAFF**
CDCR 837-B2 (REV. 10/06)

Page 6 of 8

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| RJD | B06 - FACILITY B | RJD-B06-13-05-0137 |

STAFF (ENTIRE SHEET)

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| DAVIS | R. | | CORRECTIONAL OFFICER | M | WHI | M/T |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| CAMERA | 78533 | 1414034 | 221518 | ASU 6 FLOOR 2 |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A   ☐ TREATED AND RELEASED ☐ REFUSED TREATMENT ☐ HOSPITALIZED ☐ DECEASED DATE | USED FORCE ☐ Yes ☑ No TYPE OF FORCE: | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|
| Reason For Death | Is There ASCA Serious Injury ◉ No ○ Yes | | |

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| GREY | M. | | CORRECTIONAL OFFICER | M | WHI | S/M |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| WITNESS | 56942 | 1410419 | 221508 | ASU 6 CONTROL |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☑ N/A   ☐ TREATED AND RELEASED ☐ REFUSED TREATMENT ☐ HOSPITALIZED ☐ DECEASED DATE | USED FORCE ☐ Yes ☑ No TYPE OF FORCE: | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|
| Reason For Death | Is There ASCA Serious Injury ◉ No ○ Yes | | |

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| JACA | F. | | CORRECTIONAL OFFICER | M | OTH | S/M |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| RESPONDER | 57514 | 1411218 | 221526 | ASU 6 S&E 2 |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

| ☐ N/A   NAME/ LOCATION OF HOSP/ FACILITY | ☐ N/A   ☑ TREATED AND RELEASED ☐ REFUSED TREATMENT ☐ HOSPITALIZED ☐ DECEASED DATE | USED FORCE ☑ Yes ☐ No TYPE OF FORCE: PHYSICAL FORCE | PROCESSED EVIDENCE ☐ Yes ☑ No |
|---|---|---|---|
| ASU 6 CLINIC | | | |
| Reason For Death | Is There ASCA Serious Injury ◉ No ○ Yes | | |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

DV-1.5.4

**CRIME / INCIDENT REPORT**
**PART B2 - STAFF**
CDCR 837-B2 (REV. 10/06)

Page 7 of 8

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| RJD | B06 - FACILITY B | RJD-B06-13-05-0137 |

### STAFF (ENTIRE SHEET)

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| MORALES | J. | | CORRECTIONAL OFFICER | M | HIS | T/W |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| RESPONDER | 77381 | 1414600 | 221534 | ASU 6 LEGAL/PROPERTY |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

☑ N/A   NAME/ LOCATION OF HOSP/ FACILITY

Reason For Death

☑ N/A   ☐ TREATED AND RELEASED
☐ REFUSED TREATMENT   ☐ HOSPITALIZED
☐ DECEASED DATE
Is There ASCA Serious Injury   ◉ No   ○ Yes

USED FORCE   ☐ Yes   ☑ No
TYPE OF FORCE:

PROCESSED EVIDENCE   ☐ Yes   ☑ No

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| SILVA | A. | | CORRECTIONAL OFFICER | M | HIS | S/M |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| RESPONDER | 60963 | 1412924 | 221514 | ASU 6 FLOOR 1 |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

☐ N/A   NAME/ LOCATION OF HOSP/ FACILITY
ASU 6 CLINIC
Reason For Death

☐ N/A   ☑ TREATED AND RELEASED
☐ REFUSED TREATMENT   ☐ HOSPITALIZED
☐ DECEASED DATE
Is There ASCA Serious Injury   ◉ No   ○ Yes

USED FORCE   ☑ Yes   ☐ No
TYPE OF FORCE:
PHYSICAL FORCE

PROCESSED EVIDENCE   ☐ Yes   ☑ No

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| TYSON | D. | | CORRECTIONAL OFFICER | M | BLA | M/T |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| RESPONDER | 78094 | 1414726 | 221518 | ASU 6 FLOOR 2 |

☑ N/A   DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

☐ N/A   NAME/ LOCATION OF HOSP/ FACILITY
ASU 6 CLINIC
Reason For Death

☐ N/A   ☑ TREATED AND RELEASED
☐ REFUSED TREATMENT   ☐ HOSPITALIZED
☐ DECEASED DATE
Is There ASCA Serious Injury   ◉ No   ○ Yes

USED FORCE   ☑ Yes   ☐ No
TYPE OF FORCE:
PHYSICAL FORCE

PROCESSED EVIDENCE   ☐ Yes   ☑ No

STATE OF CALIFORNIA

**CRIME / INCIDENT REPORT**
**PART B2 - STAFF**
CDCR 837-B2 (REV. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
DV-1.5.4

Page 8 of 8

| INSTITUTION | FACILITY | INCIDENT LOG NUMBER |
|---|---|---|
| RJD | B06 - FACILITY B | RJD-B06-13-05-0137 |

**STAFF (ENTIRE SHEET)**

| NAME: LAST | FIRST | MI | TITLE | SEX | ETHNICITY | RDO'S |
|---|---|---|---|---|---|---|
| RUSSELL | R. | | PSYCHIATRIC TECHNICIAN | F | WHI | F/S |

| PARTICIPANT | BADGE # | ID # | POST ASSIGN # | POSITION |
|---|---|---|---|---|
| OBSERVER, MED | N/A | 1415370 | N/A | ASU 6 CLINIC |

☑ N/A    DESCRIPTION OF INJURIES, LOCATION AND CAUSE:

☑ N/A    NAME/ LOCATION OF HOSP/ FACILITY

Reason For Death

☑ N/A
☐ REFUSED TREATMENT
☐ DECEASED DATE

☐ TREATED AND RELEASED
☐ HOSPITALIZED

Is There ASCA Serious Injury   ⦿ No  ◯ Yes

USED FORCE
☐ Yes  ☑ No
TYPE OF FORCE:

PROCESSED EVIDENCE
☐ Yes  ☑ No

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

# CRIME / INCIDENT REPORT
## PART C – STAFF REPORT
CDCR 837-C (REV. 10/06)

Page __1__ of __2__

| INCIDENT LOG NUMBER |
|---|
| RJD-B06-13-05-0137 |

| NAME: LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|
| SILVA | A | T | 05-09-13 | 0720 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 221514 | 6 FLOOR #1 | YR 13    MO. 5 | 05-09-13 | ASU 6 |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE |
|---|---|---|---|
| SM | 06-1400 | Battery on a peace officer resulting in the use of force | 3005 (d)1 |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES) | |
|---|---|---|---|---|
| ☐ PRIMARY | M. Grey (S) | | Heilman, H76785, 6-229L(S) | |
| ☒ RESPONDER | D. Tyson (S) | | | |
| ☐ WITNESS | F. Jaca (s) | | | |
| ☐ VICTIM | A.BUENROSTRO(S) | | | |
| ☐ CAMERA | | | | |
| ☐ SCRIBE | | | | |

| ☐ N/A | FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE | | | | | | |
|---|---|---|---|---|---|---|---|
| | PHYSICAL: | WEAPON: | WARNING  EFFECT: | LAUNCHER: | EFFECT#: | CHEMICAL/ TYPE: | |
| ☒ PHYSICAL | ☐ EXPANDABLE BATON | ☐ MINI 14 | | ☐ 37MM | | ☐ OC | |
| ☐ CHEMICAL | ☐ RESTRAINT | ☐ .38 CAL | | ☐ L8 | | ☐ CN | |
| ☐ WEAPON | TECHNIQUES | ☐ 9MM | | ☐ 40MM | | ☐ CS | |
| ☐ NONE | ☐ HANDS | ☐ SHOTGUN | | ☐ 40 MM MULTI | | ☐ OTHER | |
| FORCE OBSERVED BY YOU | ☐ FEET | | | ☐ HFWRS | | | |

| | ☐ OTHER FORCE NOT LISTED ABOVE:_____ | | | |
|---|---|---|---|---|
| ☐ PHYSICAL | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
| ☐ CHEMICAL | ☒ N/A | ☒ N/A | | |
| ☐ WEAPON | | | | |
| ☐ NONE | | | ☐ YES | ☐ YES |
| EVIDENCE COLLECTED BY | | | ☒ NO | ☒ NO |

| | | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|---|
| ☐ YES | ☒ N/A | | ☒ N/A | ☐ BODILY   ☒ N/A | ☐ YES |
| ☒ NO | | | | ☐ UNKNOWN | |
| REPORTING STAFF INJURED | | | | ☐ OTHER_____ | ☒ NO |
| ☐ YES | | | | | |
| ☒ NO | | | | | |

On Thursday, May 09, 2013 at approximately 0720 hours while performing my duties Housing Unit 6 floor #1. I was alerted by Officer A. Buenrostro of a possible unresponsive Inmate in cell 229, solely occupied by Heilman, H76785, 6-229L. I immediately retrieved the tactical extraction shield and a set of leg restrains and responded to the front of cell 229. Upon my arrival I observed Officer Buenrostro attempting to make verbal contact with inmate Heilman, who had placed sheets of paper in the cell window blocking our view into the cell. Heilman was unresponsive to any of Officer Buenrostro orders to remove the window covers and made no verbal contact with Officer Buenrostro. Fearing for inmate Heilman's Safety I placed the shield over the tray slot and opened the slot in an attempt to gain a visual on inmate Heilman. Officer Buenrostro, looking through the tray slot observed inmate Heilman in the back of the cell with a sheet around tied around his neck. I immediately Activated my personal alarm and instructed Housing Unit 6 control Officer, M. Grey to open the cell door. After making entry into the cell inmate Heilman stood up and took an aggressive stance with his hands clinched into fists. Officer Buenrostro and I gave Heilman several direct orders to get down and lay in the prone position. All orders met with negative results.

CHECK IF NARRITIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE# | ID# | DATE |
|---|---|---|---|---|
| | CORRECTIONAL OFFICER | 60963 | 1412924 | 5-9-13 |

| NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| E. Ojeda   Sergeant | 5-9-13 | ☐ YES  ☐ NO | ☐ YES  ☐ NO | |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C – STAFF REPORT**
CDCR 837-C1 (REV. 10/06)

| | | INCIDENT LOG NUMBER |
|---|---|---|
| Page __2__ of ____2_ | | RJD-B06-13-05-0137 |

| NAME: LAST | FIRST | MI |
|---|---|---|
| SILVA | A | T |

| TYPE OF INFORMATION | | |
|---|---|---|
| ☒ CONTINUATION OF REPORT | ☐ CLARIFICATION OF REPORT | ☐ ADDITIONAL INFORMATION |

Inmate Heilman then lunged towards me in an attempt to strike me with his right fist.  Using the extraction shield I blocked Heilmans's attempt.  I then, using my weight and upper body strength forced Heilman back and down to the cell floor.  I then removed the shield from the top of Heilman and placed it on the lower bunk.  Using my weight and upper body strength I held inmate Heilman down by placing both of my hands in the middle of His back while pushing downward.  While holding Heilman down I observed Heilman become resistive by not letting Officer Tyson place him in handcuffs and kicking his feet back and forth.  Officer Tyson forced inmate Heilman's hands behind his back and secured him in handcuffs.  I then handed the set of leg restraints to Officer Tyson who placed then on Heilman.  Officer Jaca and I Assisted Heilman to his feet, and prior to exiting the cell I removed the sheet from around Heilmans neck and handed it to Officer Buenrostro to be processed for evidence.  Officer Jaca and I then escorted him to holding cell B-2, located in Housing Unit #6.  Heilman was given a 7219 medical evaluation by on site medical staff and remained in the holding cell pending completion of the incident.  Prior to placing Heilman in the holding cell I conducted a search of the cell and a clothed body search of Heilman which all met with negative results.  At 0725 hours I started a holding cell log on inmate Heilman pending re-housing.

☐ CHECK IF NARRITIVE IS CONTINUED ON ADDITIONAL C1

| SIGNATURE OF REPORTING STAFF | TITLE CORRECTIONAL OFFICER | BADGE# 60963 | DATE 5-9-13 |
|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE) E. Ojeda Sergeant | DATE RECEIVED 5-9-13 | APPROVED ☒ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☐ NO | DATE |

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**PART C ~ STAFF REPORT**
CDCR 837-C (REV. 10/06)

Page __1__ of __1__

| INCIDENT LOG NUMBER |
|---|
| RJD-B06-13-05-0137 |

| NAME: LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|
| Buenrostro | A | | 5/9/13 | 0720 |

| POST # | POSITION | YEARS OF SERVICE | | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|---|
| 221522 | ASU 6 S&E #1 | 11 YR. 3 MO. | | 5/9/13 | ASU 6-229 |

| RDO's F/S | DUTY HOURS 0600-1400 | DESCRIPTION OF CRIME / INCIDENT Battery on Peace Officer Resulting in Use of Force | CCR SECTION / RULE 3005 (d) 1 |
|---|---|---|---|

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | | | INMATES (PREFACE V-SUSPECT, V-VICTIM, W-WITNESSES) | |
|---|---|---|---|---|---|
| ☒ PRIMARY | (s) Tyson, D | | | Heilman | H-76785 FB-6-229L |
| ☐ RESPONDER | (s) Silva, A | | | | |
| ☐ WITNESS | | | | | |
| ☐ VICTIM | | | | | |
| ☐ CAMERA | | | | | |
| ☐ SCRIBE | | | | | |
| ☐ N/A | | | | | |

**FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE**

| | PHYSICAL: | WEAPON: | WARNING | EFFECT: | LAUNCHER: | EFFECT#: | CHEMICAL/ TYPE: |
|---|---|---|---|---|---|---|---|
| ☒ PHYSICAL | ☐ EXPANDABLE BATON | ☐ MINI 14 | | | ☐ 37MM | | ☐ OC |
| ☐ CHEMICAL | ☐ RESTRAINT | ☐ .38 CAL. | | | ☐ L8 | | ☐ CN |
| ☐ WEAPON | TECHNIQUES | ☐ 9MM | | | ☐ 40MM | | ☐ CS |
| ☐ NONE | ☒ HANDS | ☐ SHOTGUN | | | ☐ 40 MM MULTI | | ☐ OTHER |
| **FORCE OBSERVED BY YOU** | ☐ FEET | | | | ☐ HFWRS | | |
| ☒ PHYSICAL | ☐ OTHER FORCE NOT LISTED ABOVE: | | | | | | |
| ☐ CHEMICAL | | | | | | | |
| ☐ WEAPON | | | | | | | |
| ☐ NONE | | | | | | | |

| EVIDENCE COLLECTED BY | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO | PPE |
|---|---|---|---|---|
| ☒ YES ☐ NO | White Sheet | Evidence locker #3 Central Control | ☐ YES ☒ NO | ☐ YES ☒ NO |

| REPORTING STAFF INJURED | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
|---|---|---|---|---|
| ☐ YES ☒ NO | ☒ N/A | ☒ N/A | ☐ BODILY ☒ N/A ☐ UNKNOWN ☐ OTHER_____ | ☐ YES ☒ NO |

