1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11 | THOMAS JOHN HEILMAN,                    Case No.: 13-CV-2984 JLS (MDD)
12 | CDCR #H-76785,

13 |                          Plaintiff,     **ORDER: (1) VACATING PRIOR**
      |                                       **ORDER ADOPTING REPORT AND**
                                             **RECOMMENDATION,**
14 | v.                                      **(2) OVERRULING OBJECTIONS,**
                                             **(3) ADOPTING REPORT AND**
15 | A. SILVA, et al.,                       **RECOMMENDATION, AND**
                                             **(4) GRANTING IN PART AND**
16 |                          Defendants.    **DENYING IN PART DEFENDANTS'**
                                             **MOTION FOR SUMMARY**
17 |                                         **JUDGMENT**

18

19
                                             (ECF Nos. 147, 225, 239, 255)
20

21        Presently before the Court is Defendants' Motion for Summary Judgment. ("MSJ,"

22 ECF No. 147.)  Also before the Court is Magistrate Judge Mitchell D. Dembin's Report

23 and Recommendation advising this Court to grant in part and deny in part Defendants'

24 MSJ. ("R&R," ECF No. 225.)  Magistrate Judge Dembin's R&R required the parties to

25 file any objections by August 7, 2015. (R&R 60,[1] ECF No. 225.)

26 / / /

27

28
_____

[1] For ease of reference, page citations to docketed materials refer to the CM/ECF page number.

1

On a number of occasions, Plaintiff expressed concern that the Court was not in receipt of his objections. (*See, e.g.*, ECF Nos. 245, 254, 256.)  In response, the Court promised that Plaintiff would be permitted to resend his objections and, upon receipt of his objections, the Court would consider them and review the portions of Magistrate Judge Dembin's R&R to which Plaintiff objected.  (ECF No. 248 at 2; ECF No. 257 at 3–4.)

On September 17, 2015, the Court received Plaintiff's Objections to Report and Recommendations on Defendants' Partial Motion for Summary Judgment, dated July 28, 2015.  ("Objections," ECF No. 255.)  In keeping with the Court's promise, the Court **VACATES** its August 17, 2015 Order (ECF No. 239) and reviews the portions of the R&R to which Plaintiff objects.  For the reasons stated below, the Court **OVERRULES** Plaintiff's Objections, **ADOPTS** Magistrate Judge Dembin's R&R, and **GRANTS IN PART AND DENIES IN PART** Defendants' MSJ.

## BACKGROUND

Magistrate Judge Dembin's R&R contains a thorough and accurate recitation of the procedural history and facts underlying Plaintiff's complaint.  (R&R 2–15, ECF No. 225.) This Order incorporates by reference the facts as set forth in the R&R.

## LEGAL STANDARD

### 1.    Review of the Report and Recommendation

Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1) set forth a district court's duties regarding a magistrate judge's report and recommendation. The district court "shall make a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see also United States v. Raddatz,* 447 U.S. 667, 673–76 (1980).  In the absence of a timely objection, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72 advisory committee's note (citing *Campbell v. U.S. Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974)).

/ / /

### 2.   Summary Judgment

Summary judgment, or partial summary judgment, is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  When the Court weighs the evidence to be presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party.  *Celotex*, 477 U.S. at 323.  The movant can carry his burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating to the Court that the nonmoving party "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23.

Once the moving party satisfies this initial burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 324.  To do so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  Furthermore, the nonmoving party cannot oppose a properly supported motion for summary judgment by "rest[ing] upon mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.  Rather, the nonmoving party must identify those facts of record that would contradict the facts identified by the movant. *Id.* at 256-57.  While "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment, . . . summary judgment is not warranted if a reasonable jury could return a verdict for the nonmoving party." *United States v. Arango*, 670 F.3d 988, 992 (9th Cir. 2012) (emphasis in original; citations and internal quotation marks omitted).