On Thursday May 9, 2013 at approximately 0720 hours while performing my duties as Ad-Seg S&E #1. While walking past cell 6-229 solely occupied by Inmate Heilman H-76785 I observed the window covered by paper. I approached cell 6-229 knocked on the cell door attempting to get a verbal response from I/M Heilman. With negative results he did not respond. I then informed the Ad-Seg housing unit staff there might be an unresponsive inmate in cell 6-229. Correctional Officer Silva and I then approached cell 6-229 with the extraction shield and attempted to get a verbal response from I/M Heilman by ordering him to take down the paper and knocking on the cell door. With negative results I/M Heilman did not respond. Utilizing the shield I opened the tray slot and observed I/M Heilman at the back of the cell with a sheet around his neck. Due to I/M Heilman being unresponsive and fearing for his safety C/O Silva activated his personal alarm and then ordered the cell door open. I then followed C/O Silva into the cell where I observed I/M Heilman rush towards us. I immediately ordered I/M Heilman to stop and get down. With negative results I/M Heilman continued towards us while C/O Silva was able to utilize the shield and push I/M Heilman to the back of the cell and down to the ground. While I/M Heilman was the on ground I had my hands on his back attempting to maintain control of him. I/M Heilman became resistive by not allowing staff to place him in hand cuffs and also kicking his legs back and forth. After numerous orders given to I/M Heilman to stop resisting he finally complied allowing C/O Tyson to place him in handcuffs and leg restraints. I/M Heilman was then assisted off the ground and then escorted down to the "B" section holding cell for a medical evaluation CDCR 7219. I processed the sheet that was used in this incident by I/M Heilman which he around his neck in to evidence locker #3 in Central Control. This concludes my report and involvement in this incident.
☒ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE Correctional Officer | BADGE# 64532 | ID# 1413332 | DATE 5/9/13 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE) E. Ojeda Sergeant | DATE RECEIVED 5-9-13 | APPROVED ☒ YES ☐ NO | CLARIFICATION NEEDED ☐ YES ☒ NO | DATE 5/9/13 |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

# CRIME / INCIDENT REPORT
## PART C – STAFF REPORT
CDCR 837-C (REV. 10/06)

Page __1__ of __1__

| INCIDENT LOG NUMBER |
|---|
| RJD-B06-13-05-0137 |

| NAME: LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|
| TYSON | D | | 05/09/2013 | 0720 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 221518 | AD SEG 6 floor 2 | 5 YR    MO.3 | 05/09/2013 | H/U 6 ASU CELL 229 |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE |
|---|---|---|---|
| M/T | 0600-1400 | Battery on P/O Resulting Use of Force | 3005 d 1 |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES) |
|---|---|---|
| ☐ PRIMARY | (S) BUENROSTRO,A C/O | (S) HEILMAN THOMAS    cdc-H76785 |
| ☒ RESPONDER | (S) SIVA, A         C/O | |
| ☐ WITNESS | (S) JACA,F          C/O | |
| ☐ VICTIM | (S) Grey, M         C/O | |
| ☐ CAMERA | | |
| ☐ SCRIBE | | |

☐ N/A

**FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE**

| PHYSICAL: | WEAPON: | WARNING | EFFECT: | LAUNCHER: | EFFECT#: | CHEMICAL/ TYPE: |
|---|---|---|---|---|---|---|
| ☐ EXPANDABLE BATON | ☐ MINI 14 | | | ☐ 37MM | | ☐ OC |
| X RESTRAINT | ☐ .38 CAL | | | ☐ L8 | | ☐ CN |
| TECHNIQUES | ☐ 9MM | | | ☐ 40MM | | ☐ CS |
| ☐ HANDS | ☐ SHOTGUN | | | ☐ 40 MM MULTI | | ☐ OTHER |
| ☐ FEET | | | | ☐ HFWRS | | |

☒ PHYSICAL
☐ CHEMICAL
☐ WEAPON
☐ NONE

**FORCE OBSERVED BY YOU**
☒ PHYSICAL
☐ CHEMICAL
☐ WEAPON
☐ NONE

OTHER FORCE NOT LISTED ABOVE: __SHIELD__

| EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|
| ☒ N/A | ☒ N/A | ☐ YES / ☒ NO | ☐ YES / ☒ NO |

**EVIDENCE COLLECTED BY**
☐ YES
☒ NO

| DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
|---|---|---|---|
| ☐ N/A KICKED IN LEFT SHIN AREA | ☐ N/A HU-6 NURSES OFFICE | ☐ BODILY    ☒ N/A ☐ UNKNOWN ☐ OTHER_____ | ☒ YES ☐ NO |

**REPORTING STAFF INJURED**
☒ YES
☐ NO

NARRATIVE: On Thursday May 09, 2013 at approximately 0720 while performing my duties as Administration Segaration Housing Unit 6 floor. I was informed by Officer Buenrostro that inmate Heilman, Thomas had boarded up and was unresponsive in cell 229 Housing Units 6 Administration Segaration Unit (ASU).Officer Silva, A grabbed the shield and placed the shield in front of the food port so Officer Buenrostro and Officer Silva could look inside the cell and immediately Officer Silva hit his personal alarm and mentioned to the control booth Officer Grey, M to open cell 229. Officer Silva entered into the cell with the shield and Officer Buenrostro was right behind officer Silva and I was Behind Officer Buenrostro. Inmate Heilman, Thomas cdc-H76785 was being given orders to get down and he was not complying. Once we got him to the ground he was still being assaultive and resisting. I/M Heilman Kicked backwards with his left leg and striking my left leg. That is when Officer Jaca grabbed his left leg to restraint I/M Hielman's movement and from kicking anyone else. Once I placed the handcuffs on I/M Hielman I was to grab the leg restraints from Officer Silva and I was able to place the leg restraints on I/M Heilman. I saw I/M Heilman being escorted by Officer Jaca and Officer Silva downstairs to be medically evaluated. That completes my involvement in this incident.

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE# | ID# | DATE |
|---|---|---|---|---|
| D Tyn | CORRECTIONAL OFFICER | 78094 | 1414726 | 05/09/2013 |

| NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| E. Ojeda Sergeant | 05/09/2013 | ☒ YES ☐ NO | ☐ YES ☒ NO | 05/09/2013 |

STATE OF CALIFORNIA | DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C – STAFF REPORT**
CDCR 837-C (REV. 10/06)

Page __1__ of __1__

| INCIDENT LOG NUMBER |
|---|
| RJD-B06-13-05-0137 |

| NAME: LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|
| JACA | F | | 5/9/13 | 0720 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 221526 | ASU 6 S&E #2 | 15 YR. 6 MO. | 5/9/13 | ASU 6-229 |

| RDO's S/M | DUTY HOURS 0600-1400 | DESCRIPTION OF CRIME / INCIDENT Battery on Peace Officer Resulting in Use of Force | CCR SECTION / RULE 3005 (d) 1 |
|---|---|---|---|

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES) |
|---|---|---|
| ☐ PRIMARY | (s) Tyson, D | Heilman  H-76785  FB-6-229L |
| ☒ RESPONDER | (s) Silva, A | |
| ☐ WITNESS | (S)Buenrostro,A | |
| ☐ VICTIM | | |
| ☐ CAMERA | | |
| ☐ SCRIBE | | |
| ☐ N/A | | |

**FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE**

| PHYSICAL: | WEAPON: | WARNING | EFFECT: | LAUNCHER: | EFFECT#: | CHEMICAL/ TYPE: |
|---|---|---|---|---|---|---|
| ☒ PHYSICAL | ☐ EXPANDABLE BATON | ☐ MINI 14 | | ☐ 37MM | | ☐ OC |
| ☐ CHEMICAL | ☐ RESTRAINT | ☐ .38 CAL | | ☐ L8 | | ☐ CN |
| ☐ WEAPON | TECHNIQUES | ☐ 9MM | | ☐ 40MM | | ☐ CS |
| ☐ NONE | ☒ HANDS | ☐ SHOTGUN | | ☐ 40 MM MULTI | | ☐ OTHER |
| | ☐ FEET | | | ☐ HFWRS | | |

FORCE OBSERVED BY YOU
☒ PHYSICAL
☐ CHEMICAL
☐ WEAPON
☐ NONE

☐ OTHER FORCE NOT LISTED ABOVE:

| EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
|---|---|---|---|
| ☒ N/A | ☒ N/A | ☐ YES  ☒ NO | ☐ YES  ☒ NO |

EVIDENCE COLLECTED BY
☐ YES
☒ NO

| DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
|---|---|---|---|
| ☒ N/A | ☒ N/A | ☐ BODILY  ☒ N/A  ☐ UNKNOWN  ☐ OTHER____ | ☐ YES  ☒ NO |

REPORTING STAFF INJURED
☐ YES
☒ NO

On Thursday May 9, 2013 at approximately 0720 hours, while performing my duties as Ad-Seg S&E #2, I was cleaning the hot cart when Officer Silva informed me that Inmate Heilman H-76785, B-6-229L, is unresponsive. I followed Ad-Seg Officers Silva, Buenrostro and Tyson to cell 6-229. I observed Officer Buenrostro slide open the food port to try to make contact with I/M Heilman while Officer Silva covered the food port with the shield. Officer Buenrostro informed us that I/M Heilman had a sheet around his neck. Officer Silva activated his personal alarm device and ordered the control booth officer to open cell B-6-229. Officer Silva entered the cell with the shield and forced I/M Heilman to the back of the cell then to floor. I/M Heilman continued to resist by kicking his legs back and forth despite being ordered several times to stop resisting. I grabbed both I/M Heilman's legs and used my body weight to hold him down so Officer Tyson can apply handcuffs and leg restraints on him. Officer Silva and I assisted I/M Heilman to his feet and escorted him down to holding cell B-2 for medical evaluation CDCR 7219. This concludes my involvement in this incident.

☐ CHECK IF NARRITIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE Correctional Officer | BADGE# 57514 | ID# 1411218 | DATE 5/9/13 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT/SIGNATURE) E. Ojeda  Sergeant | DATE RECEIVED 5-9-13 | APPROVED ☒ YES  ☐ NO | CLARIFICATION NEEDED ☐ YES  ☒ NO | DATE 5/9/13 |

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C – STAFF REPORT**
CDCR 837-C  (Rev. 10/06)

Page ___ 1 ___ of ___ 1 ___

| INCIDENT LOG NUMBER |
| --- |
| RJD-B06-13-05-0137 |

| NAME: LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
| --- | --- | --- | --- | --- |
| OJEDA | E | | 05/09/13 | 0720 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
| --- | --- | --- | --- | --- |
| 220370 | B HOUSING SGT-ASU | 13 YR.  4 MO. | 05/09/13 | B6-229 |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE |
| --- | --- | --- | --- |
| SM | 0600-1400 | Battery on Peace Officer Resulting in Use of Force | 3005 (d)(1) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES INVOLVED (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
| --- | --- | --- |
| ☒ PRIMARY | (S) BUENROSTRO, A     (S) RUSSELL, R | |
| ☒ RESPONDER | (S) SILVA, A     (S) ARGUILEZ, D | |
| ☒ WITNESS | (S) JACA, F | |
| ☒ VICTIM | (S) TYSON, D | |
| ☒ CAMERA | (S) GREY, M | |
| ☒ SCRIBE | | |

| FORCE USED BY YOU | FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE |
| --- | --- |

| FORCE USED BY YOU | PHYSICAL: | WEAPON: | WARNING: | EFFECT: | LAUNCHER: | EFFECT: | CHEMICAL / TYPE: |
| --- | --- | --- | --- | --- | --- | --- | --- |
| ☐ PHYSICAL | ☒ EXPANDABLE BATON | ☒ MINI 14 | | | ☒ 37MM | | ☒ N/A |
| ☐ CHEMICAL | ☒ RESTRAINT | ☒ .38 CAL | | | ☒ L8 | | ☒ OC |
| ☒ WEAPON | TECHNIQUES | ☒ 9MM | | | ☒ 40MM | | ☒ CN |
| ☒ NONE | ☒ HANDS | ☒ SHOTGUN | | | ☒ 40MM MULTI | | ☒ CS |
| FORCE OBSERVED BY YOU | ☒ FEET   ☐ X10 | | | | ☒ HFWRS | | ☒ OTHER |
| ☒ PHYSICAL | ☒ OTHER FORCE NOT LISTED ABOVE: | | | | | | |
| ☒ CHEMICAL | | | | | | | |

| EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO | PPE |
| --- | --- | --- | --- |
| ☒ NONE | | | ☐ Yes | ☐ Yes |
| EVIDENCE COLLECTED BY | | | ☒ No | ☒ No |
| ☐ Yes | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF3301/3067 COMPLETED |
| ☒ No | ☒ N/A | ☒ N/A | ☒ BODILY   ☒ N/A | ☒ Yes |
| REPORTING STAFF INJURED | | | ☒ UNKNOWN | ☐ No |
| ☐ Yes | | | ☒ OTHER | |
| ☒ No | | | | |

**NARRATIVE:**
On 05/09/2013 while working as B Housing Sgt-ASU at approximately 0720 hours I responded from housing unit 7 to a personal alarm activation in housing unit 6. When I arrived I observed responding Officers in cell 229 utilizing physical force in an attempt to restrain inmate Heilman H76785. Once the inmate was restrained he was escorted by Officers Silva and Jaca to holding cell B-2 for medical evaluation 7219 to be completed by Psychiatric Technician(PT) Russell. Officer Buenrostro reported that an emergency cell entry was required because the inmate covered his cell windows, was unresponsive,  and was observed through the food port at the back of the cell with a white sheet wrapped around his neck. Officer Tyson reported that inmate Heilman kicked him on his left shin area when they were trying to restrain inmate Heilman. Mental health staff was notified to provided mental health evaluation. Medical Evaluation 7219's were completed on all responding Officers by PT Russell. Officer Buenrostro processed the white sheet that inmate Heilman had wrapped around his neck into evidence in Central Control. At approximately 1015 hours a video interview was conducted by Administrative Segregation Unit Lieutenant Arguilez due to inmate Heilman making allegations of excessive force. I operated the video camera during the interview of inmate Heilman. This concludes my involvment in this incident.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
| --- | --- | --- | --- | --- |
| | Correctional Sergeant | 66260 | 1416156 | 05/09/13 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
| --- | --- | --- | --- | --- |
| | 5/09/13 | ☒ Yes  ☐ No | ☐ Yes  ☒ No | 5/09/13 |

Distribution:   Original: Incident Package   Copy: Reporting Employee   Copy: Reviewing Supervisor

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C – STAFF REPORT**
CDCR 837-C  (Rev. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page __1__ of __1__

| INCIDENT LOG NUMBER |
|---|
| RJD-B06-13-05-0137 |

| NAME: LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
|---|---|---|---|---|
| ARGUILEZ | D. | | 5/09/13 | 0720 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
|---|---|---|---|---|
| 220133 | ASU LT | 16 YR. 8 MO. | 5/09/13 | ASU 6 CELL 229 |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE |
|---|---|---|---|
| S/M | 0600-1400 | BATTERY ON A P/O RESULTING IN USE OF FORCE | 3005(d)(1) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | | INMATES INVOLVED (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
|---|---|---|---|
| ☐ PRIMARY | S-D. TYSON | | S- HEILMAN, T., H76785, FB-6-229L |
| ☑ RESPONDER | S- A. BUENROSTRO | | |
| ☒ WITNESS | S- A. SILVA | | |
| ☒ VICTIM | S- F. JACA | | |
| ☒ CAMERA | | | |
| ☒ SCRIBE | | | |

**FORCE USED BY YOU — TYPE OF WEAPON / SHOTS FIRED / FORCE**

| FORCE USED BY YOU | PHYSICAL: | WEAPON: | WARNING: | EFFECT: | LAUNCHER: | EFFECT: | CHEMICAL / TYPE: |
|---|---|---|---|---|---|---|---|
| ☐ PHYSICAL | ☒ EXPANDABLE BATON | ☐ MINI 14 | _____ | _____ | ☒ 37MM | _____ | ☐ N/A |
| ☒ CHEMICAL | ☒ RESTRAINT | ☐ .38 CAL | _____ | _____ | ☒ L8 | _____ | ☐ OC |
| ☒ WEAPON | TECHNIQUES | ☒ 9MM | _____ | _____ | ☒ 40MM | _____ | ☒ CN |
| ☑ NONE | ☒ HANDS | ☒ SHOTGUN | _____ | _____ | ☒ 40MM MULTI | _____ | ☒ CS |
| | ☒ FEET X10 | | | | ☒ HFWRS | _____ | ☒ OTHER _____ |

| FORCE OBSERVED BY YOU | ☒ OTHER FORCE NOT LISTED ABOVE: _____ | | | |
|---|---|---|---|---|
| ☑ PHYSICAL | | | | |
| ☒ CHEMICAL | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
| ☒ WEAPON | ☑ N/A | ☑ N/A | ☐ Yes | ☐ Yes |
| ☒ NONE | | | ☑ No | ☑ No |

| EVIDENCE COLLECTED BY | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF3301/3067 COMPLETED |
|---|---|---|---|---|
| ☐ Yes | ☑ N/A | ☑ N/A | ☐ BODILY ☑ N/A | ☐ Yes |
| ☑ No | | | ☒ UNKNOWN | ☑ No |
| **REPORTING STAFF INJURED** | | | ☒ OTHER _____ | |
| ☐ Yes | | | | |
| ☐ No | | | | |