## ANALYSIS

### I. Failure to Exhaust Administrative Remedies

#### A. Summary of the R&R

##### (i) The Exhibit A Grievance

With respect to the Exhibit A grievance,[2] Magistrate Judge Dembin "finds that this grievance exhausted claims one, four, five, six, seven and eight to the extent they are brought against Defendants Silva, Buenrostro, Tyson, Armstead, Jaca, Arguilez, Russell and Nainggolan." (R&R 25, ECF No. 225.) Magistrate Judge Dembin explains that "Plaintiff specifically identified Defendants Silva, Buenrostro, Tyson, Armstead, Jaca and Arguilez. Accordingly, he exhausted the claims at issue as to those Defendants." (*Id.* at 26.)

Magistrate Judge Dembin additionally finds that Plaintiff exhausted his claims of deliberate indifference as to Defendants Russell and Nainggolan because Plaintiff "included 'two nurses' in his initial claims, though he did not identify them by name" and "provided their position and the date of their involvement, from which their assignment to a specific location in the prison can be inferred, and their identities could be deduced." (*Id.* at 26–27.)

Although Plaintiff added the names of Defendants Paramo, Ojeda, and Thompson at the second level of review, Magistrate Judge Dembin finds that Plaintiff's "failure to raise those allegations in the *initial* submission precludes a finding that they were exhausted by this grievance." (*Id.* at 27 (emphasis in original) (citing Cal. Code Regs. tit. 15,

---

[2] Magistrate Judge Dembin's R&R refers to the grievances by the Exhibit numbers assigned to them in the Declaration of B. Baenziger, in Support of Defendants' Partial Motion for Summary Judgment for Failure to Exhaust. (ECF No. 147-8.) For ease of reference, the Court adopts this terminology.

§ 3084.1(b)).)  Consequently, Magistrate Judge Dembin recommends finding that Claims One and Four through Eight were exhausted as to Defendants Silva, Buenrostro, Tyson, Armstead, Jaca, Arguilez, Russell, and Nainggolan, but that the Exhibit A grievance did not exhaust the claims alleged against Defendants Paramo, Ojeda, and Thompson.  (*Id.* at 28.)

### (ii)    The Exhibit C Grievance

With respect to the Exhibit C grievance, Magistrate Judge Dembin first finds that the grievance was not exhausted through all levels of review because it was cancelled as duplicative of the Exhibit A grievance.  (*Id.* at 29.)

Magistrate Judge Dembin then analyzes whether the Exhibit C grievance, which added new facts and staff members not included in the original Exhibit A grievance, was properly deemed duplicative.  (*Id.* at 29–30.)  Magistrate Judge Dembin concludes that the Exhibit C grievance would not have exhausted Plaintiff's claims against Defendants Ojeda, Franco, Thompson, Stout, and Paramo because it was not timely filed.  (*Id.* at 30–31.)  Magistrate Judge Dembin notes that the Exhibit C grievance was signed by Plaintiff on July 12, 2013, more than 30 days after the underlying incident occurred, meaning that the prison officials "would have properly cancelled the grievance as untimely if they had not cancelled it as duplicative."  (*Id.* at 31.)

In response to Plaintiff's argument that he could not have identified each defendant while housed in the Crisis Unit, Magistrate Judge Dembin notes that "Plaintiff made no effort in the initial complaint to provide any information about these Defendants, such as referencing the warden's title, and did not even suggest that other staff were involved" (*id.*) and "[h]is initial grievance . . . shows that he was aware of and able to identify the other Defendants" (*id.* at 32).  Magistrate Judge Dembin concludes that "Plaintiff's housing on the Crisis Unit does not excuse him from making the minimal effort required to comply with the regulation requiring inmates to provide any available information about the persons involved."  (*Id.*)

/ / /

Additionally, Magistrate Judge Dembin notes that Plaintiff's reliance on *Jones v. Bock*, 549 U.S. 199, 218 (2007), for the proposition that failure to name in the grievance an individual later sued does not result in failure to exhaust is "misplaced, because *Jones* addressed Michigan's prison grievance procedure." (*Id.*)