**NARRATIVE:**

On Thursday, May 9, 2013, at approximately 0720 hours while performing my duties as the Administrative Segregation Unit Lieutenant, I heard the Housing Unit alarm sound. I exited my office and scanned the housing unit. I observed cell door 229 was open. I proceeded to the area and observed Correctional Officers D. Tyson, F. Jaca, A. Silva, and A. Buenrostro on the floor of the cell on top of Inmate Heilman, T., H76785, FB-6-229L. The staff members were holding Inmate Heilman down on the ground with their combined body weight and physical holds. Inmate Heilman was restrained with handcuffs and leg irons. I exited the cell while Inmate Heilman was assisted to his feet. As I was standing on the tier in front of cell 229, I could see that the windows of the cell door were covered with paper. Officers Silva and Jaca escorted Inmate Heilman out of the cell and I instructed them to escort Inmate Heilman from his cell, down to a holding cell on the dayroom floor. Inmate Heilman was secured in holding cell B2 pending medical evaluation and I resumed my normal duties. At approximately 1015 hours I conducted a video taped interview with Inmate Heilman due to allegations of an inappropriate/excessive use of force. Inmate Heilman was subsequently ordered into a Mental Health Crisis Bed. He was rehoused in the Correctional Treatment Center, cell 156. This concludes my involvement in the incident.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE | BADGE # | ID# | DATE |
|---|---|---|---|---|
| | Correctional Lieutenant | 55109 | 1412543 | 5/09/13 |

| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED | APPROVED | CLARIFICATION NEEDED | DATE |
|---|---|---|---|---|
| M. STOUT | 5/10/13 | ☑ Yes ☐ No | ☐ Yes ☑ No | 5/10/13 |

Distribution:   Original: Incident Package   Copy: Reporting Employee   Copy: Reviewing Supervisor

STATE OF CALIFORNIA
**CRIME / INCIDENT REPORT**
**PART C – STAFF REPORT**
CDCR 837-C  (Rev. 10/06)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Page 1 of 1

| INCIDENT LOG NUMBER |
| --- |
| RJD-B06-13-05-0137 |

| NAME: LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
| --- | --- | --- | --- | --- |
| MORALES | J. | | 5/09/13 | 0720 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
| --- | --- | --- | --- | --- |
| 221534 | ASU 6 LEGAL/PROPERTY | 5 YR.  3 MO. | 5/09/13 | ASU 6 CELL 229 |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE |
| --- | --- | --- | --- |
| T/W | 0800-1600 | BATTERY ON A P/O RESULTING IN USE OF FORCE | 3005(d)(1) |

| YOUR ROLE | WITNESSES (PREFACE  S-STAFF, V-VISITOR, O-OTHER) | INMATES INVOLVED (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
| --- | --- | --- |
| ☑ PRIMARY | | S- HEILMAN, T., H76785, FB-6-229L |
| ☑ RESPONDER | | |
| ☑ WITNESS | | |
| ☐ VICTIM | | |
| ☐ CAMERA | | |
| ☐ SCRIBE | | |

**FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE**

| FORCE USED BY YOU | PHYSICAL: | WEAPON: | WARNING: | EFFECT: | LAUNCHER: | EFFECT: | CHEMICAL / TYPE: |
| --- | --- | --- | --- | --- | --- | --- | --- |
| ☐ PHYSICAL | ☐ EXPANDABLE BATON | ☐ MINI 14 | | | ☒ 37MM | | ☒ N/A |
| ☐ CHEMICAL | ☐ RESTRAINT TECHNIQUES | ☐ .38 CAL | | | ☒ L8 | | ☐ OC |
| ☐ WEAPON | | ☐ 9MM | | | ☒ 40MM | | ☐ CN |
| ☒ NONE | ☐ HANDS | ☐ SHOTGUN | | | ☒ 40MM MULTI | | ☐ CS |
| | ☐ FEET   X10 | | | | ☒ HFWRS | | ☐ OTHER |

**FORCE OBSERVED BY YOU**
☐ PHYSICAL
☐ CHEMICAL

☐ OTHER FORCE NOT LISTED ABOVE: _____

| EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO | PPE |
| --- | --- | --- | --- |
| | | ☐ Yes ☑ No | ☐ Yes ☑ No |

☑ NONE
**EVIDENCE COLLECTED BY**
☑ Yes
☐ No

| DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF3301/3067 COMPLETED |
| --- | --- | --- | --- |
| ☑ N/A | ☑ N/A | ☐ BODILY ☑ N/A ☐ UNKNOWN ☐ OTHER _____ | ☐ Yes ☑ No |

**REPORTING STAFF INJURED**
☐ Yes
☑ No

**NARRATIVE:**
On Thursday, May 9, 2013, at approximately 1130 hours while performing my duties as the Administrative Segregation Unit 6 Legal/Property Officer, I escorted Inmate Heilman, T., H76785, FB-6-229L from the holding cell to the Correctional Treatment Center where he was rehoused in cell 156. This concludes my involvement in the incident.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE Correctional Officer | BADGE # 77381 | ID# 1414600 | DATE 5/09/13 |
| --- | --- | --- | --- | --- |
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED 5/09/13 | APPROVED ☒ Yes ☐ No | CLARIFICATION NEEDED ☐ Yes ☒ No | DATE 5/09/13 |

Distribution:    Original: Incident Package    Copy: Reporting Employee    Copy: Reviewing Supervisor

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C – STAFF REPORT**
CDCR 837-C (Rev. 10/06)

Page __1__ of __1__

| INCIDENT LOG NUMBER |
| --- |
| RJD-B06-13-05-0137 |

| NAME: LAST | FIRST | MI | INCIDENT DATE | INCIDENT TIME |
| --- | --- | --- | --- | --- |
| DAVIS | R. | | 05/09/2013 | 0720 |

| POST # | POSITION | YEARS OF SERVICE | DATE OF REPORT | LOCATION OF INCIDENT |
| --- | --- | --- | --- | --- |
| 221518 | ASU FLOOR 2 | 6 YR. 5 MO. | 05/10/2013 | ASU 6 CELL 229 |

| RDO's | DUTY HOURS | DESCRIPTION OF CRIME / INCIDENT | CCR SECTION / RULE |
| --- | --- | --- | --- |
| M/T | 0600-1400 | BATTERY ON P/O RES IN USE OF FORCE | 3005(d)(1) |

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER) | INMATES INVOLVED (PREFACE S-SUSPECT, V-VICTIM, W-WITNESS) |
| --- | --- | --- |
| ☐ PRIMARY | S-LT. D. ARGUILEZ | S-HEILMAN, T., H76765, FB-6-229L |
| ☐ RESPONDER | | W-WALKER, S., V60191, FB-6-228L |
| ☐ WITNESS | | W-WILLIAMSON, S., J66335, FB-6-230L |
| ☑ VICTIM | | |
| ☑ CAMERA | | |
| ☑ SCRIBE | | |

| FORCE USED BY YOU | FORCE USED BY YOU – TYPE OF WEAPON / SHOTS FIRED / FORCE | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | **PHYSICAL:** | **WEAPON:** | WARNING: | EFFECT: | **LAUNCHER:** | EFFECT: | **CHEMICAL / TYPE:** |
| ☑ PHYSICAL | ☑ EXPANDABLE BATON | ☑ MINI 14 | | | ☑ 37MM | | ☐ N/A |
| ☑ CHEMICAL | ☐ RESTRAINT TECHNIQUES | ☐ .38 CAL | | | ☑ L8 | | ☐ OC |
| ☑ WEAPON | | ☐ 9MM | | | ☑ 40MM | | ☐ CN |
| ☑ NONE | ☐ HANDS | ☐ SHOTGUN | | | ☑ 40MM MULTI | | ☐ CS |
| FORCE OBSERVED BY YOU | ☐ FEET  ☐ X10 | | | | ☑ HFWRS | | ☐ OTHER |
| ☑ PHYSICAL | ☑ OTHER FORCE NOT LISTED ABOVE: | | | | | | |

| FORCE OBSERVED BY YOU | EVIDENCE DESCRIPTION | EVIDENCE DISPOSITION | BIO HAZARD | PPE |
| --- | --- | --- | --- | --- |
| ☑ PHYSICAL | | | | |
| ☑ CHEMICAL | | | | |
| ☑ WEAPON | ☑ N/A | ☑ N/A | ☑ Yes | ☑ Yes |
| ☑ NONE | | | ☑ No | ☑ No |

| EVIDENCE COLLECTED BY | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF3301/3067 COMPLETED |
| --- | --- | --- | --- | --- |
| ☐ Yes | ☑ N/A | ☑ N/A | ☐ BODILY  ☑ N/A | ☐ Yes |
| ☑ No | | | ☑ UNKNOWN | ☑ No |
| REPORTING STAFF INJURED | | | ☐ OTHER | |
| ☐ Yes | | | | |
| ☑ No | | | | |

NARRATIVE:
On Friday, May 10, 2013, at approximately 0823 hours while performing my duties as Administrative Segregation Unit Search and Escort Officer 1, I was assigned as the camera operator to conduct video taped interviews with Inmates Walker, S., V60191, FB-6-228L and Williamson, S., J66335, FB-6-230L who were identified as witnesses by Inmate Heilman, T., H76785 to an excessive use of force allegation he made against staff. Prior to beginning, I proceeded to Inmates Walker's and Williamson's cell doors and asked them if they wished to participate in the interviews. Both inmates stated that they did not want to participate and did not want to exit their cells. I notified Lt. D. Arguilez of their refusals. Lt. Arguilez then instructed me to start the video and he provided a briefing on the purpose of the video prior to us going to Inmates Walker's and Williamson's cell doors. Lt. Arguilez asked both inmates if they wished to participate in the interview and they both refused. I then concluded the video. This concludes my involvement in this incident.

☐ CHECK IF NARRATIVE IS CONTINUED ON PART C1

| SIGNATURE OF REPORTING STAFF | TITLE Correctional Officer | BADGE # 78533 | ID# 1414034 | DATE 5/10/2013 |
| --- | --- | --- | --- | --- |
| NAME AND TITLE OF REVIEWER (PRINT / SIGNATURE) | DATE RECEIVED 5/10/13 | APPROVED ☑ Yes ☐ No | CLARIFICATION NEEDED ☐ Yes ☑ No | DATE 5/10/13 |

Distribution:     Original: Incident Package     Copy: Reporting Employee     Copy: Reviewing Supervisor

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**CRIME / INCIDENT REPORT**
**PART C - STAFF REPORT**
CDCR 837-C (REV. 10/06)

Page _1_ of _1_

INCIDENT LOG NUMBER
RSD-B06-13-05-0137

| NAME: LAST Grey | FIRST M. | MI G | INCIDENT DATE 5-9-2013 | INCIDENT TIME 0720 |
|---|---|---|---|---|

| POST # 221508 | POSITION 6-control | YEARS OF SERVICE 15 YR. 10 MO. | DATE OF REPORT 5-9-2013 | LOCATION OF INCIDENT FB-06-229 |
|---|---|---|---|---|

| RDO's SUN MON | DUTY HOURS 0600 1400 | DESCRIPTION OF CRIME / INCIDENT Battery on A Peace Officer Requiring Use of force Resulting in inj. | CCR SECTION / RULE 3005 (d)(1) |
|---|---|---|---|

| YOUR ROLE | WITNESSES (PREFACE S-STAFF, V-VISITOR, O-OTHER | INMATES (PREFACE S-SUSPECT, V-VICTIM, W-WITNESSES |
|---|---|---|
| ☒ PRIMARY | (S) A. Silva | (S) Heilman (H-76735, FB-06-229L) |
| ☒ RESPONDER | (S) A. Buenrostro | |
| ☒ WITNESS | (S) D. Tyson | |
| ☐ VICTIM | (S) P. Jaca | |
| ☒ CAMERA | | |
| ☒ SCRIBE | | |

| FORCE USED BY YOU | FORCE USED BY YOU - TYPE OF WEAPON / SHOTS FIRED / FORCE | | | |
|---|---|---|---|---|
| ☐ WEAPON | ☒ N/A | WEAPON | WARNING EFFECT: | LAUNCHER: EFFECT#: | CHEMICAL/ TYPE: |
| ☐ PHYSICAL | FORCE: | ☐ MINI 14 | | ☐ 37MM | ☒ N/A |
| ☐ CHEMICAL | ☐ EXPANDABLE BATON | ☐ .38 CAL | | ☐ L8 | ☐ OC |
| ☒ NONE | ☐ PHYSICAL FORCE | ☐ 9MM | | ☐ 40MM | ☐ CN |
| | ☐ X10 | ☐ SHOTGUN | | ☐ 40 MM MULTI | ☐ CS |
| FORCE OBSERVED BY YOU | | | | ☐ HFWRS | ☐ OTHER |
| ☒ WEAPON | | | | | |

| ☒ CHEMICAL ☒ NONE | ☒ N/A | ☒ N/A | | HAZARD ☒ Yes ☒ Yes |
|---|---|---|---|---|
| EVIDENCE COLLECTED BY | | | | ☒ No ☒ No |
| ☐ Yes | DESCRIPTION OF INJURY | LOCATION TREATED (HOSPITAL / CLINIC) | FLUID EXPOSURE | SCIF 3301/3067 COMPLETED |
| ☒ No | ☒ N/A | ☒ N/A | ☐ BODILY ☒ N/A | ☒ Yes |
| REPORTING STAFF INJURED | | | ☐ UNKNOWN | ☒ No |
| ☐ Yes | | | ☐ OTHER | |
| ☒ No | | | | |

NARRATIVE:

On May 9, 2013 at approximately 0720 hours while performing my duties as Administrative Segregation Housing Unit Six Control Booth Officer, I observed Officer Silva in front of cell number 229, which is assigned to Inmate Heilman (H-76785, FB-06-229L). Officer Silva said, "I have an unresponsive Inmate." The Housing Unit alarm sounded as Officer Silva motioned for me to open the cell door. As I opened cell number 229 I also opened the sallyport for responding staff. Officers Silva, Buenrostro, Tyson and Jaca entered the cell. Officers Silva and Jaca escorted Inmate Heilman, in restraints, out of the cell to one of the holding cells in B-section for medical evaluation.

| ☒ CHECK IF NARRATIVE IS CONTINUED ON PART C1 |
|---|

| SIGNATURE OF REPORTING STAFF | TITLE CO | BADGE # 56942 | ID# 14/04/9 | DATE 5-9-2013 |
|---|---|---|---|---|
| NAME AND TITLE OF REVIEWER (PRINT/ SIGNATURE) E-Diede Sergeant | DATE RECEIVED 05-09-13 | APPROVED ☒ Yes ☐ No | CLARIFICATION NEEDED ☐ Yes ☒ No | DATE 5/09/13 |