Finally, Magistrate Judge Dembin concludes that Plaintiff "failed to meet his burden to show that the prison officials improperly screened out his Exhibit C grievance as duplicative." (*Id.* at 33.) Magistrate Judge Dembin first notes that Plaintiff's interpretation of the Second Level response to his Exhibit A grievance—that it instructed him to file a separate grievance naming the newly added staff members—was "not correct and does not act as a waiver or extension of time requirements for naming involved staff members." (*Id.*) Magistrate Judge Dembin further notes that "the prison officials explained that the two grievances concerned the same basic 'staff complaint issues' and 'requested the same remedy'" and that he "does not disagree with this comparison, and declines to find that the prison officials' interpretation of these similar grievances as duplicative is unsupported or inconsistent with the regulations." (*Id.* at 33–34.)

Magistrate Judge Dembin therefore concludes that Plaintiff did not exhaust the contents of the Exhibit C grievance and is not entitled to an exception to the exhaustion requirement. (*Id.* at 34.)

### (iii)   The Vanished Grievance

With respect to the vanished grievance, Magistrate Judge Dembin notes that the grievance was timely filed on either May 13, 2013 or May 27, 2013, and that Plaintiff specifically requested that this more comprehensive grievance replace the initial Exhibit A grievance, but that the Appeals Coordinator refused to respond and the grievance vanished. (*Id.* at 34–35.) Magistrate Judge Dembin concludes, however, that this vanished grievance "does not result in exhaustion as to all Defendants" (*id.* at 35), explaining that "even if the vanished grievance is treated as fully exhausted, it serves only to exhaust claim one against Defendant Thompson. Defendants Ojeda, Franco, Stout and Paramo must still be dismissed for non-exhaustion, and claims five, six and seven must be dismissed against

13-CV-2984 JLS (MDD)

Defendant Thompson for non-exhaustion." (*Id.* at 35–36.)

### B.   Summary of Plaintiff's Objections

For ease of comparison, the Court analyzes Plaintiff's Objections in the same order utilized by the R&R.

#### (i)   The Exhibit A Grievance

Plaintiff first argues that "failure to 'name all defendants' did not invalidate Heilman's 602/Inmate-Appeal as to Defendants Paramo, Ojeda, and Thompson." (Objections 8, ECF No. 255.)  Plaintiff relies primarily on *Reed-Bey v. Pramstaller*, 603 F.3d 322 (6th Cir. 2010), arguing that "[w]hen prison officials decline to enforce their own procedural requirements governing administrative exhaustion of a PLRA claim and opt to consider otherwise-defaulted claims on the merits, so as a general rule will the Court of Appeals." (*Id.* at 9 (citing *Reed-Bey*, 603 F.3d at 325).)  Plaintiff claims that, under *Reed-Bey*, it was unnecessary for him to name all defendants after a denial of his grievance "on the merits" where Plaintiff "later showed a direct and causal link between the Defendants and the alleged constitutional deprivations." (*Id.* at 10.)

Plaintiff next challenges Magistrate Judge Dembin's analysis of *Jones*. (*Id.* at 10–11.)  Plaintiff notes "[t]hat Judge Dembin's citing of <u>Jones</u> as addressing only Michigan's prison grievance procedure and not California's is basically correct," but notes that "Judge Dembin failed to mention that Michigan <u>like</u> California has codified the requirement to identify the 'names of all those involved' in the grievance . . . for exhaustion of claims 'administratively' as to specific individuals." (*Id.* at 11.)

Plaintiff continues that "Reed-Bey did not name a <u>single</u> individual in his initial grievance" although he was "a Michigan state prisoner and required to 'name all defendants' under the prison's internal grievance policies prior to filing a lawsuit." (*Id.* at 12.)  Nevertheless, "the Sixth Circuit held that, '[t]he state's . . . decision to review a claim on the merits gives us a warrant to do so as well, even when a procedural default might otherwise have resolved the claim." (*Id.* (citing *Reed-Bey*, 603 F.3d at 325).)  Plaintiff notes that the Third, Seventh and Tenth Circuits "have come to the same conclusion." (*Id.*)

7

Plaintiff therefore concludes that his "failure to name Defendants Ojeda, Thompson, Paramo, Stout and Franco should not invalidate [his] grievance for failure to exhaust administrative remedies as to these Defendants."  (*Id.* at 13.)