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## MEDICAL REPORT OF INJURY
## OR UNUSUAL OCCURRENCE

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT *(circle)* | | ON THE JOB INJURY | DATE |
|---|---|---|---|---|---|
| RJD | B-6 | INJURY / USE OF FORCE / UNUSUAL OCCURRENCE | PRE AD/SEG ADMISSION | | 5/9/13 |

| THIS SECTION FOR INMATE ONLY | NAME | LAST Heilman | FIRST | CDC NUMBER H76785 | HOUSING LOC. 6-229 | NEW HOUSING LOC. |
|---|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME | LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
| THIS SECTION FOR VISITOR ONLY | NAME | LAST | FIRST | MIDDLE | DOB | OCCUPATION |
| | HOME ADDRESS | | CITY | STATE | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE HU 6 cell 229 | DATE/TIME OF OCCURRENCE 0720 | NAME OF WITNESS(ES) |
|---|---|---|

| TIME NOTIFIED 0730 | TIME SEEN 0734 | ESCORTED BY C/O | MODE OF ARRIVAL *(circle)* LITTER / AMBULATORY / ON SITE WHEELCHAIR | AGE | RACE W | SEX M |
|---|---|---|---|---|---|---|

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"They worked me over so good"

| INJURIES FOUND? | YES / NO |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |

| O.C. SPRAY EXPOSURE? | YES / NO |
|---|---|
| DECONTAMINATED? | YES / NO |
| Self-decontamination instructions given? | YES / NO |
| Refused decontamination? | YES / NO |
| Q 15 min. checks | N/A |
| Staff issued exposure packet? | YES / NO |

| RN NOTIFIED/TIME LaCorum 0737 | PHYSICIAN NOTIFIED/TIME TTA 0737 |
|---|---|

TIME/DISPOSITION  Clear for psych assessment
No first aid indicated per RN

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN) Russell PT | BADGE # 415370 | RDOs F,S |
|---|---|---|

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

CDCR 7219 (Rev. 11/05)    DISTRIBUTION:    ORIGINAL - Custody    CANARY - Inmate/Employee    PINK - Health and Safety / RTW Coordinator

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

# MEDICAL REPORT OF INJURY
# OR UNUSUAL OCCURRENCE

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT *(circle)* | | ON THE JOB INJURY | DATE |
|---|---|---|---|---|---|
| RJD | H06 | (USE OF FORCE)   INJURY   UNUSUAL OCCURRENCE | | PRE AD/SEG ADMISSION | 5/9/13 |

| | NAME | LAST | FIRST | CDC NUMBER | HOUSING LOC. | NEW HOUSING LOC. |
|---|---|---|---|---|---|---|
| **THIS SECTION FOR INMATE ONLY** | | | | | | |
| **THIS SECTION FOR STAFF ONLY** | NAME | LAST   Tyson | FIRST   D | BADGE #   78094 | RANK/CLASS   C/O | ASSIGNMENT/RDOs   M, T |
| **THIS SECTION FOR VISITOR ONLY** | NAME | LAST | FIRST   MIDDLE | DOB | OCCUPATION | |
| | HOME ADDRESS | CITY | STATE | ZIP | HOME PHONE | |

| PLACE OF OCCURRENCE | DATE/TIME OF OCCURRENCE | NAME OF WITNESS(ES) |
|---|---|---|
| HU 6 Cell 229 | 0720   5/9/13 | |

| TIME NOTIFIED | TIME SEEN | ESCORTED BY | MODE OF ARRIVAL *(circle)* | | | AGE | RACE | SEX |
|---|---|---|---|---|---|---|---|---|
| 0730 | 0750 | N/A | LITTER   WHEELCHAIR   AMBULATORY   (ON SITE) | | | | | |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"No injuries

| INJURIES FOUND?   YES /(NO) | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |

| | |
|---|---|
| O.C. SPRAY EXPOSURE?   YES (NO) | |
| DECONTAMINATED?   YES /(NO) | |
| Self-decontamination instructions given?   YES /(NO) | |
| Refused decontamination?   YES /(NO) | |
| Q 15 min. checks   N/A | |
| Staff issued exposure packet?   YES (NO) | |

| RN NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|
| 0737  LaCorum | N/A |

| TIME/DISPOSITION | REPORT COMPLETED BY/TITLE   *(PRINT AND SIGN)* | BADGE # | RDOs |
|---|---|---|---|
| 0750 return to Duty | Russell PT | 14/5370 | |

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

CDCR 7219 (Rev. 11/05)   DISTRIBUTION:   ORIGINAL - Custody   CANARY - Inmate/Employee   PINK - Health and Safety / RTW Coordinator

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

# MEDICAL REPORT OF INJURY
## OR UNUSUAL OCCURRENCE

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT *(circle)* | | ON THE JOB INJURY | DATE |
|---|---|---|---|---|---|
| RJD | HUb | INJURY   ~~USE OF FORCE~~   UNUSUAL OCCURRENCE | | PRE AD/SEG ADMISSION | 5/9/13 |

| | NAME | LAST | FIRST | CDC NUMBER | HOUSING LOC. | NEW HOUSING LOC. |
|---|---|---|---|---|---|---|
| **THIS SECTION FOR INMATE ONLY** | NAME | | | | | |
| **THIS SECTION FOR STAFF ONLY** | NAME LAST | Buenrostro | FIRST A | BADGE # 64532 | RANK/CLASS C/O | ASSIGNMENT/RDOs F, S |
| **THIS SECTION FOR VISITOR ONLY** | NAME LAST | FIRST | MIDDLE | DOB | OCCUPATION | |
| | HOME ADDRESS | CITY | STATE | ZIP | HOME PHONE | |

| PLACE OF OCCURRENCE | DATE/TIME OF OCCURRENCE | NAME OF WITNESS(ES) | | | | |
|---|---|---|---|---|---|---|
| HUb Cell 229 | 0720   5/9/13 | | | | | |
| TIME NOTIFIED 0750 | TIME SEEN 0750 | ESCORTED BY N/A | MODE OF ARRIVAL *(circle)*  LITTER   WHEELCHAIR   AMBULATORY   (ON SITE) | AGE | RACE | SEX |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"No injuries"

| INJURIES FOUND?  YES / (NO) | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |

| O.C. SPRAY EXPOSURE? | YES / (NO) |
|---|---|
| DECONTAMINATED? | YES / (NO) |
| Self-decontamination instructions given? | YES / (NO) |
| Refused decontamination? | YES / (NO) |
| Q 15 min. checks | N/A |
| Staff issued exposure packet? | YES / (NO) |

| RN NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|
| 0737 LaCorUm | |

| TIME/DISPOSITION | | |
|---|---|---|
| 0750  Returned to Duty | | |

| REPORT COMPLETED BY/TITLE   *(PRINT AND SIGN)* | BADGE # | RDOs |
|---|---|---|
| Russell A | 14/532 | F, S |

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

CDCR 7219 (Rev. 11/05)   DISTRIBUTION:   ORIGINAL - Custody   CANARY - Inmate/Employee   PINK - Health and Safety / RTW Coordinator

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## MEDICAL REPORT OF INJURY OR UNUSUAL OCCURRENCE

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT *(circle)* | INJURY | ON THE JOB INJURY | DATE |
|---|---|---|---|---|---|
| RJD | HU 6 | (USE OF FORCE)   UNUSUAL OCCURRENCE | | PRE AD/SEG ADMISSION | 5/9/1_ |

| THIS SECTION FOR INMATE ONLY | NAME   *LAST* | *FIRST* | CDC NUMBER | HOUSING LOC. | NEW HOUSING LOC. |
|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME   *LAST*  Silva | *FIRST*  A | BADGE #  60963 | RANK/CLASS  C/O | ASSIGNMENT/RDOs  S, M |
| THIS SECTION FOR VISITOR ONLY | NAME   *LAST* | *FIRST*   *MIDDLE* | | DOB | OCCUPATION |
| | HOME ADDRESS | CITY   *STATE* | | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE  HU 6 Cell 229 | DATE/TIME OF OCCURRENCE  0720   5/9/13 | NAME OF WITNESS(ES) | | | |
|---|---|---|---|---|---|
| TIME NOTIFIED  0730 | TIME SEEN  0750 | ESCORTED BY  N/A | MODE OF ARRIVAL   *(circle)*   LITTER   WHEELCHAIR   AMBULATORY  (ON SITE) | AGE   RACE | SEX |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"No injuries"

| INJURIES FOUND?   YES /(NO) | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |

| | |
|---|---|
| O.C. SPRAY EXPOSURE? | YES /(NO) |
| DECONTAMINATED? | YES /(NO) |
| Self-decontamination instructions given? | YES /(NO) |
| Refused decontamination? | YES /(NO) |
| Q 15 min. checks | N/A |
| Staff issued exposure packet? | YES /(NO) |

| RN NOTIFIED/TIME  0737 LaConum | PHYSICIAN NOTIFIED/TIME  N/A |
|---|---|

| TIME/DISPOSITION  0750 returned to duty | | | |
|---|---|---|---|
| | REPORT COMPLETED BY/TITLE   *(PRINT AND SIGN)*  Russell PT | BADGE #  145370 | RDOs  F, S |

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

CDCR 7219 (Rev. 11/05)   DISTRIBUTION:   ORIGINAL - Custody   CANARY - Inmate/Employee   PINK - Health and Safety / RTW Coordinator

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

**MEDICAL REPORT OF INJURY
OR UNUSUAL OCCURRENCE**

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT *(circle)* | | ON THE JOB INJURY | DATE |
|---|---|---|---|---|---|
| RJD | HU 6 | (USE OF FORCE)  INJURY  UNUSUAL OCCURRENCE | | PRE AD/SEG ADMISSION | 5/9/13 |

| | NAME   LAST | FIRST | CDC NUMBER | HOUSING LOC. | NEW HOUSING LOC. |
|---|---|---|---|---|---|
| **THIS SECTION FOR INMATE ONLY** | | | | | |

| | NAME   LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
|---|---|---|---|---|---|
| **THIS SECTION FOR STAFF ONLY** | Jaca | T | 57514 | C/O | S M |

| | NAME   LAST | FIRST   MIDDLE | DOB | OCCUPATION |
|---|---|---|---|---|
| **THIS SECTION FOR VISITOR ONLY** | | X | | |
| | HOME ADDRESS | CITY   STATE   ZIP | | HOME PHONE |

| PLACE OF OCCURRENCE | DATE/TIME OF OCCURRENCE | NAME OF WITNESS(ES) |
|---|---|---|
| HU 6 cell 229 | 0720   5/9/13 | |

| TIME NOTIFIED | TIME SEEN | ESCORTED BY | MODE OF ARRIVAL *(circle)* | | | AGE | RACE | SEX |
|---|---|---|---|---|---|---|---|---|
| 0730 | 0750 | N/A | LITTER   WHEELCHAIR  AMBULATORY   (ON SITE) | | | | | |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

No injuries

| INJURIES FOUND?   YES / (NO) | |
|---|---|
| Abrasion/Scratch | 1 |
| Active Bleeding | 2 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | 11 |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | 14 |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
| | 18 |
| | 19 |

| O.C. SPRAY EXPOSURE? | YES /(NO) |
|---|---|
| DECONTAMINATED? | YES /(NO) |
| Self-decontamination instructions given? | YES /(NO) |
| Refused decontamination? | YES /(NO) |
| Q 15 min. checks | N/A |
| Staff issued exposure packet? | YES /(NO) |

| RN NOTIFIED/TIME | PHYSICIAN NOTIFIED/TIME |
|---|---|
| LaCorum   0737 | N/A |

| TIME/DISPOSITION | REPORT COMPLETED BY/TITLE   *(PRINT AND SIGN)* | BADGE # | RDOs |
|---|---|---|---|
| 0750  Return to Duties | Russell PT   *(signature)* | 14/5370 | F.S |

*(Medical data is to be included in progress note or emergency care record filed in UHR)*

CDCR 7219 (Rev. 11/05)   DISTRIBUTION:   ORIGINAL - Custody   CANARY - Inmate/Employee   PINK - Health and Safety / RTW Coordinator



## Rules Violation Report:  Mental Health Assessment Request – CDCR 115-MH
Supplemental Information Form for Hearing Officer

Date:              5/28/13
RVR Log#:          FB-13-095
Offense:           Battery on a Peace Officer
Date of Violation: 5/09/13

Sources of Information:
☐ Interview with I/P (refused)  ☑ UHR Review  ☑ Interview with PC  ☐ Interview with Custody Staff  ☑ C-File Review (via ERMS only)  ☑ Other: _I/M Locator, MHTS.net, DECS, SOMS_

CONCLUSIONS:

The I/P's Mental Disorder ☑ does  ☐ does not appear to have contributed to the alleged behavior described in the RVR. Explain:

If this inmate is found guilty of the behaviors alleged in this RVR, it is likely that his mental disorder contributed.  This inmate has a history of treatment for mental disorder that is characterized by depressed mood, poor sleep and appetite and, at times, suicidal ideation and attempts to take his own life.  The 114D indicates that this inmate was seen with a sheet wrapped around his neck which caused the officers to enter his cell.  Although this inmate now denies this to his clinicians, there is a strong possibility that his mental health contributed to the behaviors alleged in this RVR.

There ☑ are  ☐ are no mental health factors the hearing officer should consider in assessing the penalty. Explain:

This inmate sustained significant injuries as a result of this cell extraction that led to a 10-day hospital stay.  Consider reducing other penalties as much as possible given these circumstances, to prevent further worsening of this inmate's mental health.

OTHER CONSIDERATIONS:

| Clinician Name & Signature: | |
|---|---|
| R. Williams, Ph.D | _signature_ |

Inmate Name:  HEILMAN, Thomas
CDCR #:  H76785
DOB:  4/04/57

EXHIBIT "F"

Attachment A

## HOLDING CELL LOG

PLACEMENT DATE: 5-9-13  TIME: 0725  HOLDING CELL LOCATION: H/U 06 B2

INMATE: HEILMAN  CDCR#: H-76785

PLACEMENT APPROVAL: D. ARGUICEZ, CT.  _____
PRINT NAME / TITLE                        SIGNATURE

REASON FOR PLACEMENT: MEDICAL EVALUATION

STAFF PLACING I/M IN HOLDING CELL: H. Silva  _____
                                   PRINT NAME/ TITLE        SIGNATURE

HOLDING CELL SEARCHED BY: SILVA  _____  NEGATIVE
                          PRINT NAME / TITLE        SIGNATURE        RESULTS

CLOTHING CONFISCATED: YES ____ NO ✓    CLOTHING ISSUED: YES ____ NO ✗

The inmate shall be checked every 15 minutes and will be offered access to water and toilet facilities at reasonable intervals not to exceed one hour.  All medical requests shall be immediately evaluated by Medical staff.

| TIME CHECKED | PRINT NAME | SIGNATURE | COMMENTS |
|---|---|---|---|
| 0725 | SILVA | | Sitting |
| 0740 | SILVA | | Sitting |
| 0755 | SILVA | | Sitting |
| 0810 | SILVA | | Sitting |
| 0825 | SILVA | | Sitting |
| 0840 | SILVA | | Sitting |
| 0855 | SILVA | | Sitting |
| 0910 | Silva | | Speaking to Dr. |
| 0925 | Silva | | Sitting |
| 0940 | Silva | | Sitting |
| 0955 | Silva | | Being Interviewed By Lt. |
| 1000 | Silva | | Sitting |
| 1025 | Silva | | Sitting |
| 1040 | Silva | | Sitting |
| 1055 | Silva | | Sitting |
| 1110 | Silva | | Sitting |

STAFF REMOVING I/M IN HOLDING CELL: J. MORALES  _____
                                    PRINT NAME / TITLE        SIGNATURE

TIME RELEASED FROM HOLDING CELL: 1125  TOTAL TIME IN HOLDING CELL: 4 HOURS

COMMENTS ON INMATE'S BEHAVIOR/DISPOSITION: I/M COMPLAINING OF PAIN

MANAGER/AOD'S APPROVAL TO EXCEED THE FOUR HOUR TIME LIMIT IN HOLDING CELL

_____          _____
PRINT NAME / TITLE              SIGNATURE

REASON FOR EXCEEDING TIME LIMIT: _____

Rev: 05/09                          OP 126 Use of Holding Cells

EXHIBIT "G"

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITAT...