### (ii)   The Exhibit C and Vanished Grievances

With respect to Magistrate Judge Dembin's recommendation to dismiss Plaintiff's "subsequent grievances[, including the Exhibit C grievance,] as duplicative or untimely," Plaintiff notes that he "notified the Court that his attempts to exhaust his 'available' administrative remedies concerning the claims and Defendants as raised in his complaint were continually blocked and[/]or obstructed by RJD Appeals Coordinators R. Olson, CC-II and J. Ramirez, CC-II."  (*Id.*)  He further notes that "there is a large body of case law pertaining to the futility of filing prison grievances when prison officials engage in tactics to thwart or obstruct an inmate's ability to exhaust his administrative remedies" and that Magistrate Judge Dembin cites such cases in his R&R.  (*Id.* at 13–14 (citing R&R 21–22, ECF No. 225).)  Plaintiff also explains that "the CCR title 15 does not grant Appeals Coordinators arbitrary powers to decide which section of the title 15 to follow and which to arbitrarily violate."  (*Id.* at 14.)

Plaintiff notes that he "failed to comply with CCR title 15 regulations when filing [his first, Exhibit A] grievance <u>in pencil</u>" and that he "realized his error and fearing he would be forever barred from seeking redress against the Defendants for their unlawful, illegal and totally egregious misconduct against him filed a subsequent 602/Inmate-Staff complaint . . . in ink," which became the "vanished grievance."  (*Id.* at 15–16.)  Plaintiff argues that Magistrate Judge Dembin "failed to hold R. Olson and J. Ramirez . . . responsible for using power they do not possess to arbitrarily decide which rules to follow and which ones to not follow," as Plaintiff's initial grievance was still accepted, despite being filed in pencil, and denied on the merits.  (*Id.* at 16.)

Plaintiff says that he "relies on his second (or third overall grievance) submitted in ink and screened out by the RJD Appeal Coordinates as 'duplicative,'" since there is nobody else who can attest to the contents of the vanished grievance.  (*Id.* at 16–17.)  This

Exhibit C grievance was screened out as duplicative of the pencil Exhibit A grievance, and the officers refused to notify Plaintiff of which issues were considered duplicative. (*Id.* at 17–18.) Plaintiff notes that the Appeals Office and all staff refused to provide him with the identities of the Defendants in his Exhibit A grievance. (*Id.* at 18.) He also explains that the "RJD Appeals Coordinators employed dirty tactics to reject or screen-out [his] grievances." (*Id.*)

Plaintiff concedes that his Exhibit C grievance was never exhausted through all three levels of review, but argues that "this is . . . indicative of Judge Dembin's judgment that Prison officials can employ dirty tricks to obstruct or deny an inmate's grievance from proper administrative exhaustion and thus, less constraints on the judicial system." (*Id.* at 18–19 (citing R&R 29, ECF No. 225).) With respect to Magistrate Judge Dembin's conclusion that the Exhibit C grievance was untimely, Plaintiff argues that "this ruling is speculative." (*Id.* at 19.) Plaintiff further argues that he had a "right to re-file a grievance within '30 calendar days of rejection.'" (*Id.* at 20 (quoting CCR title 15, § 3084.6(a)(2)).) Plaintiff contends that he "did comport with the CCR title 15 procedural guidelines after [he] waited for his 'first' ink-written grievance ('vanishing grievance') to be processed and logged, as well as waiting for an answer to his inmate request as to the location and receipt of his 'first' ink-written grievance by Inmate Appeals Officials." (*Id.* at 21.) Plaintiff concludes by noting that he challenged the screen-out of the Exhibit C grievance to the third level of review without success in the Exhibit D grievance. (*Id.*)

### C.   Analysis

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive

/ / /

force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 299 n.1 (1991)).

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. *See Booth*, 532 U.S. at 741 n.6. Moreover, because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. *See Woodford*, 548 U.S. at 90–91. "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' . . . —rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88); *see also Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting *Jones*, 549 U.S. at 218).