# MEDICAL REPORT OF INJURY
# OR UNUSUAL OCCURRENCE

| NAME OF INSTITUTION | FACILITY/UNIT | REASON FOR REPORT (circle) | ON THE JOB INJURY | DATE |
|---|---|---|---|---|
| RJD | B-6 | (INJURY)  USE OF FORCE  UNUSUAL OCCURRENCE | PRE AD/SEG ADMISSION | 5/9/1 |

| THIS SECTION FOR INMATE ONLY | NAME | LAST  Heilman | FIRST | CDC NUMBER  H76785 | HOUSING LOC.  6-229 | NEW HOUSING LOC. |
|---|---|---|---|---|---|---|
| THIS SECTION FOR STAFF ONLY | NAME | LAST | FIRST | BADGE # | RANK/CLASS | ASSIGNMENT/RDOs |
| THIS SECTION FOR VISITOR ONLY | NAME | LAST | FIRST | MIDDLE | DOB | OCCUPATION |
|  | HOME ADDRESS |  | CITY | STATE | ZIP | HOME PHONE |

| PLACE OF OCCURRENCE  HU 6 Cell 229 | DATE/TIME OF OCCURRENCE  0730 | NAME OF WITNESS(ES) | | |
|---|---|---|---|---|
| TIME NOTIFIED  0730 | TIME SEEN  0734 | ESCORTED BY  C/O | MODE OF ARRIVAL (circle)  LITTER  WHEELCHAIR  (AMBULATORY)  ON SITE | AGE | RACE  W | SEX  M |

BRIEF STATEMENT IN SUBJECT'S WORDS OF THE CIRCUMSTANCES OF THE INJURY OR UNUSUAL OCCURRENCE

"They worked me over so good"

| INJURIES FOUND? (YES/NO) | |
|---|---|
| Abrasion/Scratch | (1) |
| Active Bleeding | 2 |
| Broken Bone | 3 |
| Bruise/Discolored Area | 4 |
| Burn | 5 |
| Dislocation | 6 |
| Dried Blood | 7 |
| Fresh Tattoo | 8 |
| Cut/Laceration/Slash | 9 |
| O.C. Spray Area | 10 |
| Pain | (11) |
| Protrusion | 12 |
| Puncture | 13 |
| Reddened Area | (14) |
| Skin Flap | 15 |
| Swollen Area | 16 |
| Other | 17 |
|  | 18 |
|  | 19 |

| O.C. SPRAY EXPOSURE? | YES / (NO) |
|---|---|
| DECONTAMINATED? | YES / (NO) |
| Self-decontamination instructions given? | YES / (NO) |
| Refused decontamination? | YES / (NO) |
| Q 15 min. checks | N/A |
| Staff issued exposure packet? | YES / (NO) |

| RN NOTIFIED/TIME  LaCorum   0737 | PHYSICIAN NOTIFIED/TIME  TTA   0737 |
|---|---|

TIME/DISPOSITION  Clear for psych assesment  No first aid indicated per RN

| REPORT COMPLETED BY/TITLE (PRINT AND SIGN)  Russell PT | BADGE #  14/5370 FS... |
|---|---|

(Medical data is to be included in progress note or emergency care record filed in UHR)

CDCR 7219 (Rev. 11/05)   DISTRIBUTION:   ORIGINAL - ...   CANARY - Inmate/Employee   PINK - Health and Safety / RTW Coordina...

| DATE | TIME | |
|---|---|---|
| 5/9/13 | 1130 | S = For medical clearance prior to MHCB admit, (L) facial area pain |
| | | O = a/o x 3, cooperative, ambulatory, (+) findings: |
| | | (1) Bruised area + swelling, 6cm x 4cm, (L) angle, mandibular area |
| | | (2) Reddened area – 3cm x 2cm – neck, lateral (L) |
| | | (3) Reddened area (2°) 6cm x 0.5cm, (L) anterior – midaxillary area, 9 – 10th ribs area, |
| | | (4) Reddened – circumferential (L) distal radio – ulna |
| | | (5) Reddened – (L) knee, 6cm x 5cm |
| | | (6) Reddened – 3cm x 0.2cm, tibia – fibular, distal area (B) |
| | | A = altered tissue perfusion, integumentary |
| | | P = Dr Cook aware |
| | | Facial screen done (-) fx |
| | | ADmitted in MHCB |
| | | _____ (arman R.) |

INSTITUTION  RJD

HOUSING UNIT  6-229

CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH

HEILMAN, T
H76785
4/4/1957

**INTERDISCIPLINARY PROGRESS NOTES**

CDC 7230 (Rev 04/03)
STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

RN (Y)   0093057

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

## HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

### PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

REQUEST FOR:  MEDICAL ☑  MENTAL HEALTH ☐  DENTAL ☐  MEDICATION REFILL ☐

NAME: Hellman, Thomas

CDC NUMBER: A76785

HOUSING: D-6-149

PATIENT SIGNATURE:

DATE: 5-9-13

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) I/P has bruised on face, arms, and ankles. I/P reports pain in head, jaw, and back

NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM

### PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment.  (Send pink copy to Inmate Trust Office.)

### PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

Date / Time Received: 5-10-13 @ 0810   Received by: A Sanchez RN

Date / Time Reviewed by RN:   Reviewed by:

S: fused to CTC RN rh   Pain Scale:  1  2  3  4  5  6  7  8  9  10

O:  T:   P:   R:   BP:   WEIGHT:
I/P in CTC today - RN rh
Spoke ē RN Donohue today - I/P had cleared

A: Suicidal + was assessed in TTA prior

P: I/P admitting to CTC into mHCB - F/B in
☐ See Nursing Encounter Form   mHCB today - RN rh

E:

APPOINTMENT SCHEDULED AS:   EMERGENCY ☐ (IMMEDIATELY)   URGENT ☐ (WITHIN 24 HOURS)   ROUTINE ☐ (WITHIN 14 CALENDAR DAYS)

REFERRED TO PCP:

COMPLETED BY: RN rh

DATE OF APPOINTMENT:

NAME OF INSTITUTION: RJD

PRINT / STAMP NAME: RN rh

SIGNATURE / TITLE: RN rh

DATE/TIME COMPLETED: 5/13/13 1750

**NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.**

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 5/9/13 | | | KY - Jaw-Pain - Facial Series |
| | | | [illegible handwriting] |

ALLERGIES: NKDA

INSTITUTION: RJD

ROOM / WING: 6-229

CDC NUMBER, NAME (LAST, FIRST, MI)

Heilman, T
H76785
4/4/57

Confidential
client information
See W & I Code, Sections 4514 and
5328

**PHYSICIAN'S ORDERS**

CDC 7221 (4/90)
STATE OF CALIFORNIA          OSP 07 101929          DEPARTMENT OF CORRECTIONS

Fax Server          5/14/2013 10:51:50 AM   PAGE   1/001   Fax Server

# DESERT ADVANCED IMAGING  PALM DESERT
72855 FRED WARING DRIVE
PALM DESERT, CA 92260
Telephone (760) 837-1420 / Fax (760) 836-0385

HEILNAIN, THOMAS
MRN:   00201865-9
DOB: 04/04/1957   Sex:   M

Date of Service:  5/9/2013
Exam:   (DPD)  X-RAY FACIAL BONES COMPLETE MIN
        3 VWS

JESSICA COOK, MD
480 ALTA RD.
SAN DIEGO, CA 92179

Fax #   (619) 671-7504

CDC#: H76785

EXAMINATION: X-RAY FACIAL BONES (READ ONLY)

HISTORY:  Jaw pain status post altercation.

COMPARISON:  None.

TECHNIQUE:  PA, lateral and Waters projections of the paranasal sinuses submitted.

FINDINGS:  PA, lateral and Waters projection of the paranasal sinuses demonstrate no acute air-fluid level; however, the inferior aspect of the paranasal sinuses obscured by superimposition of the petrous ridges and technical factors.  Lateral projection is clear.  Nasal bone and anterior nasal spine are intact.  Other regional and paranasal sinuses are unremarkable.  Other regional osseous and soft tissue structures are intact.

IMPRESSION:  Negative facial bone series.  Followup as clinically appropriate or as clinical symptoms warrant.

NOTE:  The procedure was performed by Simon Trossbach, RPA, and personally supervised by Joel Thayer, M.D.

End of diagnostic report for accession:   25788370
Dictated:        05/13/2013  2:26PM
Dictated by:     Simon Trossbach, RPA
Attending Radiologist:   Joel Thayer
              I have reviewed the above images and agree with this dictation.
Transcribed By:   TS 05/14/2013  3:29AM
Signed By:        Simon Trossbach, RPA 05/14/2013  9:51AM
Signed By:        Joel H Thayer, MD 05/14/2013 10:44AM

Page 1 of 1

STATE OF CALIFORNIA        DEPARTMENT OF CORRECTIONS AND REHABILITATION
**TRIAGE & TREATMENT SERVICES FLOW SHEET**
CDCR 7464 (04/09)

Date: 05|16|13  Time In: 1540  Time Out: 1801
Category: ☐ Non-Urgent  ☒ Urgent  ☐ Emergent
Allergies: NKDA

| NOTIFICATION TO | ✓ | TIME | BY | ARRIVAL TIME | DEPARTURE TIME | ✓ | PATIENT DISPOSITION | | ✓ | DISCHARGE CONDITION | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| TTA | ✓ | 1440 | X-Ray Technician | | | | RTC | CORONER | ✓ | STABLE | | |
| WATCH COMM | | | | | | | OHU ADMIT | ✓ COMMUNITY HSP | | UNSTABLE | | |
| EMS | | | | | | | CTC ADMIT | via: AHMC-ER | | CRITICAL | | |
| PCP | | | | | | | GACH ADMIT | STATE VEHICLE | | | | |
| SUPERVISOR | | | | | | | MH REFERRAL | ✓ AMBULANCE CODE | BLS | DECEASED | TIME | |

CHIEF COMPLAINT: SIGNIFICANT X-RAY 40% (L) PNEUMOTHORAX
INCIDENT TIME: 05|13|13 in am
INCIDENT LOCATION: HU
MODE OF ARRIVAL: via cont.

| RESPIRATORY | | SKIN | | EENT | | | GU | | TRAUMA | |
|---|---|---|---|---|---|---|---|---|---|---|
| EQUAL | | PINK/NORMAL ✓ | | NO COMPLAINT | orbital | | NO COMPLAINT | | DENIES | |
| CLEAR ✓ | | WARM ✓ | DRY | EYE ✓ | R bruised pain | | URGENCY | | MECHANISM OF INJURY | |
| NORMAL | | MOIST/DIAPHORETIC | | EAR | R | L | FREQUENCY | | GSW | |
| RAPID | | CYANOTIC | | NOSE | | | RETENTION | | SPORTS INJURY | |
| DECREASED (L) ✓ | | JAUNDICED | | THROAT | | | HEMATURIA | | ON THE JOB INJURY | |
| SHALLOW | | ASHEN | PALE | PAIN | REDNESS | | BLADDER INCONT | ✓ | ALTERATION 05|09|13 | |
| DEEP | | FLUSHED | | DRAINAGE | | | PAIN ON URINATION | | FALL | |
| LABORED | | HOT | | FOREIGN BODY | | | URETHRAL DISCHARGE | | BURN | |
| RETRACTION | | MOTTLED | | | | | FLANK PAIN ☐ R ☐ L | | | |
| NASAL FLARE | | COOL | COLD | GI | | | | | LAST TETANUS: | |
| RHONCHI | | RASH: | | NO COMPLAINT ✓ | | | EMOTIONAL | | OB/GYN | |
| CRACKLES | | CIRCULATION | | NAUSEA | VOMITING | | COOPERATIVE ☑ Y ☐ N | | NOT APPLICABLE ✓ | |
| HEMOPTYSIS | | PULSE | R L R L | DIARRHEA | CONSTIPATION | | ANXIOUS | | NO COMPLAINT | |
| COUGH | | | A A L L | REBOUND | GUARDING | | COMBATIVE | | LMP | |
| WHEEZING | | | | TENDERNESS | | | DELUSIONAL | | VAGINAL DISCHARGE | |
| | | PRESENT ✓ ✓ ✓ ✓ | | BOWEL INCONTINENCE | | | HALLUCINATIONS | | VAGINAL BLEEDING | |
| VISUAL ACUITY | | QUALITY +2 +2 +2 +2 | | BOWEL SOUNDS ☐ 1 ☐ 2 ☐ 3 ☐ 4 | | | SUICIDAL IDEATION | | CRAMPING | |
| OD | | | | ☐ HYPO ☐ HYPER ☐ NORMAL ☐ ABSENT | | | SUICIDE THREAT | | FHT | |
| OS | | CAPILLARY REFILL | | MELENA | RECTAL BLEED | | | | PREGNANT | |
| CORRECTED | | ☐ BRISK ☐ DELAYED | | HEMATEMESIS | | | | | GR | AB |
| NEUROLOGICAL | | | | | | | | | | |

| NEUROLOGICAL | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ALERT ✓ | PERL ✓ | | TIME | 1540 | | | | |
| ORIENTED X 3 | | EYE OPENING RESPONSE | SPONTANEOUS | (4) 4 4 4 4 | 3 4 5 6 7 8 | | | |
| LOC X MIN | | | TO VOICE | 3 3 3 3 3 | | | | |
| CONFUSED | | | TO PAIN | 2 2 2 2 2 | | | | |
| DROWSY | | | NONE | 1 1 1 1 1 | | | | |
| DECREASED LOC | | VERBAL RESPONSE | ORIENTED | (5) 5 5 5 5 | | | | |
| UNCONSCIOUS | | | CONFUSED | 4 4 4 4 4 | | | | |
| HEADACHE | | | INAPPROPRIATE WORDS | 3 3 3 3 3 | TIME | | | |
| DIZZINESS | | | INCOMPREHENSIBLE | 2 2 2 2 2 | PUPIL RESPONSE | R B | | |
| ETOH ODOR | | | NONE | 1 1 1 1 1 | | L B | | |
| GRIPS R L | | MOTOR RESPONSE | OBEYS COMMANDS | (6) 6 6 6 6 | PUPIL SIZE | R 3 | | |
| S=STRONG W=WEAK | | | LOCALIZES PAIN | 5 5 5 5 5 | | L 3 | | |
| POST-ICTAL | | | WITHDRAWS FROM PAIN | 4 4 4 4 4 | KEY: C = CLOSED | | | |
| | | | ABNORMAL FLEXION | 3 3 3 3 3 | B = BRISK | | | |
| | | | ABNORMAL EXTENSION | 2 2 2 2 2 | F = FIXED | | | |
| | | | NO MOTOR RESPONSE | 1 1 1 1 1 | SL = SLUGGISH | | | |
| | | GCS SCORE | | 15 | | | | |

AB= ABRASION    ED= EDEMA
AMP= AMPUTATION  F= FRACTURE
B= BURN ___%    H= HEMATOMA
D= DEFORMITY    L= LACERATION
E= ECCHYMOSIS   P= PUNCTURE

| VITAL SIGNS | | | HT. | | WT. | | PARTICIPANTS | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ORTHO VS | BP | P | | | | | NAME | TITLE | INITIALS | NAME | TITLE | INITIALS |
| TIME | T | BP | P | R | P. OX % | PAIN | | | | **T. PAULE RN** | | dP |
| 1540 | 97.6 | 140/81 | 86 | 17 | 100% RA | 3-4/(L) lung | | | | | | |
| 1804 | 98.0 | 121/78 | 68 | 16 | 98% RA | 3-4/(L) lung | | | | | | |
| | | / | | | | | | | | | | |
| | | / | | | | | NAME: LAST, FIRST | | | CDC# | | |
| | | / | | | | | HEILMAN, Thomas | | | H-76785 | | |
| | | / | | | | | DOB | AGE | TB CODE | INSTITUTION | HOUSING | |
| | | / | | | | | 04|04|1957 | 56 | 22 | RJDCF | B-6-224 | |

STATE OF CALIFORNIA
**TRIAGE & TREATMENT SERVICES FLOW SHEET**
CDCR 7464 (04/09)

**1. Disability Code:** 1-1
☒ TABE score ≤ 4.0
☐ DPH ☐ DPV ☐ LD
☐ DPS ☐ DNH
☐ DNS ☐ DDP

**2. Accommodation:**
☐ Additional time
☐ Equipment ☐ SLI
☐ Louder ☐ Slower
☒ Basic ☐ Transcribe
☐ Other*

**3. Effective Communication:**
☒ P/I asked questions
☒ P/I summed information
*Please check one.
☐ Not reached ☒ Reached
*See chrono/notes

DEPARTMENT OF CORRECTIONS AND REHABILITATION.