In California, prisoners "may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). On January 28, 2011, California prison regulations governing inmate grievances were revised. *See id.* §§ 3084–3084.8. Now, inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) a first level formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the hiring authority or designee, and (3) third level appeal to the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"). *Id.* § 3084.7. Under specific circumstances, the first level review may be bypassed. *Id.* § 3084.7(a). The third level of review exhausts a prisoner's administrative remedies. *See id.* § 3084.7(d)(3). A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level

of review available to him.  *Butler v. Adams*, 397 F.3d 1181, 1183 (9th Cir. 2005); *Bennett v. King*, 293 F.3d 1096, 1098 (9th Cir. 2002).

Since the 2011 revision, each grievance must be "limited to one issue or related set of issues," Cal. Code Regs. tit. 15, § 3084.2(a)(1), and must specifically identify the correctional official(s) against whom the allegations are made, or provide sufficient information for the appeals coordinator to attempt to make such identification.   The pertinent CDCR regulation provides:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue.  To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal.  If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

*Id.* § 3084.2(a)(3).

In addition, CDCR's Operations Manual provides that no issue or person may be deemed exhausted unless it was specified in the initial grievance and considered at each level of administrative review:

> Administrative remedies shall not be considered exhausted relative to any new issue, information or person later named by the appellant that was not included in the originally submitted CDCR Form 602 and addressed through all required levels of administrative review (up to and including the third level, unless the third level of review is waived by regulation).

CDCR Operations Manual § 54100.13.3.

An inmate has thirty calendar days to submit his or her appeal from "[t]he occurrence of the event or decision being appealed," or "[u]pon first having knowledge of the action or decision being appealed," or "[u]pon receiving an unsatisfactory departmental response to an appeal filed."  Cal. Code Regs. tit. 15, § 3084.8(b).  An inmate may also refile a

rejected appeal "if the reason noted for the rejection is corrected and the appeal is returned by the inmate . . . to the appeals coordinator within 30 calendar days of rejection." *Id.* § 3084.6(a)(2).

Failure to exhaust is "an affirmative defense the defendant must plead and prove." *Jones*, 549 U.S. at 204, 216.   In *Albino*, the Ninth Circuit agreed with the underlying panel's decision "that the burdens outlined in *Hilao [v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996),] should provide the template for the burdens here." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc).   A defendant need only show "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Id.*   Once the defense meets its burden, the burden shifts to the plaintiff to show that the administrative remedies were unavailable. *Id.*

A prisoner may be excused from complying with the PLRA's exhaustion requirement if he establishes that the existing administrative remedies were effectively unavailable to him. *Id.* at 1172–73.   When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as effectively unavailable. *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010); *see also Nunez v. Duncan*, 591 F.3d 1217, 1224–26 (9th Cir. 2010) ("[T]he Warden's mistake rendered Nunez's administrative remedies effectively unavailable, and . . . his failure to exhaust them is excused."); *Brown v. Valoff*, 422 F.3d 926, 940 (9th Cir. 2005) ("As those processes did not involve any further appeals, Brown had no obligation to pursue the third level appeal before proceeding to court.").

If, under the Rule 56 summary judgment standard, the court concludes that plaintiff has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120, *overruled on other grounds by Albino*, 747 F.3d at 1166.

### (i)    The Exhibit A Grievance

Plaintiff claims that his failure to name all defendants—in particular, Defendants Paramo, Ojeda, Thompson, Stout, and Franco—did not result in a failure to exhaust as to

those defendants.  (Objections 7–13, ECF No. 255.)  Although the Supreme Court in *Jones* reversed the Sixth Circuit's dismissal of plaintiffs' claims for failure to exhaust by failing to name all defendants in the grievance who were later sued, there "the MDOC policy did not contain any provision specifying who must be named in a grievance." 540 U.S. at 218. Rather, "MDOC's policy required only that prisoners 'be as specific as possible.'"[3]  *Id.*  At the time Plaintiff filed his grievance, in contrast, CDCR Regulations required that he "list all staff member(s) involved" and identify them by "last name, first initial, title or position, if known, and the dates of . . . involvement." 15 Cal. Code Reg. § 3084.2(a)(3).  If Plaintiff did not have that identifying information, he was required to "provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." *Id.* § 3084.2(a)(3).