**4. Comments:** NDD

| MEDICATIONS GIVEN IN TTA | | INITIALS | TIME | SOL | SITE | GAUGE | RATE | # ATTEMPTS | INITIALS | LAB/XRAY |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | TOTAL AMOUNT IN: | | | | | | | |

**PATIENT PROGRESS (SOAPE)**

| TIME | |
|---|---|
| 1440 | X-Ray Technician notified, TTA MOD, Dr. Cone about V/P Heilman's Preliminary X-Ray late portative form results that turned out to be significant for Left-sided 30-40% Pneumothorax. V/P was recalled from ASU @ this time. —dP |
| 1540 | V/P arrived in TTA, ambulating & steady gait, A & O X 3, NAD noted. Hx of Physical Altercation/Trauma on 05/09/13 (stated) c̄ Left peri-orbital slight swelling still. On 05/13/13 V/P started c/o Left chest wall pain and SOB and, X-Rays ordered at the time of complaint. Vital signs done, O₂ sat = 98-100% RA. c/o sl. dyspnea, of SOB, the denies chest pain. No nausea, vomiting noted. Lung sounds sl. decreased on Left-side of his lung. No gross deformity. ROM WNL's. V/P remains in no acute distress. —dP |
| 1600 | Dr. Cone, TTA MD Re-evaluated. V/P See progress notes attached. dP |
| 1700 | V/P currently at Holding Cell awaiting BLS ambulance, NAD noted. —dP |
| 1800 | BLS ambulance arrives. Report given. Repeat Vital signs done. V/P remains calm, comfortable, NAD noted. Transferred out in stable condition. Further evaluation needed. —dP |
| | ➙ dPaule an (dP)/ **T. PAULE RN** |

| SUPERVISOR'S REVIEW | | | PATIENT INFORMATION | |
|---|---|---|---|---|
| **NAME** Kfuras | **TITLE** Sur II | **DATE** 5/16/13 | **NAME: LAST, FIRST** HEILMAN , Thomas | **CDC#** H - T6T85 |
| | | | **DOB** 09/04/1957 | **AGE** 56 |
| | | | **INSTITUTION** RJDCF | **HOUSING** B-6-224 L |

STATE OF CALIFORNIA

**HEALTH CARE SERVICES**
**PHYSICIAN REQUEST FOR SERVICES**
(To be completed by requesting Physician and forwarded to Utilization Management Unit)

DEPARTMENT OF CORRECTIONS

| PATIENT NAME | CDC NUMBER | INSTITUTION |
|---|---|---|
| Hedman Thomas | H 6785 | RJD |

| DATE OF BIRTH | EPRD DATE | GENDER |
|---|---|---|
| 4/4/57 | | |

| PRINCIPLE DIAGNOSIS | ICD - 9 CODE | CPT CODE(S) |
|---|---|---|
| L sided 40% pneumothorax | | |

| REQUESTED SERVICE(S) | # OF DAYS RECOMMENDED |
|---|---|
| Alvarado Hospital ER | |

Please circle all that apply: **Diagnostic Procedure/Consultation** :Outpatient/Inpatient **Initial/Follow-up**

Requested Treatment/Service is **EMERGENT** : URGENT ROUTINE

For the purpose of retrospective review, if emergent or urgent, please justify: _____

Proposed Provider: _____ Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity (briefly describe the clinical situation: the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant): _____

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME | APPROVED / AUTHORIZED / DENIED / DEFERRED BY | DATE |
|---|---|---|
| Cool | | |

| REQUESTING PHYSICIAN SIGNATURE | DATE | Utilization management tracking #: |
|---|---|---|
| | 3/16/13 | |

| DATE OF CONSULTATION | PRINTED NAME OF CONSULTANT |
|---|---|
| | |

FINDINGS: _____

RECOMMENDATIONS: _____

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE | DATE | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE | |
| PCP SIGNATURE | DATE | |

**Attach Progress Note page for additional information.**
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL · FILE IN UHR
GREEN · TO UHR PENDING ORIGINAL
CANARY · CONSULTANT
PINK · UM
GOLD · SPECIALTY SCHEDULER

**PHYSICIAN REQUEST FOR SERVICES (RFS)** · CDC 7243 (Rev. 11/02)

EXHIBIT "H"



## Alvarado Hospital

**ALVARADO HOSPITAL LLC**
6655 ALVARADO ROAD
SAN DIEGO, CA 92120

| HEILMAN, THOMAS | |
| --- | --- |
| MRN: 801127 | Location: 4NW-404-B |
| Account: 22526974 | DOB: 4/4/1957 |
| Att Phys: HOOD, RODNEY | Age: 56 Y |
| Admit Dt: 5/16/2013 | Sex: M |
| Disch Dt: | LOS: 10 days |

---

Observation:  H&P RPT

Result:

Rodney G. Hood, M.D.

DATE OF ADMISSION: 05/16/2013

CC:

CHIEF COMPLAINT: Left chest pain.

HISTORY OF PRESENT ILLNESS: Mr. Thomas Heilman is a 56-year-old man, incarcerated at Donovan. He was found to have a left pneumothorax, sent to the emergency room for evaluation. On 05/09/2013, the patient states while in his cell, there was an altercation with the guard. He was injured on his left side of his chest. He had some pain in the left axillary area, left side of his chest wall, anterior chest, and left lateral posterior chest especially when he took a deep breath or move. He had some shortness of breath or cough, but did not cough of blood. He apparently had a chest x-ray several days ago that showed a pneumothorax. He was eventually sent into the emergency room where his initial chest x-ray showed 30% to 35% left pneumothorax, but no mediastinal shift to suggest tension. He was admitted for further treatment and evaluation.

PAST MEDICAL HISTORY: No prior surgeries, hospitalized in 1970s after he had injury and contusions to his chest and abdomen. He was told he had bruised kidney with blood, but none since then. He denies chronic illnesses such as diabetes, heart disease, hypertension, hepatitis, seizures, or cancer. He has been told of lumbar disc disease with stenosis. He gets low back pain radiating to his buttocks and legs, right greater than left and has had injury to his left shoulder with pain decreased range of motion on and off with pain going down his left arm on and off for five years, but worse since the episode.

MEDICATIONS: Tylenol 325 mg p.r.n., hydroxyzine 50 mg at bedtime, Mintox Plus 200/225 mg chewable tablets two tablets p.r.n. indigestion, Effexor ER 150 mg capsules two capsules every day, and zinc oxide topical cream p.r.n.

ALLERGIES: NONE KNOWN.

SOCIAL HISTORY: The patient was born in Bangor, Maine. He has been in California since 1960. He is single and no children. He is now at Donovan and has been incarcerated for 21 years. He denies cigarettes. No alcohol for over 20 years. He denies drug abuse.

FAMILY HISTORY: He states his mother died of old age, about 79, smoked cigarettes and had diabetes. Father died in his mid late 40s from a



**Alvarado Hospital**

**HEILMAN, THOMAS**      **4NW-404-B**
MRN:        801127  Account:        22526974

heart attack. He had two brothers. One brother has died. One sister has died.

REVIEW OF SYSTEMS: 14-point review of systems other than that mentioned above is unremarkable.

PHYSICAL EXAMINATION:
GENERAL: The patient is a well-developed and well-nourished man, lying in bed, in no acute distress.
HEENT: Normocephalic. EOMs are full. PERRL. Fundi are benign. Nose and throat are clear with moist mucous membranes.
NECK: Supple. No jugular venous distention or thyromegaly. No lymphadenopathy.
LUNGS: Clear without wheezes, rales, or rhonchi. Good breath sounds bilaterally.
CARDIOVASCULAR: Regular rhythm. No murmurs, gallops, or rubs.
ABDOMEN: Soft and nontender. No hepatosplenomegaly. No rebound or guarding. Bowel sounds are active.
GENITALIA: Normal male.
EXTREMITIES: No clubbing, cyanosis, or edema. He has mild decreased range of motion in his left upper extremity, in his shoulder with elevation, but able to perform.
NEUROLOGIC: The patient is alert and oriented x3. He moves upper and lower extremities symmetrically. Reflexes are symmetrical.
SKIN: There are a few abrasions on his hands, wrist, and legs, but no rash.

LABORATORY DATA: His admission labs showed a white count of 7290, hemoglobin 14.2, hematocrit 41.9, and platelets 182,000. Glucose is 91, sodium 139, potassium 4.4, chloride 105, CO2 28, BUN 15, and creatinine 0.91. SGOT is 16, SGPT 15, alkaline phosphatase 60, and total bilirubin 1.7.

ADMISSION DIAGNOSES:
1. Left pneumothorax 30% to 35%.
2. Chest wall contusions and bruises.

DISCUSSION AND PLAN: The patient is admitted to Med/Surg floor. He has been placed at bed rest and given oxygen following chest x-ray daily. Thoracic surgery has been notified to follow along with me for possibility of need of chest tube if pneumothorax not resolving spontaneously.

_____

Rodney G. Hood, M.D.


D: RGH 05/17/2013 12:23 T: fp 05/17/2013 18:14 JOB#: 0561149716
Authenticated by RODNEY G HOOD, MD On 05/22/2013 03:28:56 PM

Critical Flag:
Unit:
Body Site:
Critical Range:
Normal Range:

Comment:

## Alvarado Hospital

**ALVARADO HOSPITAL LLC**
6655 ALVARADO ROAD
SAN DIEGO, CA  92120

| | |
|---|---|
| **HEILMAN, THOMAS** | |
| MRN: 801127 | Location: 4NW-404-B |
| Account: 22526974 | DOB: 4/4/1957 |
| Att Phys: HOOD, RODNEY | Age: 56 Y |
| Admit Dt: 5/16/2013 | Sex: M |
| Disch Dt: | LOS: 10 days |

Observation:  ER H&P

Result:

Benjamin Kilian, D.O.

DATE OF SERVICE: 05/16/2013

CC:

HISTORY OF PRESENT ILLNESS:  This is a 56-year-old male who presented from Donovan State Correctional Facility with left-sided chest pain and a pneumothorax.  About one week ago, the patient was assaulted by the guards, kicked, and punched in the ribs.  The patient has a left-sided pneumothorax.  The patient has had pleuritic chest pain.  No other complaints.  Coming forward, the patient has been comfortable at home. The x-ray was taken three days ago and the results were reported today and thus we brought him in to the hospital.

PAST MEDICAL HISTORY:  The patient has no known medical problems.

PAST SURGICAL HISTORY:  None.

MEDICATIONS:  No medications.

ALLERGIES:  NO KNOWN DRUG ALLERGIES.

SOCIAL HISTORY:  No tobacco, alcohol, or illicit drug use.

REVIEW OF SYSTEMS:  As stated in the HPI.  A 10-point review of system is otherwise negative.

PHYSICAL EXAMINATION:
VITAL SIGNS:  Pulse rate is 65, respirations 16, blood pressure 133/80, pulse oximetry 99% on 2L nasal cannula, and temperature 98 degrees.
GENERAL:  The patient is very well appearing.  Off of oxygen, the patient is saturating in the high 90s as well.
HEENT:  Head: No signs of trauma.  Eyes: PERRLA.  EOMI.
NECK:  Supple.
CHEST:  The patient has mild left chest wall tenderness.
LUNGS:  Clear without wheezes, rales, or rhonchi.  I can hear breath sounds bilaterally.
CARDIOVASCULAR:  There are murmurs noted on cardiovascular auscultation.
ABDOMEN:  Soft.

EMERGENCY DEPARTMENT COURSE:  The patient had blood test, CBC, and comprehensive metabolic panel.  Coagulation panels are negative.  Chest x-ray shows 30 to 35% pneumothorax.  It is somewhat improving.  The patient is very stable at this time.  I spoke with Dr. Koumjian as well

**Alvarado Hospital**

**HEILMAN, THOMAS**        **4NW-404-B**

MRN:       801127   Account:       22526974

as Dr. Hood.  We are going to admit the patient to telemetry in the custody floor for serial chest x-ray.  I do not feel that the patient needs any surgical chest tube at this time given how stable he looks, he is not tachypneic, not hypoxic, is not dyspneic, and the patient is very comfortable appearing.  The patient will be admitted to Dr. Hood with Dr. Koumjian as a consultant.

DIAGNOSIS:  Pneumothorax.

DISPOSITION:  The patient is stable for admission.

_____
Benjamin Kilian, D.O.

D: BK 05/16/2013 23:54 T: drb 05/17/2013 06:54 JOB#: 0561149660
Authenticated by BENJAMIN KILIAN, DO On 05/20/2013 06:03:47 AM

Critical Flag:
Unit:
Body Site:
Critical Range:
Normal Range:

Comment:
Performed: 5/16/2013      23:54      by:    MED
Amended: 5/20/2013       06:02      by:    MED

EXHIBIT "I"


Quest Diagnostics

**Report Status: Final**

**HEILMAN, THOMAS**

| Patient Information | Specimen Information | Client Information |
|---|---|---|
| **HEILMAN, THOMAS**<br><br>**DOB: 04/04/1957   AGE: 56**<br>Gender: M        Fasting: U<br>Phone:    NG<br>Patient ID: H76785 | Specimen: EN933222L<br>Requisition: 8680516<br><br>Collected:   05/31/2013 / 07:20 PDT<br>Received:    06/01/2013 / 03:09 PDT<br>Reported:    06/03/2013 / 08:37 PDT | Client #: 92179333        MAIL000<br>CHAU, JOHN K<br>RJD DONOVAN CORRECTIONAL<br>Attn: "LABORATORY STAFF" SAN<br>DIEGO<br>480 ALTA RD<br>SAN DIEGO, CA 92179-0001 |

**COMMENTS:**        RM#:6-239

| Test Name | In Range | Out Of Range | Reference Range | Lab |
|---|---|---|---|---|
| | | ====================== | | EN |

```
CULTURE, AEROBIC BACTERIA

  MICRO NUMBER:      30786385
  TEST STATUS:       FINAL
  SPECIMEN SOURCE:   L CHEST WOUND
  SPECIMEN QUALITY:  ADEQUATE
  RESULT:            Heavy growth of Staphylococcus aureus

                     S.AUREUS
                     ----------------
                     INT  MIC
     AMOX/CLAVULANATE  S   <=4/2
     AMP/SULBACTAM     S   <=8/4
     CIPROFLOXACIN     S   <=1
     CLINDAMYCIN       S   <=0.5
     ERYTHROMYCIN      S   <=0.5
     GENTAMICIN        S   <=4
     LEVOFLOXACIN      S   <=1
     OXACILLIN         S   <=0.25 **1
     PENICILLIN        R   NR
     RIFAMPIN          S   <=1 **2
     TETRACYCLINE      S   <=4
     TRIMETHOPRIM/SULFA S  <=0.5/9.5
     VANCOMYCIN        S   1
```

Legend:
S = Susceptible  I = Intermediate  R = Resistant  NS = Not Susceptible
* = Not Tested  NR = Not Reported  **nn = See Therapy Comments

```
THERAPY COMMENTS

   Note 1:
   Oxacillin-susceptible staphylococci are
   susceptible to other penicillinase-stable
   penicillins (e.g. Methicillin, Nafcillin), beta-
   lactam/beta-lactamase inhibitor combinations, and
   cephems with staphylococcal indications, including
   Cefazolin.

   Note 2:

   Rifampin should not be used alone for
   chemotherapy. Reference: CLSI guidelines M100.
```

*(handwritten notes)* Feb Prn — Started Bactim DS v P.O. — Chau 6/4/13

**PERFORMING SITE:**
EN    QUEST DIAGNOSTICS-WEST HILLS, 8401 FALLBROOK AVENUE, WEST HILLS, CA 91304-3226 Laboratory Director: GORDON L. LOVE, MD, CLIA: 05D0642827

           Your request to have a duplicate copy faxed has been acknowledged.