Plaintiff not only failed to name Defendants Paramo, Ojeda, Thompson, Stout, and Franco, but also made no mention of involved "supervisors" in any capacity in the Exhibit A grievance.  On the contrary, Plaintiff specifically noted that "C/o's Silva, Buenrostro, Tyson, Jaca *w/o supervisorial oversight* and [*sic*] beat and pummeled me about the face, head, back and ribs."  (ECF No. 147-8 at 9 (emphasis added).)  Plaintiff's Exhibit A grievance therefore gave no indication that additional, unnamed supervisors might be liable for the conduct underlying the complaint.  In failing to name Defendants Paramo, Ojeda, Thompson, Stout, and Franco, or to indicate any kind of supervisory involvement, Plaintiff failed to comport with the underlying CDCR regulations.

Moreover, unlike the plaintiff in *Reed-Bey*, who failed to name any defendants in violation of Michigan prison regulations, Plaintiff did specifically identify a number of individuals involved, specifically, Defendants Silva, Buenrostro, Tyson, Armstead, Jaca,

---

[3] Plaintiff claims in his Objections that "Michigan, <u>like</u> California has codified the requirement to identify the 'name of all those involved' in the grievance." (Objections 11, ECF No. 255.)  Although Michigan now requires that "[d]ates, times, places, and names of all those involved in the issue being grieved . . . to be included," Michigan Department of Corrections Policy Directive 03.02.130, *available at* http://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf, that Policy Directive became effective July 9, 2007, after the Supreme Court decided *Jones* on January 22, 2007.

and Arguilez.  Plaintiff also identified by "title or position" two unnamed nurses.  As far as Officer Rink, who performed the second level review, knew, Plaintiff had identified— to the best of his knowledge—all staff members involved.  Officer Rink therefore did not review the grievance on the merits despite a failure to comply with the regulation requiring the inmate to "list all staff member(s) involved."  *See* 15 Cal. Code Reg. § 3084.2(a)(3).

Plaintiff's addition of Defendants Paramo, Ojeda, and Thompson in his third-level appeal do not change this conclusion, as "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information or person later named by the appellant that was not included in the originally submitted CDCR Form 602."  CDCR Operations Manual § 54100.13.3.  Plaintiff's Second Level Response explicitly reminded him that this was the case.  (*See* ECF No. 147-8 at 11 ("You do not exhaust administrative remedies on any unrelated issue not covered in this response or concerning any staff member not identified by you in this complaint.").)

Consequently, Plaintiff failed to exhaust administrative remedies with respect to Defendants Paramo, Ojeda, Thompson, Stout, and Franco in his Exhibit A grievance.

*(ii)   The Exhibit C Grievance*

Plaintiff challenges the screening-out of the Exhibit C grievance as duplicative. (Objections 17–19, ECF No. 255.)  In so doing, Plaintiff argues that he was "blocked and/or obstructed to identify the defendants" and that the "RJD Appeals Coordinators employed dirty tactics to reject or screen-out [Plaintiff]'s grievances such as failing to timely file [his] grievances, or filing his grievances out-of-order so as to be able to bar [Plaintiff]'s grievances for procedural error."  (*Id.* at 18.)  These arguments appear to invoke the exception to exhaustion that prison officials rendered administrative remedies effectively unavailable.  *See Sapp*, 623 F.3d at 823.  Plaintiff must therefore establish

> (1) that he actually filed a grievance or grievances that, if pursued
> through all levels of administrative appeals, would have sufficed
> to exhaust the claim that he seeks to pursue in federal court, and
> (2) that prison officials screened his grievance or grievances for

1          reasons inconsistent with or unsupported by applicable

2          regulations.

3    *Id.* at 823–824.