CLIENT SERVICES: 866.697.8378              SPECIMEN: EN933222L                              PAGE 1 OF 2
                                     Printed by Care360 AutoReceive on 06/04/13 at 07:00am.
Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics.

 Quest Diagnostics  Page 2 of 2  06/02/2013  11:18:36 AM

**Report Status: Partial - Courtesy Copy**
**HEILMAN, THOMAS**

| Patient Information | Specimen Information | Client Information |
|---|---|---|
| **HEILMAN, THOMAS**<br><br>**DOB: 04/04/1957  AGE: 56**<br>Gender:  M  Fasting: U<br>Phone:  NG<br>Patient ID: H76785 | Specimen: EN933222L<br>Requisition: 8680516<br><br>Collected:  05/31/2013 / 07:20 PDT<br>Received:  06/01/2013 / 03:09 PDT<br>Faxed:  06/02/2013 / 11:16 PDT | Client #: 92179333  MAIL000<br>CHAU, JOHN K<br>RJD DONOVAN CORRECTIONAL<br>Attn: "LABORATORY STAFF" SAN<br>DIEGO<br>480 ALTA RD<br>SAN DIEGO, CA 92179-0001 |

**COMMENTS:**  RM#:6-239

| Test Name | In Range | Out Of Range | Reference Range | Lab |
|---|---|---|---|---|
| | ================================== | | | EN |

CULTURE, AEROBIC BACTERIA

| | |
|---|---|
| MICRO NUMBER: | 30786385 |
| TEST STATUS: | PRELIMINARY |
| SPECIMEN SOURCE: | L CHEST WOUND |
| SPECIMEN QUALITY: | ADEQUATE |
| RESULT: | Heavy growth of Staphylococcus species<br>identification and susceptibilities to follow |

**PERFORMING SITE:**
EN    QUEST DIAGNOSTICS-WEST HILLS, 8401 FALLBROOK AVENUE, WEST HILLS, CA 91304-3226 Laboratory Director: GORDON L. LOVE, MD, CLIA: 05D0642827

Pt Treated to
antibiotics
already

aun
6/10/13

Quest, Quest Diagnostics, the associated logo and all associated Quest Diagnostics marks are the trademarks of Quest Diagnostics.

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

## HEALTH CARE SERVICES
## PHYSICIAN REQUEST FOR SERVICES
(To be completed by requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME Heilman, Thomas | CDC NUMBER H 46795 | INSTITUTION RJD |
|---|---|---|

| DATE OF BIRTH 4/4/57 | EPRD DATE | GENDER |
|---|---|---|

| PRINCIPLE DIAGNOSIS Cellulitis No Abscess | ICD - 9 CODE | CPT CODE(S) |
|---|---|---|

| REQUESTED SERVICE(S) Alvarado Hospital ER | | # OF DAYS RECOMMENDED |
|---|---|---|

*Please circle all that apply:* Diagnostic Procedure/Consultation     Outpatient/Inpatient     Initial/Follow-up

Requested Treatment/Service is:   (**EMERGENT**)     URGENT     ROUTINE

*For the purpose of retrospective review,* if emergent or urgent, please justify: _____

Proposed Provider: _____ Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity *(briefly describe the clinical situation; the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant):* 58 y/o with Sprtkine sac & neurosurgery S/P upper hand thoracotomy & blood a [sun] Pt presents c Fever, Drainage/Erythem @ sites Pt refused oral abx now

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up; conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME | APPROVED / AUTHORIZED / DENIED / DEFERRED BY | DATE |
|---|---|---|
| REQUESTING PHYSICIAN SIGNATURE   6/1/13 | DATE | Utilization management tracking #: |

| DATE OF CONSULTATION | PRINTED NAME OF CONSULTANT |
|---|---|

FINDINGS: _____

_____

_____

RECOMMENDATIONS: _____

_____

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE | DATE | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA · RN  SIGNATURE | DATE | |
| PCP SIGNATURE | DATE | |

**Attach Progress Note page for additional information.**
## THIS FORM MUST BE RETURNED WITH THE PATIENT!!!

DISTRIBUTION:
ORIGINAL  -  FILE IN UHR
GREEN     -  TO UHR PENDING ORIGINAL
CANARY    -  CONSULTANT
PINK      -  UM
GOLD      -  SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES (RFS)          CDC 7243 (Rev. 11/02)

EXHIBIT "J"

California Correctional Health Care Services          R.J. DONOVAN CORRECTIONAL FACILITY

## CHRONIC CARE INTAKE

| NAME: HEILMAN, THOMAS | CDCR#: H76785 | DATE OF SERVICE: 06/06/2013 |
|---|---|---|
| DATE OF BIRTH: 04/04/1957 | HOUSING: B 006 2239001LP | PAROLE DATE: Life |

Test of Adult Basic Education (TABE) score 1.1.

**VISIT TYPE:** Add-on patient for Administrative Segregation PCP Clinic.

**HISTORY OF PRESENT ILLNESS:** This visit was as requested by RN for wound check. The patient has a history of pneumothorax, status post lung thoracotomy for lung bleb ( see last dictated note on 5-28-13). The patient has daily dressing changes with RNs and he was noted to have discharge and he had a culture taken. He has daily wound dressing with RNs. The RN noticed him to have redness and swelling over the wound site. It is still tender and painful. The patient requests gabapentin for pain, but did not want Tylenol No. 3. The patient otherwise denied any shortness of breath or cough or hemoptysis. The treatment plan was supposed to be on antibiotic Septra double strength 1 tablet b.i.d. after the culture was shown positive for bacteria with Staphylococcus aureus. The patient, however, did not take the antibiotics and stated he did not know what it was for. Also, he thought it was ibuprofen. Also, the patient was scheduled to see thoracic surgeon for his followup of his wound yesterday, and the patient stated he did not wait and left without seeing the Telemedicine thoracic surgeon consultant.

**PAST MEDICAL HISTORY:**

**CURRENT MEDICATIONS:**
Acetaminophen
Septra DS 1 tab BID started 6/3/13.
Omeprazole
MOM susp.
Mintox plus chewablw tab
Hydoxyzine 50mg cap.

**ALLERGIES: NKDA**

**EXAMINATION:**
VITAL SIGNS: Temp 98.0 F   P=72   RR=16 BP=122/81     O2 sat 98% RA
GENERAL: Ambulate without assisting device, sitting comfortably & talking to RN.
Focused exam at RN station:
LUNGS/CHEST: Focused examination: His chest wound had some erythema. There is no frank pus from the wound, but there is some serosanguineous drainage. There is some tenderness and swelling around the stapled wound site. Lung fields are clear on auscultation.
HEART: S1 S2 no murmur.

**ASSESSMENT/PLAN:** Infected thoracotomy wound site on the left side of the chest. The patient refused antibiotics. I explained to the patient what the antibiotics were for and finally he understood and he agreed to start his antibiotics. We will closely monitor patient with daily RN dressing changes and wound checks. If not getting better in a couple of days, the patient will need to present to TTA and return to hospital for further evaluation. Also, told patient not to miss thoracic surgeon Telemedicine followup appointment which order was written for reschedule ASAP. Also, chest x-ray was ordered and the results are still pending. We will try to obtain pain medication, gabapentin, for patient, but it is nonformulary. The patient will need to try other pain medicines first with amitriptyline 10mg HS & continue Tylenol 325mg 2 tab TID. Patient still does not want T#3 with codeine causing constipation. This plan was discussed with the patient.

**EDUCATION:** The patient is able to verbalize understanding about the assessment and plan. His TABE score is 1.1. He was given extra time and also simple, basic English was used. Effective communication is established as evidenced by

DICTATED BY J. Chau, MD
HEILMAN THOMAS                                                          H76785

California Correctional Health Care Services

R.J. DONOVAN CORRECTIONAL FACILITY

the patient's ability to repeat the assessment and plan back to me to my satisfaction. He was educated on the risks of continuing refusing antibiotics & thoracic surgeon specialist appointment, including lung abscess, cellulitis, sepsis & even death.

FOLLOWUP: The patient will follow up with the PCP in 1 week or earlier if symptoms worsen and the patient will have RN daily wound checks and wound cleaning. Also, follow up with thoracic surgeon for postoperative appointments after he refused his first post op appointment on 6/5/2013.

DISABILITY CODE:
(X) TABE  score less than 4.0
() DPH  () DPV  () LD
() DPS  () DNH
() DNS () DDP

ACCOMMODATION:
(X) Additional time
() Equipment  () SLI
() Louder  (X) Slower
(X) Basic () Transcribe
() Other*

EFFECTIVE COMMUNICATION:
(X) Patient-inmate asked questions.
(X) Patient-inmate summed information
PLEASE CHECK ONE
() Not reached*   (X) Reached
     *See Chrono/notes

COMMENTS:


**X** CHAU
_____
J. Chau, MD
Digitally authenticated on 6/11/2013 12:52 PM

JC/sh    D: 06/06/2013 05:37:00 pm          T: 06/10/2013 08:00:27 pm          Job #: 722316

California Correctional Health Care Services                    R.J. DONOVAN CORRECTIONAL FACILITY

## MEDICAL PROGRESS NOTE

| NAME: HEILMAN, THOMAS | CDCR#: H76785 | DATE OF SERVICE: 06/11/2013 |
|---|---|---|
| DATE OF BIRTH: 04/04/1957 | HOUSING: B 006 2239001LP | PAROLE DATE: 07/24/2016 |

Test of Adult Basic Education (TABE) score is 1.1.

TIME: 11:45 a.m.

CHIEF COMPLAINT: This add-on appointment is per RN request.

SUBJECTIVE: This is a 56-year-old patient who is status post left upper lobe thoracotomy with wedge resection of the blebs. Secondary spontaneous pneumothorax that was back on 05/16/2013. The left-sided wound has some discharge with some redness and swelling. The RN was asked to see the patient. The patient stated he had more pain in the wound area over the axillary area. He would like to have gabapentin for his chest pain. He denies fever or chills. However, he has more discharge and swelling.

MEDICATIONS:
1. Acetaminophen.
2. Amitriptyline.
3. Hydroxyzine.
4. Milk of Magnesia.
5. Mintox chewable tablet.
6. Omeprazole.
7. Septra double strength, one tablet b.i.d.

**ALLERGIES: NO KNOWN DRUG ALLERGIES.**

OBJECTIVE: VITAL SIGNS: Temperature 97.3, pulse 71, blood pressure 106/71. Weight is 171 pounds. Body mass index is 21. CHEST/LUNGS: This is a focused examination for his left-sided wound. There are sutures that are stable and still intact; however, there is drainage with purulent discharge and there is redness and more swelling as compared to the last time I saw him. It is not getting better. It is tender on touch.

ASSESSMENT/PLAN:
1. Status post left lung bulla resection with wound infection. The patient had culture positive staph which should be sensitive to Septra double strength b.i.d. The patient initially refused medications but he has started taking medications since 06/07/2013 and had no response to medications. We will refer the patient to Alvarado Hosp emergency room so that he can see his thoracic surgeon specialist who operated on him ASAP. The wound has some redness and discharge. The patient has noncompliance for followup with the thoracic surgeon Wednesday as well. He refused to wait for the surgeon while up in the Triage and Treatment Area (TTA). He had a chest x-ray done yesterday. Results are still pending. I believe the patient will need a CT scan to rule out abscess due to wound infection. He will need antibiotics for cellulitis and will likely need I&D & debridement of the wound.
2. Chest wall pain due to nonhealing wound and infection. The patient will be treated in the hospital with pain medications accordingly.

EDUCATION: The patient's TABE score is low at 1.1. However, he was given extra time and simple basic English was used. The patient was able to summarize the assessment and plan. He was also educated on compliance with his medications from now on. Also educated on compliance with all the specialists follow ups. He was educated on increasing infection, sepsis and even death.

FOLLOWUP: The patient will follow up as per protocol after hospital discharge.

DICTATED BY J. Chau, MD
HEILMAN THOMAS                                                                                H76785

California Correctional Health Care Services          R.J. DONOVAN CORRECTIONAL FACILITY

DISABILITY CODE:
(x) TABE  score less than 4.0
( ) DPH ( ) DPV ( ) LD
( ) DPS ( ) DNH
( ) DNS ( ) DDP

ACCOMMODATION:
( x) Additional time
( ) Equipment  ( ) SLI
( ) Louder  ( x) Slower
( x) Basic ( ) Transcribe
( ) Other*

EFFECTIVE COMMUNICATION:
( x) Patient-inmate asked questions.
( x) Patient-inmate summed information
PLEASE CHECK ONE
( ) Not reached*    ( x) Reached
     *See Chrono/notes

COMMENTS:


**X** JC
_____

J. Chau, MD
Digitally authenticated on 6/21/2013 3:15 PM

JC/cw   D: 06/11/2013 03:27:00 pm          T: 06/13/2013 05:17:20 pm          Job #: 725081

California Correctional Health Care Services                    R.J. DONOVAN CORRECTIONAL FACILITY

**MEDICAL PROGRESS NOTE**

| NAME: HEILMAN, THOMAS | CDCR#: H76785 | DATE OF SERVICE: 06/18/2013 |
|---|---|---|
| DATE OF BIRTH: 04/04/1957 | HOUSING: B  006 2239001LP | PAROLE DATE: 07/24/2016 |

TIME:

The patient's Test of Adult Basic Education (TABE) score is 1.1.

REASON FOR VISIT: This is a followup hospital discharge and also evaluation for his injuries per his 7362 request dated June 16, 2013.

SUBJECTIVE: The patient was discharged from Alvarado Hospital after I and D of his chest wound infection. He had a CT scan done which showed no abscesses. He was treated with IV antibiotics, wound was improved and he was discharged back to R.J. Donovan Correctional Facility (RJD) with Septra double-strength one tablet b.i.d. Currently he denies any discharge from his wound and the swelling is already better; however, he stated he has not had a dressing change since discharge back to RJD. He wanted to have the wound checked today. Per his 7362 request, the patient stated that he sustained an injury on May 9, 2013. He stated that he had an altercation with the Custody Officers. He stated that his wrists and his ankle areas have injury due to the restraint with tight cuffings. He has some indentation in the skin of his wrists and also on his ankle areas. He stated that he has some pain. He also stated he has left shoulder pain, which was chronic but was aggravated by the incident. Otherwise, he would like to renew his Mintox Plus chewable tablets and he states that he does not need omeprazole anymore. He also stated that he does not take amitriptyline. He stated that it was causing side effects. Otherwise, he did not complain about much pain. The patient is also complaining about weight loss. He would like to have liquid nutritional supplements. The patient states his normal weight is 185 pounds. Today his weight is 176 pounds; however, he stated that due to his metal cuffings he is probably in the 170s.