4          Like Magistrate Judge Dembin, the Court cannot conclude on these facts that prison

5    officials screened out the Exhibit C grievance for reasons inconsistent with or unsupported

6    by applicable regulations.   The Exhibit C grievance was "cancelled pursuant to the

7    California Code of Regulations, Title 15, Section (CCR) 3084.6(c)(2)" as a "DUPLICATE

8    TO APPEAL #13-1767."  (ECF No. 147-8 at 29 (emphasis in original).)  A comparison of

9    the two grievances shows that both stem from the same basic underlying incidents:

10   deprivation of basic hygiene items (*compare id.* at 7 ("I was not provided basic hygiene

11   items (toilet paper, soap) . . . ."), *with id.* at 27 ("[Plaintiff was] denied basic

12   sanitary/hygiene supplies (toilet paper, soap, toothbrush, etc.), bedding/towel, medications,

13   showers . . . .")), deprivation of food for two days (*compare id.* at 9 ("For two days—May

14   7-8 I was not provided food."), *with id.* at 27 ("[A]s resentment and retaliation, Heilman

15   was denied food/meals from the evening of May 7th, 2013 until the morning of May 9,

16   2013.")), Defendant Armstead's scraping of dinner remains onto a paper plate and

17   throwing it onto Plaintiff (*compare id.* at 9 ("At dinner c/o Armistead [*sic*] scraped up

18   dinner remains onto a paper plate and threw it on me and onto the floor."), *with id.* at 27

19   ("c/o Armistead [*sic*] also made 'special' meals on paper trays and when my back was

20   turned threw these 'meals' onto me, the floor and the toilet.")), the complaint to Defendant

21   Arguilez on May 8 (*compare id.* at 9 ("I complained to Lt Arguilez on May 8th."), *with id.*

22   at 27 ("On May 8, 2013, Heilman complained to Lt. Arguilez.")), the beating by

23   Defendants Silva, Buenrostro, Tyson, and Jaca on May 9 (*compare id.* at 9 ("On may 9,

24   2013, four guards rushed into my room c/o's Silva, Buenrostro, Tyson, Jaca w/o

25   supervisorial oversight and beat and pummeled me about the face, head, back and ribs."),

26   *with id.* at 27 ("On May 9, 2013, Heilman was assaulted and severely beaten by Ad. Seg.

27   Bldg 6 c/o's Buenrostro, Silva, Tyson and Jaca resulting in serious internal injuries.")), the

28   handcuffing and beating (*compare id.* at 9 ("I was brutally cuffed and manacled – lifted

from the floor – my arms pinned back the guards took turns striking me in the face, lower back and ribs."), *with id.* at 27 ("As more retaliation, Heilman was then improperly hand-cuffed and with leg manacles, brutalized and tortured . . . .")), being left in restraints for one-and-a-half hours (*compare id.* at 9 ("I was left in a cage with the restraints clamped severely to my arms and legs.  I screamed in pain for an hour."), *with id.* at 27 ("[The] restraints were severely constrict[ing] and left in place for 1½ hours.")), and being refused medical assistance (*compare id.* at 9 ("I was offered no medical assistance by two nurses."), *with id.* at 27 ("As retaliation Heilman was not offered medical assistance . . . .")).  Although there may be slightly more detail in the Exhibit C grievance, which names additional defendants and places more emphasis on the retaliatory nature of these acts, Plaintiff has failed to show that the Appeals Coordinator's screening out of the Exhibit C grievance as duplicative was inconsistent with or unsupported by applicable regulations.  *See Bell v. Payan*, No. 2:14-CV-0965 GEB KJN, 2015 WL 5173033, at *6. (E.D. Cal. Sept. 3, 2015) (concluding that plaintiff failed to demonstrate that he was thwarted in his attempts to file a grievance in the absence of evidence of improper behavior) (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

Plaintiff also challenges Magistrate Judge Dembin's conclusion that the Exhibit C grievance, even if not properly cancelled as duplicative, would have been properly cancelled as untimely.  (Objections 19–21, ECF No. 255.)  Plaintiff argues that "this ruling is speculative" (*id.* at 19) and that the grievance was in fact timely because he had a "right to re-file a grievance within '30 calendar days of rejection'" (*id.* at 20 (citing CCR title 15, § 3084.6(a)(2)).)  However, neither the Exhibit A nor vanishing grievance was "rejected," allowing Plaintiff another 30 days in which to re-rile a corrected grievance.  Consequently, Magistrate Judge Dembin was correct that the Exhibit C grievance was untimely.