MEDICATIONS: Reviewed with the patient.
1. Acetaminophen 325 mg two tablets t.i.d.
2. Amitriptyline 10 mg at bedtime.
3. Hydroxyzine one capsule at bedtime prescribed by the psychiatrist.
4. Mintox Plus two tablets t.i.d. p.r.n. for heartburn.
5. Omeprazole 20 mg one tablet every day.
6. Septra double-strength one tablet b.i.d.
7. Effexor.

**ALLERGIES:  NO KNOWN DRUG ALLERGIES.**

REVIEW OF SYSTEMS: The patient denies fevers, chills, shortness of breath, chest pain, nausea, vomiting, abdominal pain, blood per rectum.

OBJECTIVE: VITAL SIGNS: Temperature 97.1, pulse 62, blood pressure 111/75, respirations 18. Oxygen saturation 100%. Height 6 feet 4 inches. Weight 176 pounds. Body mass index 22. GENERAL: Slim, tall male, in no distress, ambulatory. HEENT: Within normal limits. NECK: Within normal limits. PULMONARY: Clear to auscultation. Within normal limits. His chest wound examination showed that he had some dry blood over the thoracotomy wounds, but there is no purulent discharge anymore and the redness is minimal and there is minimal swelling as well. Surrounding lymph nodes not enlarged. CARDIAC: Within normal limits. MUSCULOSKELETAL/EXTREMITIES: Both wrists have full range of movement and there are no significant deformities. He has healed abrasions over the anterior surface of his wrists just about 1 to 2 inches proximal to the wrist joints. He also has two healed abrasions on his ankle areas about 2 inches from his ankle joints in front of the shins. Otherwise he had full range of movement of his ankles. His reflexes are normal in both the upper and lower extremities. Sensation is intact. Skin color is normal perfusion. No cyanosis. No delay of capillary refill.

ASSESSMENT AND PLAN:
1. Left-sided chest wound is healing now and since the patient was admitted to the hospital and receiving IV antibiotics status post I and D done by the thoracic surgeons. His discharge note was reviewed. We will continue his Septra double-

DICTATED BY J. Chau, MD
HEILMAN THOMAS                                                                                          H76785

California Correctional Health Care Services          R.J. DONOVAN CORRECTIONAL FACILITY

strength one tablet b.i.d. until June 21, 2013. Continue daily dressings with cleaning with normal saline and dry daily dressings in order that we may be able to keep an eye on his wound as well.

2. Mild wrist and ankle abrasions secondary to restraint. These have healed and full range of movement and are resolved. There is no demonstrable nerve damage. The patient was reassured.

3. Weight loss. The patient was referred to R.J. Donovan Correctional Facility registered dietitans. His current weight is 176 pounds and he usually weighs 185 pounds so he has less than 10% of weight loss and his body mass index is still good at 22. I may not be eligible for nutritional supplements yet. Need monitoring.

4. Nutritional supplements. I encouraged oral intake with current California Department of Corrections and Rehabilitation (CDCR) diet and the patient has no symptoms of diarrhea. In the office he has constipation especially when he is on Tylenol No. 3, codeine.

EDUCATION: The patient is educated on wound care and to watch for signs and symptoms of increasing infection. The patient also was educated on adherence to medication and appointments with the RN, PCP and specialists.

EFFECTIVE COMMUNICATION: Effective communication was achieved as evidenced by the patient's mannerisms and response to questions appropriately. The patient was able to summarize the assessment and plan. He was given additional time and basic English was used in communication. His TABE score is 1.1.

FOLLOWUP: The patient will follow up in the PCP Clinic in two weeks, earlier if symptoms worsen as evidenced by RNs with the daily dressing changes.

| DISABILITY CODE: | ACCOMMODATION: | EFFECTIVE COMMUNICATION: |
|---|---|---|
| (x ) TABE score less than 4.0 | (X) Additional time | ( ) Patient-inmate asked questions. |
| ( ) DPH ( ) DPV ( ) LD | ( ) Equipment ( ) SLI | (X) Patient-inmate summed information |
| ( ) DPS ( ) DNH | ( ) Louder ( ) Slower | PLEASE CHECK ONE |
| ( ) DNS ( ) DDP | (X) Basic ( ) Transcribe | ( ) Not reached*   (X) Reached |
| | ( ) Other* | *See Chrono/notes |

COMMENTS:

X JC
_____
J. Chau, MD
Digitally authenticated on 6/21/2013 4:03 PM

JC/dk   D: 06/18/2013 02:13:00 pm          T: 06/20/2013 12:31:59 pm          Job #: 729576

EXHIBIT "K"

State of California
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*July 03, 2013*

**HEILMAN, H76785**
*B  006 2239001LP*

DISCIPLINARY, Other, 06/26/2013
Log Number: RJD-B-13-02024
(Note: Log numbers are assigned to all appeals for tracking purposes)

The enclosed documents are being returned to you for the following reasons:

*Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(3).  You have exceeded the allowable number of appeals filed in a 14 calendar day period pursuant to CCR 3084.1(f).*

*Pursuant to CCR 3084.4 you are advised that this appeal is considered misuse or abuse of the appeals process.  Repeated violations may lead to your being placed on appeal restriction as described in CCR 3084.4(g).*

*\* Appeal log# RJD-B-13-01911 received 6/19/13*

R. Olson, CCII / J. Ramirez, CCII
Appeals Coordinator
Richard J. Donovan Correctional Facility

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b).  Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision.  The original appeal may only be resubmitted if the appeal on the cancellation is granted.

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| | IAB USE ONLY |
|---|---|

Institution/Parole Region: **RJD-B**  Log #: **13-2024**  Category:

*FOR STAFF USE ONLY*

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available.  See California Code of Regulations, Title 15, Section (CCR) 3084.1.  You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that lead to the filing of this appeal.  If additional space is needed, only one CDCR Form 602-A will be accepted.  Refer to CCR 3084 for further guidance with the appeal process.  No reprisals will be taken for using the appeal process.

**Appeal is subject to rejection if one row of text per line is exceeded.**     **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

Name (Last, First): **Heilman, Thomas**      CDC Number: **H-76785**   Unit/Cell Number: **B-6-239**   Assignment: **EOP**

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.): Appealing finding of guilty — placement of 128-B in my central file due to Due Process violations by Lt. Franco SHO.

**RECEIVED**
**JUN 26 2013**
**RJDCF APPEALS**
S/O R3 Appea~
Log# RJD-B-13-0~
Received 6-19-1~
1. Disc OTHER.~

A.  **Explain your issue** (If you need more space, use Section A of the CDCR 602-A): On June 4, 2013 this petitioner was found guilty of "Battery on a Peace officer." The charge was dismissed and a 128-B with the findings placed in petitioner's central file. Petitioner alleges that violations

B.  **Action requested** (If you need more space, use Section B of the CDCR 602-A): Due to Lt. Franco's denial of Heilman's Due Process rights, all references to the US RVR Log No FB-13-095 must be removed from Heilman's Central File, or conduct a re-issue-rehearing of the 128-B

**RECEIVED**
**JUL 09 2013**
**RJDCF APPEALS**
S/O R4 ~
REMOVE List~
OF "Questio~
Limi~
to one 602-~

Supporting Documents:  Refer to CCR 3084.3.
☑ Yes, I have attached supporting documents.
List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):
① US RVR Hearing Final Copy ② 128-B General Chrono ③ Other Supplemental reports and 7219 injury report ④ My written Statement for the US RVR Hearing, ⑤ 128-B General Chrono
☐ No, I have not attached supporting documents. Reason: ⑥ I.E.'s Report -115-C

Inmate/Parolee Signature: _Thomas J. Heilman_      Date Submitted: **6-25-2013**

☐  **By placing my initials in this box, I waive my right to receive an interview.**

---

**C.  First Level – Staff Use Only**      Staff – Check One: Is CDCR 602-A Attached? ☑ Yes  ☐ No
This appeal has been:
☐ Bypassed at the First Level of Review.  Go to Section ___
☑ Rejected (See attached letter for instruction)  Date: **JUL 01 2013** Date: **JUL 09 2013** Date: ___  Date: ___
☐ Cancelled (See attached letter)  Date: _____
☐ Accepted at the First Level of Review.
   Assigned to: _____  Title: _____  Date Assigned: _____  Date Due: _____

First Level Responder:  Complete a First Level response.  Include Interviewer's name, title, interview date, location, and complete the section below.
   Date of Interview: _____   Interview Location: _____
Your appeal issue is:  ☐ Granted  ☐ Granted in Part  ☐ Denied  ☐ Other: _____
   See attached letter.  If dissatisfied with First Level response, complete Section D.
Interviewer: _____  Title: _____  Signature: _____  Date completed: _____
                (Print Name)
Reviewer: _____  Title: _____  Signature: _____
             (Print Name)
Date received by AC: _____

| AC Use Only |
|---|
| Date mailed/delivered to appellant ___ / ___ / ___ |

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region | Log # | Category |
|---|---|---|---|
| | RJD-B | 13-2024 | |
| | FOR STAFF USE ONLY | | |

Attach this form to the CDCR 602, only if more space is needed.  Only one CDCR 602-A may be used.

**Appeal is subject to rejection if one row of text per line is exceeded.**      WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| Heilman, Thomas | H-76785 | 13-6-239 | FOP |

**A. Continuation of CDCR 602, Section A only (Explain your issue):** of his Due Process rights during the 115 RVR Hearing are grounds to find Heilman "Not Guilty" and removal of the 128-B from Heilman's Central File. Ground #1: Failure by Lt. Franco, S110 to permit any witnesses requested by Heilman at the hearing including the Reporting Employee, the Investigative Employee, Inmate eye-witnesses, or other involved staff members in violation of the CCR Title 15 sect. 3315(e) and sect. 3315(e)(2). Ground #2: Failure by Lt. Franco to include Heilman's written statement in the 115 RVR Hearing Final Copy as supporting documentation on his behalf pursuant to the CCR Title 15 section 3320(l). Heilman did not give a verbal statement. Ground #3: Failure by Lt. Franco, S110 to permit interviews of requested witnesses before the hearing and failure to allow documentary evidence in defense or mitigation of the charges including video recordings of Heilman's injuries sustained during the Excessive Force incident on May 9, 2013; other requested video recordings of staff involvement and five (5) 7219 injury forms. See 115-C for requested witnesses and documentation.

Inmate/Parolee Signature: _Thomas J. Heilman_      Date Submitted: 6-25-2013

**B. Continuation of CDCR 602, Section B only (Action requested):** of the charges where the charges can be no greater than that of a dismissal of the charges and a placement of the 128-B in Heilman's Central File! Heilman The Disposition by Lt. Franco should have been "Not Guilty" and then dismissal of all charges. However Lt. Franco chose to misrepresent the facts on the 115 RVR Hearing Final Copy to attempt conceal the severe beating suffered by Heilman at the hands of Tyson, the RE, C/o Buenrostro, C/o Silva and C/o Jara which resulted in Heilman suffering serious internal injuries including a collapsed lung from blunt force trauma and surgery to repair the lung on May 20, 2013. The 115 RVR Hearing Final Copy contradicts Heilman's requests for witnesses and supporting evidence per the I.E.'s Report - 115-C! (Attached)

Inmate/Parolee Signature: _Thomas J. Heilman_      Date Submitted: 6-25-2013

**State of California**
**CDC FORM 695**
**Screening For:**
CDC 602 Inmate/Parolee Appeals
CDC 1824 Reasonable Modification or Accommodation Request

RE: Screening at the FIRST Level

*July 11, 2013*

***HEILMAN, H76785***
*B 006 2239001LP*

DISCIPLINARY, Other, 07/09/2013
Log Number: RJD-B-13-02024
(Note: Log numbers are assigned to all appeals for tracking purposes)

The enclosed documents are being returned to you for the following reasons:

***Your appeal has been rejected pursuant to the California Code of Regulations, Title 15, Section (CCR) 3084.6(b)(14). You have not submitted your appeal on the departmentally approved appeal forms.***

**\* REMOVE LIST OF "QUESTIONS"**
**\* LIMITED TO ONE 602-A.**


R. Olson, CCII / J. Ramirez, CCII
Appeals Coordinator
Richard J. Donovan Correctional Facility

Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b). Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, a separate appeal can be filed on the cancellation decision. The original appeal may only be resubmitted if the appeal on the cancellation decision is granted.

EXHIBIT "L"

STATE OF CALIFORNIA—DEPARTMENT OF CORRECTIONS AND REHABILITATION                                      EDMUND G. BROWN JR., *GOVERNOR*

**OFFICE OF INTERNAL AFFAIRS**
Headquarters Office
P.O. Box 3009
Sacramento, CA  95812



September 25, 2013

Mr. Michael Heilman
1320 SW Nancy Court
Gresham, OR 97080

Dear Mr. Heilman:

## CITIZEN'S COMPLAINT RECEIPT ACKNOWLEDGMENT

This letter serves as acknowledgement that on September 3, 2013, the California Department of Corrections and Rehabilitation (CDCR), Office of Internal Affairs (OIA) received your letter regarding your concerns of your son Michael Heilman H76785 and Richard J. Donovan Correctional Facility (RJD).

OIA reviewed your concern and must defer the complaint to the institution.  Please address your future correspondence to the address provided below for appropriate action.

This complaint is being forwarded to the institution you have referenced for their re-review and determination, and where appropriate action on the issues you raise can be addressed.  If during the inquiry process staff misconduct is identified, the Hiring Authority may submit a Request for an Internal Affairs Investigation to OIA.  California statues prohibit the release of specific details to any personnel actions taken as a result of this process.

CDCR is committed to ensuring all departmental employees are courteous, ethical, and professional in carrying out the Department's mission. CDCR investigates citizen's complaints against employees to preserve the integrity and morale of the Department, foster public trust and confidence, and ensure accountability to the public.

Sincerely,

**MARION MARRUJO**
**(916) 255-1344**
**CENTRAL INTAKE UNIT**
**OFFICE OF INTERNAL AFFAIRS - HEADQUARTERS**

cc:      Daniel Paramo, Warden
         Richard J. Donovan Correctional Facility (RJD)
         480 Alta Road
         San Diego, CA  92179

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Thomas John Heilman
H-76785

**DEFENDANTS**
Almeida, et al.

**FILING FEE PAID**  Yes

**IFP MOTION FILED**  Yes

**COPIES SENT TO**  Yes    No

**Court**    ProSe

DEC 11 2013

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

2254

**(b)** County of Residence of First Listed Plaintiff    San Luis Obispo
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Thomas John Heilman
PO Box 8101
San Luis Obispo CA 93409-8101

Attorneys *(If Known)*

13CV2984 JLS MDD

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☒ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42:1983
Brief description of cause:
Prisoner Civil Rights

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE
12/11/2013

SIGNATURE OF ATTORNEY OF RECORD
s/SKHoestenbach

FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

Thomas J. Heilman
H-76785 Rm#7216
California Mens Colony-East
P.O. Box 8101
San Luis Obispo, CA 93409-8101

LEGAL MAIL-INDIGENT

CLERK OF THE COURT
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
ROOM 4290
880 FRONT STREET
SAN DIEGO, CA. 92101-8900

CONFIDENTIAL
MAIL



CALIFORNIA MENS COLONY
STATE PRISON
SAN LUIS OBISPO CA 93409

Priority Mail
ComBasPrice

02 1R
000654230
MAILED FROM ZIP CODE 93409

UNITED STATES POSTAL SERVICE
DEC 09 2013



LEGAL MAIL