Plaintiff additionally argues that the grievance was reviewed on the merits, and so this untimeliness can be overlooked.  (*Id.* at 19–20.)  The Exhibit C grievance, however, was "cancelled."  (ECF No. 147-8 at 29.)  Such a cancellation is not a review on the merits.  *Bradley v. Villa*, No. 1:10-CV-01618 LJO, 2015 WL 3540673, at *4 (E.D. Cal. June 3,

2015) ("A cancellation or rejection at the third level does not exhaust an inmate[']s administrative remedies because it is not a decision on the merits of the claim.").

Like Magistrate Judge Dembin, the Court therefore finds that Plaintiff failed to exhaust the claims in his Exhibit C grievance and that he is not entitled to an exception to the exhaustion requirement.

### (iii)   *The Vanished Grievance*

Plaintiff notes in his Objections that he does not rely on the vanished grievance (Objections 16–17, ECF No. 255), and he does not appear to challenge Magistrate Judge Dembin's recommendation that the vanished grievance sufficed to exhaust Claim One against Defendant Thompson, but not Claim Four against Defendant Ojeda, Claims Five against Defendants Ojeda and Thompson, Claim Six against Defendants Ojeda and Thompson, Claim Seven against Defendants Ojeda, Franco, Stout, Russell or Jane Doe/Nainggolan, or Claim Eight against Defendants Franco, Stout, and Paramo.  Because Plaintiff does not object to this portion of the R&R and because the Court finds that it is well reasoned and contains no clear error, the Court agrees with Magistrate Judge Dembin's recommendations concerning the vanished grievance.

Accordingly, the Court **OVERRULES** Plaintiff's Objections and **ADOPTS** Magistrate Judge Dembin's R&R recommending Defendants' MSJ be granted as to Defendants Ojeda, Franco, Stout, and Paramo for failure to exhaust and dismissing all claims against Defendant Thompson except Claim One, and further recommending that Plaintiff exhausted his claims as to Defendants Silva, Buenrostro, Tyson, Armstead, Jaca, Arguilez, Russell, and Nainggolan.

## II.   Eighth Amendment Claims

Plaintiff's objections to this portion of Magistrate Judge Dembin's R&R are confined to a "discrepancy" between Magistrate Judge Dembin's R&R's Analysis and Conclusion concerning the Defendants dismissed from Plaintiff's Claim Four.  The Court noted and corrected this discrepancy in its original Order adopting Magistrate Judge Dembin's R&R.  (*See* ECF No. 239 at 2 n.1.)  The Court reaffirms that Claim Four should

only be dismissed as to Defendant Ojeda.

## CONCLUSION

For the aforementioned reasons, the Court **VACATES** its prior Order adopting the R&R (ECF No. 239), **OVERRULES** Plaintiff's Objections (ECF No. 255), **ADOPTS** the R&R (ECF No. 225), and **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment (ECF No. 147).

For clarification purposes, the Court restates the claims which remain to be tried against the following Defendants:

- Claim One against Defendants Silva, Buenrostro, Tyson, Thompson, and Armstead;
- Claim Two against Defendants Silva, Buenrostro, Tyson, and Jaca;
- Claim Three against Defendant Fontan;
- Claim Four against Defendants Silva, Buenrostro, Tyson, Jaca, Arguilez, Russell, and Nainggolan;
- Claim Five against Defendant Arguilez on the First and Fourteenth Amendment claims, but not the Eighth Amendment claims; and
- Claim Seven against Defendants Arguilez, Russell, and Nainggolan.

**IT IS SO ORDERED**.

Dated:  November 30, 2015

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

13-CV-2984 JLS (MDD)